NELSON E. ROTH, SBN 67350
    ner3@cornell.edu
CORNELL UNIVERSITY
300 CCC Building
Garden Avenue
Ithaca, New York 14853-2601
Telephone:    (607)255-5124
Facsimile:    (607)255-2794

BERT H. DEIXLER, SBN 70614
    bdeixler@proskauer.com
CHARLES S. SIMS, New York Attorney Registration No. 1535640
    admitted *pro hac vice*
    csims@proskauer.com
CLIFFORD S. DAVIDSON, SBN 246119
    cdavidson@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:    (310) 557-2900
Facsimile:    (310) 557-2193

Attorneys for Defendant,
CORNELL UNIVERSITY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VANGINDEREN,<br><br>Plaintiff,<br><br>v.<br><br>CORNELL UNIVERSITY,<br><br>Defendant. | Case No. 07-CV-2045-BTM-JMA<br><br>Hon. Barry T. Moskowitz<br><br>DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO SECTION 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE<br><br>[Per chambers, no oral argument unless requested by the Court]<br><br>[Request for Judicial Notice filed concurrently]<br><br>Hearing Date:  December 21, 2007<br>Time:           11:00 a.m.<br>Location:      Courtroom 15<br><br>Action Filed: October 1, 2007 |

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

1
2

# **TABLE OF CONTENTS**

Page

3

4  TABLE OF AUTHORITIES ..................................................................................... ii

5  INTRODUCTION ................................................................................................1

6  STATEMENT OF FACTS ......................................................................................2

7      **A.**    Plaintiff's Criminal Activity and the *Cornell Chronicle*'s
8              reporting of it. ....................................................................................2

       **B.**    Plaintiff Contacts Cornell regarding the Article's Accessibility
9              on the Internet ...................................................................................4

10     **C.**    Plaintiff Files Suit ............................................................................4

11  DISCUSSION......................................................................................................5

12  I.   The Complaint Is A SLAPP Lawsuit, Therefore Plaintiff Must
         Demonstrate a Reasonable Probability of Succeeding in His Claims ..............5
13

14  II.  Plaintiff Cannot Demonstrate a Reasonable Probability of Succeeding
         in His Claims ....................................................................................................8

15     **A.**    Because There Was No Republication Plaintiff's Claims Are
16             Time-Barred, Having Accrued in 1983 ...............................................10

17     **B.**    Plaintiff's Libel Claim Is Legally Insufficient because the
               *Chronicle* Report Was A Fair and True Report about Criminal
18             Activity and therefore Is Privileged ...................................................15

19     **C.**    Plaintiff's Claim for Public Disclosure of Private Facts Is
               Legally Insufficient because Plaintiff's Crimes Were A Matter of
20             Legitimate Public Concern..................................................................17

21  III.   CONCLUSION .........................................................................................19

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

8085/21177-001
Current/10224157v7

# TABLE OF AUTHORITIES

Page

# FEDERAL CASES

*Arikat v. JP Morgan Chase & Co.*,
430 F. Supp. 2d 1013 (N.D. Cal. 2006) ...............................................................12

*Bosley Med. Inst., Inc. v. Kremer*,
402 F.3d 672 (9th Cir. 2005) ................................................................................ 7

*Brown v. Baden (In re Yagman)*,
796 F.2d 1165 (9th Cir. 1986) ..........................................................................9, 16

*California Pro-Life Council, Inc. v. Getman*,
328 F.3d 1088 (9th Cir. 2003) .............................................................................. 5

*Canatella v. Van De Kamp*,
486 F.3d 1128 (9th Cir. 2007) ........................................................................11, 13

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) ...........................................................................................18

*Crane v. Arizona Republic*,
972 F.2d 1511 (9th Cir. 1992) ........................................................................15, 16

*Duboff v. Playboy Enters. Int'l, Inc.*,
No. 06-358-HA, 2007 U.S. Dist. LEXIS 50717 (D. Or. June 26, 2007) .............. 8

*Four Navy Seals v. Associated Press*,
413 F. Supp. 2d 1136 (S.D. Cal. 2005) ..............................................................5, 8

*Metabolife Int'l v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ...........................................................................9, 10

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ...........................................................................................15

*Nicosia v. De Rooy*,
72 F. Supp. 2d 1093 (N.D. Cal. 1999) .................................................................16

*Oja v. United States Army Corps of Eng'rs*,
440 F.3d 1122 (9th Cir. 2006) .............................................................................11

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
No. 02 CV 2258 JM (AJB), 2007 U.S. Dist. LEXIS 16356 (S.D. Cal.
March 7, 2007).....................................................................................................11

*The Florida Star v. B.J.F.*,
491 U.S. 524 (1989) ...........................................................................................18

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

1

## TABLE OF AUTHORITIES (cont'd.)

2

<u>Page</u>

3

*Time, Inc. v. Hill,*
    385 U.S. 374 (1967) ................................................................18

4

5

*United States v. Lockheed Missiles & Space Co., Inc.,*
    190 F.3d 963 (9th Cir. 1999) ......................................... 5

6

*Van Buskirk v. N.Y. Times Co.,*
    325 F.3d 87 (2d Cir. 2003) ..............................................11

7

8

*Vess v. Ciba-Geigly Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .......................... 7

9

*Zamani v. Carnes,*
    491 F.3d 990 (9th Cir. 2007) ......................................2, 6

10

11

## STATE CASES

12

*ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.,*
    135 Cal. App. 4th 841 (2006) .......................................... 9

13

14

*Chavez v. Mendoza,*
    94 Cal. App. 4th 1083 (2001) .......................................... 7

15

*City of Cotati v. Cashman,*
    29 Cal. 4th 69 (Cal. 2002) ........................................... 7

16

17

*Colt v. Freedom Commc'ns, Inc.,*
    109 Cal. App. 4th 1551 (2003) ....................................8, 15

18

*E.B. v. Liberation Publ'ns, Inc.,*
    7 A.D.3d 566 (2004) ......................................................14

19

20

*Equilon Enters., LLC v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002) ................................................. 6

21

*Firth v. State,*
    98 N.Y.2d 365 (2002) ....................................11, 13, 14

22

23

*Fox Searchlight Pictures v. Paladino,*
    89 Cal. App. 4th 294 (2001) ........................................5, 7

24

*Franklin v. Dynamic Details, Inc.,*
    116 Cal. App. 4th 375 (2004) .........................................16

25

26

*Gates v. Discovery Commc'ns, Inc.,*
    34 Cal. 4th 679 (2004) ............................................17, 18

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

## <u>TABLE OF AUTHORITIES (cont'd.)</u>

<u>Page</u>

*Governor Gray Davis Com. v. Am. Taxpayers Alliance*,
  102 Cal. App. 4th 449 (2002) ................................................................. 7

*Gregoire v. G.P. Putnam's Sons*,
  298 N.Y. 119 (1948) .............................................................. 11, 13, 14

*Kajima Eng'g & Construction, Inc. v. City of Los Angeles*,
  95 Cal. App. 4th 921 (2002) ................................................................. 7

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
  37 Cal. App. 4th 855 (1995) ................................................................. 5

*Macias v. Hartwell*,
  55 Cal. App. 4th 669 (1997) ...........................................................5, 10

*McGarry v. Univ. of San Diego*,
  154 Cal. App. 4th 97 (2007) ...............................................................10

*Melvin v. Reid*,
  112 Cal. App. 285 (1931) ....................................................................17

*Messenger ex rel. Messenger v. Gruner + Jahr Printing and Pub.*,
  94 N.Y.2d 436 (2000) ....................................................................9, 16

*Okun v. Super. Ct.*,
  29 Cal. 3d 442 (1981) .........................................................................12

*Reader's Digest Ass'n v. Superior Court*,
  37 Cal. 3d 244 (1984) .........................................................................16

*Seelig v. Infinity Broad. Corp.*,
  97 Cal. App. 4th 798 (2002) ................................................................. 7

*Shively v. Bozanich*,
  31 Cal. 4th 1230 (2003) .............................................................11, 12, 14

*Shulman v. Group W Prods.*,
  18 Cal. 4th 200 (1998) ................................................................16, 18

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ..............................................6, 8, 9, 10, 16, 17

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
  118 Cal. App. 4th 392 (2004) ................................................10, 11, 12, 14

*Wilcox v. Superior Court*,
  27 Cal. App. 4th 809 (1994).............................................................5, 6

iv

# TABLE OF AUTHORITIES (cont'd.)

Page

# STATUTES

Cal. Code Civ. Pro. § 340(c) ...............................................................9, 10

Cal. Code Civ. Pro. § 425.16 ..................................................................2, 5

Cal. Code Civ. Pro. § 425.16(a) ................................................................ 5

Cal. Code Civ. Pro. § 425.16(b) ................................................................ 6

Cal. Code Civ. Pro. § 425.16(b)(1) ........................................................... 6

Cal. Code Civ. Pro. § 425.16(c) ................................................................ 9

Cal. Code Civ. Pro. § 425.16(e) ................................................................ 6

Cal. Code Civ. Pro. § 47(d) .....................................................................16

NY CLS CPLR § 215(3) ......................................................................9, 11

1    Defendant Cornell University ("Cornell") hereby submits its memorandum of

2  points and authorities in support of Cornell's special motion to strike the Complaint

3  of plaintiff Kevin Vanginderen ("Plaintiff") in its entirety, with prejudice and

4  without leave to amend.

5                                    **INTRODUCTION**

6    This action presents a direct First Amendment challenge to the manner in

7  which universities in particular, and libraries in general, can maintain their historic

8  function as preservers of expressed ideas and information.  Recently, universities,

9  libraries and other institutions have endeavored to increase public knowledge by

10  digitizing their physical archives and making them available electronically.  Doing

11  so cannot be a republication that restarts applicable statutes of limitations based on

12  the content of those works.

13    Were this Court to find that digitization constitutes republication for

14  defamation or false light purposes, universities everywhere would be confronted

15  with the need to research and verify every assertion of fact in all works housed at

16  those institutions.  These burdens are wholly inconsistent with the free expression

17  intended by the First Amendment and equally inconsistent with the historic role of

18  our universities as the retainers and imparters of ideas.  Further, permitting this

19  claim to proceed is wholly inconsistent with the progression of the law concerning

20  defamation and free speech.

21    This case in particular underscores the risks to universities and libraries

22  because the claims of defamation and privacy invasion, with the $1,000,000 price

23  tag attached to them, are obviously premised on the hope that the underlying facts

24  will be unavailable because of the passage of the 24 years since the arrest and

25  conviction of the plaintiff occurred.  As the concurrently filed declarations and court

26  records demonstrate, however, in this case the hope of immunity from proof of

27  plaintiff's crimes because of lost memory is futile.  The public records of the public

28

1

1   legal proceedings demonstrate beyond cavil that the Plaintiff, an active member of

2   the California State Bar, and of this Court, is a convicted thief, indeed convicted

3   upon his own plea of guilty in satisfaction of a pending burglary charge.

4         The evidence reveals that Plaintiff was charged on March 8, 1983 with third

5   degree burglary, arising from his theft of books from an office in Fernow Hall on

6   Cornell's campus on March 5, 1983.  According to the Accusatory Instrument, this

7   charge was based on Plaintiff's sworn confession.  He was arrested, and on March

8   17, 1983, the *Cornell Chronicle*, in its weekly police blotter column, accurately

9   reported Plaintiff's arrest in a brief one-paragraph summary.  This is the alleged

10  libel and public disclosure upon which Plaintiff sues.

11        Because Plaintiff cannot possibly prevail in this action, it is imperative that

12  this Court apply the protections of California Code of Civil Procedure Section

13  425.16, the anti-SLAPP statute, and dismiss the action.  The Ninth Circuit has

14  repeatedly recognized the power and propriety of District Courts in California

15  applying the statute where warranted.  *See*, *e.g.*, *Zamani v. Carnes*, 491 F.3d 990,

16  994 (9th Cir. 2007).  This Court therefore is empowered to bring this action's direct

17  intrusion into the exercise of free speech to an end, and it should do so in a

18  published opinion that will put all on notice of the risk of bringing such spurious

19  challenges to the conscientious operation of universities and libraries in ensuring

20  access to, and expression of, ideas.

21  ### STATEMENT OF FACTS

22  A.  **Plaintiff's Criminal Activity and the *Cornell Chronicle*'s reporting
23  of it.**

24        On March 8, 1983, plaintiff Kevin G. Vanginderen ("Plaintiff") was charged

25  in Ithaca City Court with third degree burglary, a Class D felony.  The Accusatory

26  Instrument alleged:

27

28

2

8085/21177-001
Current/10224157v7

1
2
3
4
5

> on or about the 5th day of March, 1983 . . . [Plaintiff] did knowingly enter or remain unlawfully in a building, to wit: defendant entered at approx. 2:00AM room 312C Fernow Hall, Tower Road, Cornell University, City of Ithaca, N.Y., to commit the crime of larceny therein by stealing books, with said office space belonging to Richard J. Baker, with all actio[n]s by defendant without authorization, are contrary to the provisions of the Statute in case made an provided.

6   (*See* concurrently filed Defendant's Request for Judicial Notice [Def. Req. for Jud.

7   Not.], Ex. A, p. 5).

8       Plaintiff confessed to the charge under oath, as documented in the Accusatory

9   Instrument dated March 8, 1983.  (*Id.*)[1]

10      On March 17, 1983, the *Cornell Chronicle*, Cornell University's weekly

11  campus newspaper, reported the following:

12
13
14
15

> Department of Safety Officials have charged Kevin G. Vanginderen of 603 Winston Court Apartments with third degree burglaries [sic] in connection with 10 incidents of petit larceny and five burglaries on campus over a period of a year.  Safety reported recovering some $474 worth of stolen goods from him.

16  (Def. Req. for Jud. Not., Ex. B, p. 15).  This report appeared in the normal "Blotter

17  Barton" column, which reported on police activity and public safety issues in and

18  around Cornell University (the Cornell Police maintain their offices in Barton Hall).

19      A second charge was later brought against Plaintiff for petit larceny, a Class

20  A misdemeanor.  The Accusatory Instrument dated August 17, 1983, indicates that

21  "on or about the 5th day of March, 1983 . . . [Plaintiff] did commit the crime of petit

22  larceny by stealing books located at room 312C, Fernow Hall, Tower Road, Cornell

23

24  [1] Further details of Plaintiff's criminal activities will be available for the Court at the

25  hearing on this special motion.  An order to show cause why the court should not

26  unseal the records of Plaintiff's arrest is pending in the relevant Tompkins County

27  Court in the State of New York.  The return date for the Order to Show Cause is

28  November 16, 2007.  (*See* Def. Req. for Jud. Not., Ex. D, p. 21).

3

1    University, located within the City of Ithaca, New York." (Def. Req. for Jud. Not.,

2    Ex. A, p. 7). On August 22, 1983, Plaintiff pled guilty to petit larceny in full

3    satisfaction of the charges pending against him. (Def. Req. for Jud. Not., Ex. A, pp.

4    6, 8).

5        The *Cornell Chronicle* has been publicly available since it was published on

6    March 17, 1983, in libraries, and for some period in an online archive maintained by

7    the Cornell University Library.

8    **B.    Plaintiff Contacts Cornell regarding the Article's Accessibility on
         the Internet**

9

10       On September 3, 2007, the Cornell University Library received an e-mail

11   from Plaintiff in which Plaintiff demanded that the library remove that portion of the

12   digitized *Cornell Chronicle* article, dated March 17, 1983, that describes the original

13   charge against him for criminal activity on the Cornell campus. (Def. Req. for Jud.

14   Not., Ex. C, p. 19). Cornell declined Plaintiff's demand.

15   **C.    Plaintiff Files Suit**

16       On October 1, 2007, Plaintiff filed the present action (the "Complaint") in

17   San Diego Superior Court based on two causes of action: libel and public disclosure

18   of private information. The Complaint alleges, among other things, that Cornell

19   republished the *Chronicle* report "sometime in the year 2007 . . . by placing it in the

20   public domain on the defendant's library website for the first time, which was over

21   twenty four years after its first more limited publication." (Compl. ¶¶ 1, 4).

22   Plaintiff alleges that the report was false, (*id.*), and that he did not discover it until

23   he "conducted an annual '[G]oogle search' of his name on the [I]nternet." (Compl.

24   ¶¶ 2, 5). Google® searches reveal the indexed text of the article and a link to the

25   digitized copy stored in the Cornell University Library archive. Plaintiff clicked

26   such a link in order to enter the library's archive and view the article.

27       Plaintiff seeks $1,000,000. (Compl. ¶¶ 3, 6).

28

4

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

1

## DISCUSSION

2

3

**I.    The Complaint Is A SLAPP Lawsuit, Therefore Plaintiff Must Demonstrate a Reasonable Probability of Succeeding in His Claims**

4        The issue of the *Cornell Chronicle* Plaintiff seeks to suppress addressed a

5    matter of public interest: Plaintiff's criminal activities on the campus of Cornell

6    University.  Plaintiff's Complaint thus indisputably arises from Cornell's exercise of

7    free speech in connection with a matter of public interest.  California Code of Civil

8    Procedure Section 425.16, the "anti-SLAPP statute," therefore applies.[2]

9        The anti-SLAPP statute was enacted in 1993 in order to address "a disturbing

10   increase in lawsuits brought primarily to chill the valid exercise of the constitutional

11   rights of freedom of speech and petition for the redress of grievances."  The statute

12   applies to all "litigation without merit filed to dissuade or punish the exercise of

13   First Amendment rights of defendants."  *California Pro-Life Council, Inc. v.*

14   *Getman*, 328 F.3d 1088, 1089 (9th Cir. 2003) (quoting *Lafayette Morehouse, Inc. v.*

15   *Chronicle Publ'g Co.*, 37 Cal. App. 4th 855, 858 (1995)).  The anti-SLAPP statute is

16   to be broadly interpreted so as to protect Constitutional rights and to act as a

17   screening mechanism by "eliminate[ing] meritless litigation at an early stage in the

18   proceedings." *Macias v. Hartwell*, 55 Cal. App. 4th 669, 672 (1997); *see also* Cal.

19   Code Civ. Pro. § 425.16(a) ("[T]his section shall be construed broadly.").

20   Defamation suits such as the one in the present case are a primary target of the anti-

21   SLAPP statute. *Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294, 305

22   ──────────────────────

23   [2] It is well settled that the anti-SLAPP statute applies to state claims brought in

24   federal court.  *United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963,

25   973 (9th Cir. 1999) (noting that disallowing anti-SLAPP motions in federal court

26   would encourage forum shopping, contrary to the purposes of the Erie Doctrine);

27   *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005)

28   (citing *Lockheed* and applying anti-SLAPP statute).

5

1 (2001); *accord Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994),

2 *disapproved on other grounds by Equilon Enters., LLC v. Consumer Cause, Inc.*, 29

3 Cal. 4th 53 (2002).

4        The anti-SLAPP statute creates a procedure whereby a defendant may move

5 to strike a complaint, or any cause of action, that arises "from any act of that

6 [defendant] in furtherance of the [defendant]'s right of petition or free speech under

7 the United States Constitution in connection with a public issue." Cal. Code Civ.

8 Pro § 425.16(b)(1).  Such a complaint or cause of action "shall be subject to a

9 special motion to strike, unless the court determines that the plaintiff has established

10 that there is a probability that the plaintiff will prevail on the claim." *Id.*

11        Courts evaluate an anti-SLAPP motion in two steps:

12                First, a defendant must make an initial prima facie
13        showing that the plaintiff's suit arises from an act in
        furtherance of the defendant's rights of petition or free
14        speech.  Second, once the defendant has made a prima
        facie showing, the burden shifts to the plaintiff to
15        demonstrate a probability of prevailing on the challenged
        claims.

16 *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007) (internal quotations and

17 citations omitted; *see Taus v. Loftus*, 40 Cal. 4th 683, 712 (2007).  A SLAPP lawsuit

18 defendant satisfies the first prong of Section 425.16(b) upon demonstrating that the

19 causes of action sought to be stricken are based upon "any act of [defendant] in

20 furtherance of [defendant's] right of petition or free speech under the United States

21 or California Constitution in connection with a public issue." *Wilcox*, 27 Cal. App.

22 4th at 820 (*quoting* Cal. Code Civ. Pro. § 425.16(b)).  Pursuant to Section 425.16(e),

23 an "act in furtherance of a person's right of petition or free speech under the United

24 States or California Constitution in connection with a public issue" includes, in

25 relevant part:

26                [. . .](3) any written or oral statement or writing made in a
27        place open to the public or a public forum in connection
        with an issue of public interest; (4) or any other conduct in
28        furtherance of the exercise of the constitutional right of

6

petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

The broadly-defined threshold showing is "intended to be given broad application in light of its purposes." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002) (citations omitted).

In order to succeed in its special motion to strike, Cornell need not demonstrate that Plaintiff intended to chill Cornell's exercise of its free speech activities, *Bosley Med. Inst., Inc. v. Kremer*, 402 F.3d 672, 682 (9th Cir. 2005); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002), or that its speech was actually chilled, *Vess v. Ciba-Geigly Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). Cornell also need not show that its activities were protected under the First Amendment as a matter of law. *Fox Searchlight*, 89 Cal. App. 4th at 305. Rather, "a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis . . . . Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens." *Governor Gray Davis Com. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 458 (2002) (quoting *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1089-90 (2001)).

Merely referencing the allegations of the Complaint itself satisfies Cornell's required showing. *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (Cal. 2002) ("In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech."); *Kajima Eng'g & Construction, Inc. v. City of Los Angeles*, 95 Cal. App. 4th 921, 929 (2002) (holding that, in deciding an anti-SLAPP motion, a court must examine solely the activity that has been alleged in the pleading as the basis for the challenged cause of action).

The First and Second Causes of Action derive from Cornell's publishing in 1983 a report of Plaintiff's criminal activities in the *Cornell Chronicle* and

7

1  maintaining the availability of that 1983 report both in hard and electronic form.

2  Such publication undoubtedly is an act in furtherance of Cornell's right of free

3  speech on a public issue and is within the ambit of the anti-SLAPP statute. *Four*

4  *Navy Seals*, 413 F. Supp. 2d. at 1149 (holding, in anti-SLAPP case, that publication

5  of article concerning potential criminal activity by military personnel was a matter

6  of public interest); *Duboff v. Playboy Enters. Int'l, Inc.*, No. 06-358-HA, 2007 U.S.

7  Dist. LEXIS 50717, at * 16 (D. Or. June 26, 2007) ("The writing and publishing of a

8  magazine article is conduct in furtherance of the exercise of free speech rights under

9  the [identical Oregon] anti-SLAPP statute."); *Loftus*, 40 Cal. 4th at 712-13 (holding

10  that publishing findings in professional journal regarding child mistreatment

11  qualified for anti-SLAPP protection); *Colt v. Freedom Commc'ns, Inc.*, 109 Cal.

12  App. 4th 1551, 1557 (noting that, in context of newspaper report concerning SEC

13  complaint and legal proceedings, "Plaintiffs do not dispute that the publishing of

14  newspaper articles [falls under the anti-SLAPP statute], nor could they in light of the

15  First Amendment rights involved.").

16      For the foregoing reasons, Cornell has met its initial burden; the Complaint is

17  a SLAPP suit.  The burden shifts to Plaintiff  to demonstrate that he has a reasonable

18  probability of succeeding in his claims.

19

20  **II.    Plaintiff Cannot Demonstrate a Reasonable Probability of Succeeding in His Claims**

21      The Court should dismiss this SLAPP lawsuit because Plaintiff cannot make

22  the required showing that he has a reasonable probability of success.  Plaintiff's

23  defamation and public disclosure claims are legally insufficient because publication

24  and disclosure occurred when the relevant issue of the newspaper was published on

25  March 17, 1983, and the acts of the Cornell University Library in continuing to

26  maintain public accessibility of that article, by maintaining paper and digital

27

28

8

8085/21177-001
Current/10224157v7

1    archives, is not a republication that avoids application of the single publication rule.

2    The claims are time-barred.

3         The defamation claim is fatally defective for the additional reason that even if

4    there were a publication by digitization of the *Chronicle* within the limitations

5    period, Cornell's report was fair and true.  The private facts claim is deficient not

6    only because it is time-barred, but also because as a matter of state and First

7    Amendment law the continued public availability of newspapers reporting the news

8    is not actionable.  Moreover, to the extent New York law applies to this action

9    Plaintiff cannot state a claim for public disclosure because New York does not

10   recognize such a tort.  *See Messenger ex rel. Messenger v. Gruner + Jahr Printing*

11   *and Pub.*, 94 N.Y.2d 436, 441 (2000).[3]  The Court is required to strike Plaintiff's

12   claims and award Cornell reasonable attorneys fees and costs.  *ARP Pharmacy*

13   *Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 135 Cal. App. 4th 841, 854 (2006);

14   Cal. Code Civ. Pro. § 425.16(c).

15        Once a court determines that a Complaint arises from an act in furtherance of

16   protected expression, "the plaintiff must show a 'reasonable probability' of

17   prevailing in its claims for those claims to survive dismissal."  *Metabolife Int'l v.*

18   _____

19   [3] For purposes of this special motion to strike, the Court need not engage in a

20   conflict of laws analysis because California and New York law are substantially the

21   same in relevant respects regarding the libel claim.  *Brown v. Baden (In re Yagman)*,

22   796 F.2d 1165, 1170 (9th Cir. 1986) ("It is axiomatic that, unless there is a

23   difference between the laws of the states, a choice need not be made.")  For

24   example, both states apply a one-year statute of limitations to libel.  Cal. Code Civ.

25   Pro. § 340(c); NY CLS CPLR § 215(3).  The Court therefore can assess the

26   sufficiency of Plaintiff's libel claim with reference to the laws of either state.

27   Furthermore, Plaintiff's claim is legally insufficient in California, for the reasons set

28   forth below, and simply is not recognized in New York.

9

1   *Wornick*, 264 F.3d 832, 840 (9th Cir. 2001); *see Loftus,* 40 Cal. 4th at 713 ("[I]n

2   order to avoid dismissal of each claim under section 425.16, plaintiff bore the

3   burden of demonstrating a probability that she would prevail on the particular

4   claim.")  Plaintiff "must demonstrate that the complaint is legally sufficient and

5   supported by a prima facie showing of facts to sustain a favorable judgment if the

6   evidence submitted by the plaintiff is credited." *Metabolife Int'l*, 264 F.3d at 840

7   (citation omitted); *Loftus,* 40 Cal. 4th at 714 (noting that claims must be stricken "if

8   the plaintiff is unable to demonstrate both that the claim is legally sufficient and that

9   there is sufficient evidence to establish a prima facie case with respect to the

10  claim.").  In order to be considered for this purpose, Plaintiff's evidence must be

11  "competent and admissible." *Macias v. Hartwell*, 55 Cal. App. 4th 669, 675 (1997).

12  He "cannot simply rely on the allegations in the complaint, but must provide the

13  court with sufficient *evidence* to permit the court to determine whether there is a

14  probability that the plaintiff will prevail on the claim." *The Traditional Cat Ass'n,*

15  *Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 398 (2004) (granting anti-SLAPP motion)

16  (internal quotations and citations omitted) (emphasis in original).  The court "must

17  also examine whether there are any constitutional or nonconstitutional defenses to

18  the pleaded claims and, if so, whether there is evidence to negate any such

19  defenses." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 109 (2007).

20      **A.    Because There Was No Republication Plaintiff's Claims Are Time-
21            Barred, Having Accrued in 1983**

22      The *Cornell Chronicle* report at issue was published in 1983, twenty-four

23  years before Plaintiff filed this litigation.  The act of making the archive available to

24  individuals who have electronic access to the Cornell University Library server

25  where it is maintained is not a republication that precludes application of

26  California's or New York's single publication rule.  Thus, any claim arose 24 years

27  ago and expired one year later.  The migration of the archive to the Internet does not

28

10

8085/21177-001
Current/10224157v7

1  avoid application of the single publication rule any more than would moving the

2  newspaper from one Cornell library to another.

3        In California, causes of action for defamation and public disclosure are

4  extinguished after one year.  Cal. Code Civ. Pro. § 340(c).  Defamation claims in

5  New York also expire after one year, NY CLS CPLR § 215(3), and New York does

6  not recognize the disclosure tort.  The statute of limitations begins to run upon

7  publication, and only one tort cause of action can be based upon that publication.

8  *Id.*; *Firth v. State*, 98 N.Y.2d 365, 371 (2002); *Gregoire v. G.P. Putnam's Sons*, 298

9  N.Y. 119 (1948).  This is the single publication rule. *See Oja v. United States Army*

10 *Corps of Eng'rs*, 440 F.3d 1122, 1130 (9th Cir. 2006); *Van Buskirk v. N.Y. Times*

11 *Co.*, 325 F.3d 87, 89 (2d Cir. 2003).  This limitation applies "notwithstanding how

12 many copies of the publication are distributed or how many people hear or see the

13 broadcast.  Any subsequent republication or rebroadcast gives rise to a new single

14 cause of action." *The Traditional Cat Ass'n, Inc.*, 118 Cal. App. 4th at 395; *see Van*

15 *Buskirk*, 325 F.3d at 39.

16        In *Shively v. Bozanich*, 31 Cal. 4th 1230 (2003), the leading California case

17 concerning the single publication rule, the California Supreme Court noted that the

18 primary purpose of the single publication rule was to prevent a chilling effect upon

19 the reporting of issues of public concern. *Id.* at 1244.  Such concern was based on

20 the possibility at common law that a plaintiff

21              could bring an action seeking redress for libel against a
               publisher based upon an allegedly defamatory remark
22              contained in a newspaper issued 17 years prior to the
               plaintiff's discovery of the defamation, on the theory that
23              the sale to the plaintiff of the long-forgotten copy of the
               newspaper constituted a new publication, starting anew the
24              running of the period of limitations.

25 *Id.* at 1244.  Motivated by the same concerns, Courts in this Circuit repeatedly have

26 held that the single publication rule applies to the Internet.  *See*, *e.g.*, *Canatella v.*

27 *Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007); *Oja v. United States Army*

28

11
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

1    *Corps of Eng'rs*, 440 F.3d at 1128; *Sundance Image Tech., Inc. v. Cone Editions*

2    *Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 U.S. Dist. LEXIS 16356, at *17 (S.D.

3    Cal. March 7, 2007).

4         There is no actionable libel in this case because Cornell has not published the

5    *Cornell Chronicle* article since March 17, 1983.  To state a claim for libel, "plaintiff

6    must establish the intentional publication of a statement of fact that is false,

7    unprivileged, and has a natural tendency to injure or which causes special damage."

8    *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006).

9    "Publication" means "communication to a third person who understands the

10   defamatory meaning of the statement and its application to the person to whom

11   reference is made."  *Id.* (quoting *Okun v. Super. Ct.*, 29 Cal. 3d 442, 458 (1981));

12   *see Shivley v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003) (same).  Libel thus requires

13   an intentional communication to a third person.  Continued publication of the

14   original edition of a newspaper or book is not a republication, but rather is the first

15   publication and is squarely subject to the single publication rule.  *See generally*

16   *Traditional Cat Ass'n*, 118 Cal. App. 4th at 401-04.

17        Cornell did not repeat facts from the original publication in a new edition of

18   the *Cornell Chronicle* after the initial publication in 1983, but merely maintained its

19   archive of the original publication, in an accessible electronic format.  Making its

20   collection more accessible by digitization of its paper archives, thereby permitting

21   the public easier access to what already was available at various libraries (and in any

22   other locations where prior issues were available), does not avoid application of the

23   single publication rule.  Had Plaintiff physically visited the library and discovered

24   the article he could not claim that there was a republication in 2007 merely because

25   he saw the *Chronicle* sitting on the shelf.  The fact that a precise photographic image

26   of the original *Chronicle* article is now available online, in addition to on the shelf,

27   changes nothing, and does not amount to a republication.

28

12

8085/21177-001
Current/10224157v7

1    As relevant cases make clear, intentional communication, in the libel context,

2    requires more than simply making a work available for an interested party to

3    retrieve.  Courts considering arguments to the contrary have firmly rejected them

4    and reasserted the single publication rule's protection of free speech.  In *Canatella*

5    *v. Van De Kamp*, the Ninth Circuit rejected plaintiff's claim that Defendants

6    published libelous State Bar disciplinary information when it was displayed on

7    Defendants' website in response to users' Internet search queries.  The court also

8    rejected Plaintiff's argument that Defendant published the disciplinary information

9    when it moved that information from one part of the site to another:

10    > [T]he California Bar's decision to [move] the allegedly
    > offensive disciplinary summary to Canatella's search page
11    > did not trigger a new cause of action since a verbatim copy
    > of that summary had appeared on the exact same website
12    > [for three years].  Thus, contrary to Cantanella's claims,
    > the California Bar's posting of his disciplinary record in a
13    > different section of the same website did not give rise to a
    > new cause of action . . . .
14

15    *Canatella*, 486 F.3d at 1135.

16    The *Canatella* holding precludes the present Plaintiff's claim.  Just like the

17    disciplinary report in *Canatella*, the Internet archive version of the *Chronicle* is a

18    precise copy – in fact, the equivalent of a photograph – of the original.  Consistent

19    with *Canatella*, simply "moving" an image of the physically archived copy from the

20    paper shelf to the electronic shelf does not republish it sufficiently to remove the

21    time-bar imposed by the single publication rule.

22    The New York Court of Appeals similarly has held that making information

23    retrievable on the Internet does not intrinsically constitute republication of that

24    information.  In *Firth v. State*, the court rejected plaintiff's argument that "because

25    publications on the Internet are available only to those who seek them . . . , each hit

26    or viewing of the report should be considered a new publication that retriggers the

27

28

13

1   statute of limitations." *Firth*, 98 N.Y.2d at 369.  In rejecting this argument, the

2   court drew upon its decision in *Gregoire v. G.P. Putnam's Sons*:

3           In *Gregoire*, we held that a publisher's sale from stock of
            a copy of a book containing libelous language did not
4           constitute a new publication.  We explained that if the
            multiple publication rule were applied to such a sale, the
5           [s]tatute of [l]imitation[s] would never expire so long as a
            copy of such book remained in stock and is made by the
6           publisher the subject of a sale or inspection by the public.
            Such a rule would thwart the purpose of the Legislature to
7           bar completely and forever all actions which, as to the
            time of their commencement, overpass the limitation there
8           prescribed upon litigation.

9   *Id.* (quoting *Gregoire*, 298 N.Y. at 125-126).  A New York appellate court more

10  recently applied *Gregoire*  to order the dismissal of a libel claim brought more than

11  one year after a book was posted on the Internet and placed on sale to the general

12  public.  *E.B. v. Liberation Publ'ns, Inc.*, 7 A.D.3d 566, 567 (App. Div., 2d Dep't

13  2004) (holding that when plaintiff discovered that book on the Internet was

14  irrelevant in analysis of when publication occurred).

15          The reasoning of both *Firth* and *Gregoire* applies to the current action, and

16  California courts have explicitly adopted the reasoning of those decisions in the

17  context of the Internet.  *See*, *e.g.*, *Shively*, 31 Cal. 4th at 1244; *The Traditional Cat*

18  *Ass'n*, 118 Cal. App. 4th at 404.  The Cornell University Library has made available

19  a copy of a 24-year-old issue of a Cornell newspaper to those who have access to the

20  Library over the Internet.  Querying Cornell's website for a copy of that back issue

21  is no different than walking up to a reference librarian and requesting it.  Likewise,

22  receiving a copy of the issue in .pdf format on one's computer is no different than

23  locating the *Chronicle* on microfiche or locating a print copy on the shelf.

24          If the creation of a digital archive were sufficient to restart the limitations

25  period, no library or institution making archives available could safely do so without

26  risking massive expense and liability.  Universities would be chilled from archiving

27  the work of their students, professors and staff for fear that each new technological

28

14

1 platform on which past archives were made available would set the statute of

2 limitations to run anew.  All of the policies and justifications for the single

3 publication rule apply here and preclude treating digital availability on a new

4 platform to count as a republication that restarts the statute of limitations.

5      Cornell has done nothing more than provide access to a virtual section of its

6 library.  Because placing a copy of the March 17, 2003 edition of the *Chronicle* in

7 that virtual section is not a publication or a public disclosure, the Court should find

8 Plaintiff's claims legally insufficient and should strike them pursuant to the anti-

9 SLAPP statute.

10
11     **B.**    <u>**Plaintiff's Libel Claim Is Legally Insufficient because the *Chronicle* Report Was A Fair and True Report about Criminal Activity and therefore Is Privileged**</u>

12      Try as he might, Plaintiff cannot escape the fact that he was charged with

13 felony burglary.  As indicated in the records of the Ithaca City Court, filed

14 concurrently as Exhibit A to the Request for Judicial Notice, Plaintiff was formally

15 charged on March 8, 1983 with burglary in the third degree, a Class D felony.  As

16 demonstrated in Exhibit B, the *Chronicle* reported:

17
18
19
20         Department of Safety Officials have charged Kevin G. Vanginderen of 603 Winston Court Apartments with third degree burglary in connection with 10 incidents of petit larceny and five burglaries [sic] on campus over a period of a year.  Safety reported recovering some $474 worth of stolen goods from him.

21      Though the *Chronicle*'s account of Plaintiff's crimes was indeed entirely

22 accurate, it need not have been in order to be considered fair and true.  "Under

23 California law, a newspaper report is fair and true if it captures the substance, the

24 gist, the sting of the libelous charge.  The news article need not track verbatim the

25 underlying [criminal] proceeding."  *Crane v. Arizona Republic*, 972 F.2d 1511, 1519

26 (9th Cir. 1992).  A report need not be entirely accurate in order to be privileged.

27 "Erroneous statement is inevitable in free debate, and . . . must be protected if the

28

15

8085/21177-001
Current/10224157v7

1   freedoms of expression are to have the breathing space that they need . . . to

2   survive." *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-272 (1964); *Colt v.*

3   *Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1558 (2003) ("[T]he 'fair and

4   true report' requirement does not limit the privilege to statements that contain no

5   errors."). "A certain degree of flexibility/literary license is afforded reporters under

6   the privilege." *Crane*, 972 F.2d at 1519 (quoting *Reader's Digest Ass'n v. Superior*

7   *Court,* 37 Cal. 3d 244, 261 (1984).

8           In addition to being accurate, the *Chronicle* report was also privileged.  It is

9   well settled that "[a]ccusations of criminal activity, like other statements, are not

10   actionable if the underlying facts are disclosed." *Nicosia v. De Rooy*, 72 F. Supp. 2d

11   1093, 1103 (N.D. Cal. 1999) (citing *In re Yagman*, 796 F.2d 1165, 1174 (9th Cir.

12   1986)); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 388 (2004)

13   (quoting *Nicosia*).  Further, the *Chronicle*'s publication was privileged as a fair and

14   true report based on a charge or complaint to a public official.  Cal. Code Civ. Pro.

15   § 47(d) ("A privileged publication or broadcast is one made . . . By a fair and true

16   report in, or a communication to, a public journal . . . of a verified charge or

17   complaint made by any person to a public official, upon which complaint a warrant

18   has been issued.")[4]

19           Plaintiff's libel claim therefore is legally insufficient.  The claim should be

20   stricken in accordance with the anti-SLAPP statute.

21   _____

22   [4] In New York, "[a] civil action cannot be maintained against any person, firm, or

23   corporation, for the publication of a fair and true report of any judicial proceeding,

24   legislative proceeding or other official proceeding . . . ."  N.Y. Civil Rights L. § 74

25   (McKinney 2007).  A news report reflecting a judicial proceeding is not actionable

26   regardless of the ultimate disposition of the matter.  *Phillips v. Murchison*, 252 F.

27   Supp. 513, 522 (S.D.N.Y. 1966), *aff'd in part, rev'd in part*, 383 F.2d 370 (2d Cir.

28   1967).

### C.    Plaintiff's Claim for Public Disclosure of Private Facts Is Legally Insufficient because Plaintiff's Crimes Were A Matter of Legitimate Public Concern

To succeed on a claim of public disclosure of private facts, under California law, Plaintiff must demonstrate "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Loftus*, 40 Cal. 4th at 717 (quoting *Shulman v. Group W Prods.*, 18 Cal. 4th 200, 214 (1998)).[5]  Consistent with the fourth required element of the claim, newsworthiness is a complete defense, *id.*, and is determined "with regard to [otherwise private] individuals by assessing the logical relationship or nexus, or the lack thereof, between the events or activities that brought the person into the public eye and the particular facts disclosed." *Id.* at 718.  As the California Court of Appeal explained in the first California case considering the invasion of privacy tort, the right of privacy "does not exist in the dissemination of news and news events." *Melvin v. Reid*, 112 Cal. App. 285, 290 (1931).

Here, plaintiff's claim is barred by the California Supreme Court's recent holding in *Gates v. Discovery Communication*, as well as relevant Supreme Court precedents:

> We conclude that an invasion of privacy claim based on allegations of harm caused by a media defendant's publication of facts obtained from public official records of a criminal proceeding is barred by the First Amendment to the United States Constitution. (*Cox, supra*, 420 U.S. at p. 495; *Oklahoma Publ'g, supra*, 430 U.S. at p. 311; see also *Daily Mail, supra*, 443 U.S. at p. 103; *The Florida Star, supra*, 491 U.S. at p. 533; *Bartnicki, supra*, 532 U.S. at pp. 527–528.)

*Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679, 696 (2004).

---

[5] As discussed above, New York law does not recognize this cause of action.  *See Gruner + Jahr Printing and Pub.*, 94 N.Y.2d 436 at 441.  Sections 50 and 51 of New York's Civil Right's Law, which provide a limited statutory right of privacy, are inapplicable.

17

1     The Accusatory Instrument dated March 8, 1983 concerning plaintiff's arrest

2  was a public record in Ithaca City Court.  Plaintiff's infractions brought him into the

3  public eye and the facts disclosed in the *Chronicle* relate directly – and exclusively –

4  to those events.  The allegations against Plaintiff were a matter of public record and

5  the *Chronicle* was entitled to report on them.

6     The First Amendment's guarantee of freedom of the press protects the right to

7  report news even when it involves the affairs of otherwise private persons:

8         The guarantees for speech and press are not the preserve of
          political expression or comment on public affairs, essential
9         as those are to healthy government. One need only pick up
          any newspaper or magazine to comprehend the vast range
10        of published matter which exposes persons to public view,
          both private citizens and public officials. Exposure of the
11        self to others in varying degrees is a concomitant of life in
          a civilized community. The risk of this exposure is an
12        essential incident of life in a society which places a
          primary value on freedom of speech and of press.
13

14  *Time, Inc. v. Hill*, 385 U.S. 374, 388 (1967), *quoted in Shulman*, 18 Cal. 4th at 208.

15  The publication of information derived from public records, including information

16  concerning the criminal activities of otherwise private citizens, enjoys First

17  Amendment protection.  In *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975), the

18  Supreme Court held that the press could not be prohibited from publishing the name

19  of a rape victim when that name had been provided in a public record.  As the Court

20  explained:

21        The commission of crime, prosecutions resulting from it,
          and judicial proceedings arising from the prosecutions,
22        however, are without question events of legitimate
          concern to the public and consequently fall within the
23        responsibility of the press to report the operations of
          government . . . . [T]he prevailing law of invasion of
24        privacy generally recognizes that the interests in privacy
          fade when the information involved already appears on the
25        public record.

26

27  *Id.* at 492, 494; *see also The Florida Star v. B.J.F.*, 491 U.S. 524, 535-536 (1989).

28

18

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT

1    The holdings in *Gates*, *The Florida Star* and *Cox Broad. Corp.* directly

2   preclude Plaintiff's claim for public disclosure of private information.  His claim for

3   public disclosure of private information therefore is legally insufficient.

4

5   **III.    CONCLUSION**

6    For the foregoing reasons, Cornell respectfully requests this Court to dismiss

7   Plaintiff's Complaint in its entirety, and that Cornell be awarded attorneys' fees and

8   costs.

9

10

11  DATED: November 2, 2007                    BERT H. DEIXLER
                                              CHARLES S. SIMS
12                                            CLIFFORD S. DAVIDSON
                                              PROSKAUER ROSE LLP
13
                                              NELSON E. ROTH
14                                            CORNELL UNIVERSITY

15

16                                            s/Bert H. Deixler
                                                          Bert H. Deixler
17                                            Attorneys for Defendant,
18                                            CORNELL UNIVERSITY

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT