FILED

07 NOV 21 AM II: 31

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:    PBU    DEPUTY

1  Kevin Vanginderen, Plaintiff Pro Per
   637 Third Ave., Suite E1
2  Chula Vista, CA  91910
   Telephone: (619) 585-7414
3

4

5

6              UNITED STATES DISTRICT COURT

7              SOUTHERN DISTRICT OF CALIFORNIA

8

9  KEVIN VANGINDEREN,              )    Case  No. 07-CV-2045-BTM-JMA
                                   )
10            Plaintiff,           )    Hon. Barry T. Moskowitz
                                   )
11       v.                        )    PLAINTIFF'S MEMORANDUM OF
                                   )    POINTS AND AUTHORITIES
12  CORNELL UNIVERSITY,            )    IN OPPOSITION OF DEFENDANT'S
                                   )    MOTION TO STRIKE PLAINTIFF'S
13            Defendant.           )    COMPLAINT PURSUANT TO SECTION
                                   )    425.16 OF THE CALIFORNIA CODE
14                                 )    OF CIVIL PROCEDURE
                                   )
15                                 )    Hearing Date: December 21, 2007
                                   )    Time:          11:00 a.m.
16  _____)    Place:         Courtroom 15

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2  TABLE OF AUTHORITIES ........................................................................ ii

3  INTRODUCTION......................................................................................... 2

4  STATEMENT OF FACTS............................................................................ 3

5  ARGUMENT.................................................................................................. 3

6

     **I.**    The Complaint should not be considered a SLAPP Lawsuit under the
7            legislative intent of California Code of Civil Procedure §425.16 because
            there is no First Amendment protection for Libel and there is no public
8            interest in the publication of a twenty four year old sealed record................3

9     **II.**    The Defendant's Motion should not be granted even if the complaint
            is considered a SLAPP Lawsuit because the Plaintiff can demonstrate a
10           high probability in succeeding in his claims.................................................6

11        **A.**    The Plaintiff's claims are not time-barred because the single
                 publication rule is not applicable in this matter since their was a
12               republication and because the original publication was not a
                 communication in the mass media which allows the discovery rule
13               to toll these claims as the Plaintiff was not aware of the
                 publication or republication until the year 2007, when it was first
14               placed upon the Internet.......................................................................7

15        **B.**    Plaintiff's Libel claim is legally sufficient because the *Chronicle*
                 report was not true and the defendant has not shown it to be true.......12
16

17        **C.**    Plaintiff's Claim for Public Disclosure of Private Facts are legally
                 sufficient because a world wide publication which highlights a
                 twenty four year old charge for a case resulting in a nonpublic and
18               sealed record to a nonpublic figure is not of legitimate public
19               concern..................................................................................................12

20  CONCLUSION ...................................................................................................14

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3   **FEDERAL CASES**                                                                Page

4   *Maldonado v. Harris,* 370 F.3d 945 (9th Cir. 2004)................................................... 7

5   *Two Rivers v. Lewis, 174 F.3d 987 (9th Cir. 1999)*................................................. 7

6   *Hopkins v. Dow Corning Corp., 33 F.3d 1116 (9th Cir. 1994)*............................. 8

7   *Dawson v. Eli Lily and Co., 543 F. Supp 1330 D.C. (1982)*................................... 8,9

8   *Canatella v. Van De Kamp,* 486 F.3d 1128 (9th Cir. 2007)................................... 9

9   *Oja v. United States Army Corp of Eng'rs,* 440 F.3d 1122 (9th Cir 2006)............ 9

10  *A&M Records v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001)*.............................. 10

11  *Virgil v. Time, Inc., 527 F.2d 112 (9th Cir.1975)*.................................................. 14

12  **STATE CASES**

13  *Hebrew Academy of San Francisco v. Goldman, 129 Cal. App.4th 391 (2005)*....... 8

14  *Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914 Cal.(2005)*............................... 8,9

15  *Jolly v. Eli Lilly & Co., 751 P.2d 923 (1988)*........................................................ 8

16  *Shively v. Bozanich, 31 Cal. 4th 1230 (2003)*....................................................... 9

17  *The Traditional Cat Ass'n, Inc. v. Gilbreath, 118 Cal. App. 4th 392 (2004)*........... 9.

18  *UMG Recordings, Inc. v. MP3.com, Inc. 92 F. Supp. 2d 349 (S.D.N.Y. 2000)*...... 10

19  **STATUTES**

20  New York CPL § 160.50 ........................................................................................ 4,7

21  Cal Civ. Proc. Code § 425.16(a) .......................................................................... 5

22  Cal Civ. Proc. Code § 425.16(b)(1) ..................................................................... 5

23  Cal Civ. Proc. Code § 340 .................................................................................... 7

24  **CALIFORNIA JURY INSTRUCTIONS**

25  California Jury Instruction 7.00........................................................................... 6

26  California Jury Instruction 7.09........................................................................... 6

27  California Jury Instruction 7.21........................................................................... 6,7,14

28

1    Plaintiff Kevin Vanginderen hereby submits his Memorandum of Points and Authorities

2  in Opposition to Defendant's Special Motion to Strike the Complaint.

3  <center>**I.**</center>

4  <center>**INTRODUCTION**</center>

5    The Defendant has piously declared that the matter now before this Court is a definite test

6  of all university's First Amendment right to publish their entire library collections upon the

7  Internet without fearing the necessity to determine the validity of all statements republished

8  therein.  The actual issues to be determined by this Court are simply limited to a determination of

9  the principle elements of Libel, a Public Disclosure of Private Facts dating back twenty four

10  years and the possible application of relevant statutes of limitations.  All issues presented within

11  the current litigation regard statements propounded only by the Defendant itself, the manner in

12  which it has decided to publish them and its refusal to retract them from a perpetual world wide

13  audience despite the Plaintiff's request for such prior to the filing of this case.  The Defendant

14  has no First Amendment right to commit Libel or the Public Disclosure of Private Facts which

15  regard events contained in a twenty four year old sealed record.

16    The Defendant's statements regarding the Plaintiff are not protected under free speech

17  protections or under any other Constitutional basis.  The Defendant's argument that an adverse

18  ruling in this matter would result in an undue burden to research and verify every assertion in all

19  works housed at all libraries and universities is not credible.  The only possible burdens that may

20  be created would be that of preventing the production of libelous publications by its own

21  employees regarding matters that are defamatory on their face, deleting libelous statements from

22  continuing electronic publications and preventing decades old private information from being

23  prominently displayed for the first time upon the Internet many years later.

24    The Defendant's allegation that the Plaintiff has laid in wait for over two decades hoping

25  for the circumstances that have now arisen and which give rise to the causes of action that it

26  claims are premised upon his alleged wish that the underlying facts may be unavailable because

27  of the passage of twenty four years is absurd, it is in fact the shocking length of time itself that

28  has passed between the original event and the new presentation of the offending information on a

<center>2</center>

1  global scale that produces one cause of action.  Prior to initiating litigation the Plaintiff has

2  attempted to have the Defendant address his concerns with this matter by requesting that it

3  conduct a simple electronic corrective action but the Defendant has refused.  The Plaintiff has

4  taken no pleasure in the need to further publicize this matter with the current litigation, however,

5  the Defendant apparently has.  The Defendant has recently disseminated press releases regarding

6  this case and chose to introduce sealed documents into this public record as part of an attempt to

7  manipulate the case.

8       The Defendant's attempt to portray this matter as a penultimate test of Constitutional free

9  speech rights is simply an underhanded and cynical attempt to publicize it further and cause

10  additional harm to the Plaintiff.  The circumstances involved in the filing of this case are

11  certainly not what the legislature had intended to prevent when it enacted anti-SLAPP legislation.

12  The defamatory description of the incident contained within the article published by the

13  Defendant's Division of University Communications is not remotely consistent with the sealed

14  public record the Defendant now has presented as evidence.  The Defendant's request that this

15  Court issue a published opinion which may  protect the "conscientious operation of universities"

16  such as itself in regard to this matter is truly ironic.

## II.

## STATEMENT OF FACTS

19       Plaintiff Kevin Vanginderen (Plaintiff) attended an undergraduate degree program at

20  Cornell University (Defendant) and obtained a Bachelor of Science degree between August of

21  1979, and May of 1983.  The *Cornell Chronicle* is publication produced by the Defendant's

22  Division of University Communications.  (See Exhibit 1).  On March 17, 1983, a small article in

23  the *Cornell Chronicle* stated that, "Department of Public Safety officials have charged Kevin G.

24  Vanginderen of 603 Winston Court Apartments with third degree burglary in connection with 10

25  incidents of petit larceny and five burglaries on campus over a year." (Defendant's Exhibit B)

26  The *Cornell Chronicle* article was false, the charge did not involve fifteen separate crimes as

27  stated.  The Accusatory Instrument brought against the Plaintiff declares only a solitary charge in

28  connection with a single event: the taking of books from a room in a campus academic building.

3

1   (Defendant's Exhibit A)  The incident occurred at a cubicle attached to one of the Plaintiff's

2   classrooms.  (See Affidavit of Plaintiff)

3       In August of 1983, all charges against the Plaintiff were later dismissed in the County

4   Court of Tompkins County, New York on the basis that the District Attorney had overcharged

5   the Plaintiff for the circumstances involved.  (See Affidavit of Plaintiff)  As a result of the

6   dismissal, the entire court file was sealed pursuant to New York's CPL §160.50, which requires

7   all records to be sealed upon a dismissal.   Subsequently, on August 23, 2007, a conditional

8   discharge was granted to a plea for petit larceny on a separate Accusatory Instrument

9   (Defendant's Exhibit B) for the same incident and in 1985 the entire record was sealed. (See

10  Affidavit of Plaintiff)  The *Cornell Chronicle* did not report these events nor did it ever report

11  anything about the fact that one of the Defendant's Professors of Merit, Agronomy Professor

12  William B. Duke, had been charged with Felony Cultivation of Marijuana on university property

13  that year.

14      Sometime in 2007, the Defendant chose to place it's entire *Cornell Chronicle* collection

15  upon the Internet and entered into an agreement with *Google*.com to prominently display all

16  editions upon their search engine web site.  (See Exhibit 2)  The defamatory *Cornell Chronicle*

17  article was not discovered by the Plaintiff until September of 2007, when he ran a *Google* search

18  of his name on the Internet and determined that the Defendant had now published this article on

19  the World Wide Web.  (See Exhibit 3 and Affidavit of Plaintiff)  The article is now prominently

20  displayed the first time in twenty four years as a caption for all to read when a *Google* search is

21  made of the Plaintiff's name.  On September 2, 2007, the Plaintiff requested that the Defendant

22  remove its offending statements from the Internet  (Defendant's Exhibit D)  but it has refused to

23  do such so they remain published upon the World Wide Web to date. (See Exhibit 3)

24  **III.**

25  **ARGUMENT**

26  I.   **The Complaint should not be considered a SLAPP Lawsuit under the**
        **legislative intent of California Code of Civil Procedure §425.16 because**
27      **there is no First Amendment protection for Libel and there is no public**
        **interest in the publication of a twenty four year old sealed record.**

28

1    The Defendant's contention that the Plaintiff's Complaint should be classified as a

2    SLAPP (Strategic Lawsuit Against Public Participation) Lawsuit is a tenuous one. The current

3    litigation is certainly not a strategic lawsuit against public participation but rather a limited action

4    by a nonpublic person taking umbrage with the publication of false and private information upon

5    the Internet by a large corporate entity. The First Amendment Center defines SLAPP Lawsuits as

6    "lawsuits filed in response to or retaliation for citizen communications with government entities

7    and employees". (www.firstamendmentcenter.org) The case at bar does not fit this description

8    in the least. The Defendant is not a citizen but a multibillion dollar corporation, it has made no

9    communication with any government entity and the Plaintiff has not filed in any lawsuit in

10   retaliation for anything. The Plaintiff simply seeks to protect his reputation from an invasion of

11   privacy and libel.

12   The legislative intent of the anti-SLAPP statute asserted by the Defendant is based upon

13   the premise that, "The legislature finds and declares that there has been a disturbing increase in

14   lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of

15   speech and petition for the redress of grievances." Cal. Code of Civ. Pro. § 425.16(a). This

16   lawsuit is decidedly not brought primarily to chill the Defendant's free speech rights as the torts

17   of Libel and a Public Disclosure of Private Facts are not protected by free speech rights and it is

18   the Plaintiff not the Defendant who now seeks a redress of grievances,.

19   The Defendant is also not entitled to the assert the anti-SLAPP statute because this matter

20   does not concern a public issue. The anti-SLAPP statute asserted by the Defendant requires that it

21   should only apply to a lawsuit brought, "in connection with a public issue". Cal. Code of Civ.

22   Pro. § 425.16(b)(1). There is quite simply no public issue here. The Defendant ludicrously

23   asserts that a twenty four year old charge resulting in a sealed record and a conditional discharge

24   to a nonpublic figure is somehow now a matter of public concern. This is a difficult position to

25   maintain when the Defendant found that the felony charge against one of its own Professors of

26   Merit has never been considered newsworthy. An Internet search on the *Google* site in that

27   Professor's name reveals nothing other than he was named a Professor of Merit. (See Exhibit 4)

28   The Defendant has arbitrarily decided that charges brought against its students are selectively

5

1    deemed more newsworthy than those brought against its own professors.

2         The Defendant has not established that the case at bar involves any matter of public

3    concern nor does it fit under the legislative intent of the anti-Slapp statute it now asserts.  The

4    Defendant's Special Motion to Strike should be denied without further review.

5

       II.    **The Defendant's Motion should not be granted even if the complaint is**
6                  **considered a SLAPP Lawsuit because the Plaintiff can demonstrate a**
              **high probability in succeeding in his claims.**
7

8         The Plaintiff can establish a high probability in succeeding on the claims.  All elements of

9    the tortious behavior can be shown based upon each element declared by California Jury

10   Instruction 7.00 and 7.21, and no statute of limitations bars the suit.

11        Under California Case Law, "Libel is a false and unprivileged publication by writing,

12   printing, picture, effigy or other fixed representation to the eye, which exposes any person to

13   hatred, contempt, ridicule, or disgrace, or which causes such party to be shunned or avoided, or

14   which has a tendency to injure such party in such party's occupation.  California Jury Instruction

15   7.00.  The Defendant's statements distributed on the Internet (Defendant's Exhibit B and Exhibit

16   3) are false.  (See Affidavit of Plaintiff)  The publication is in writing and a fixed representation

17   to the eye.  The statements regarding the commission of fifteen separate crimes would certainly

18   expose any person to contempt, ridicule, disgrace and have an tendency to injure someone in

19   their occupation.  A statement is defamatory on its face, "if it charged plaintiff with a crime".

20   California Jury Instruction 7.09.

21        Under civil rights privacy protection, the essential elements Public Disclosure of Private

22   Facts are:

23   1) The defendant made a public disclosure of a fact about the plaintiff;

24   2) Before this disclosure the fact was private, that is, not known to the public;

25   3) The fact made known to the public would be highly offensive to a reasonable person of

26   ordinary sensibilities;

27   4) the defendant disclosed the fact with knowledge that it was highly offensive or with reckless

28   disregard of whether it was highly offensive or not;

1   5) The fact made known was not newsworthy; and

2   6) The public disclosure of this fact caused plaintiff to sustain injury, damage, loss or harm.

3   California Jury Instruction 7.21.

4         All elements of this tort are met. The Defendant has stated unequivocally that the Plaintiff

5   was charged with a crime over twenty four years ago.  The Defendant is aware this fact was

6   private as it is part of a sealed record pursuant to New York's CPL §160.50.  (See Exhibit 5)  The

7   fact made known is highly offensive to a reasonable person as it could be a basis to deny an offer

8   of employment or housing.  The Defendant was certainly aware that accusing anyone with fifteen

9   crimes is highly offensive especially when it was confronted with outrage by the Plaintiff on

10  September 2, 2007.  A twenty four year old charge to a nonpublic figure resulting in a conditional

11  discharge and a sealed record is not newsworthy.  The disclosure has caused loss of reputation,

12  emotional distress and is defamatory on its face. The Defendant has provided no evidence that

13  any these elements are not be met and relies only upon a tenuous assertion that it believes the

14  "single publication rule" should apply to the case at bar.

15      **A.**    **The Plaintiff's claims are not time-barred because the single publication rule**
16                **is not applicable in this matter since their was a republication and because**
                  **the original publication was not a communication in the mass media which**
17                **allows the discovery rule to toll these claims as the Plaintiff was not aware of**
                  **the publication or republication until the year 2007, when it was first placed**
18                **upon the Internet,**

19        Statutes of limitations are affirmative defenses that the Defendant may someday attempt

20  to assert but they have not yet done so as it has not yet filed an Answer to the Complaint. The

21  Defendant has erroneously asserted in the its Motion to Strike that Cal. Code Civ. Pro § 340 bars

22  the claim of Public Disclosure of Private Facts but this is simply not true as the tort is not even

23  addressed within the statute.  This tort is premised in the violation of the civil right of privacy

24  therefore federal, not state, law determines when a civil rights claim accrues.  *Maldonado v.*

25  *Harris,* 370 F.3d 945, 955 (9th Cir. 2004).  Under federal law, a claim accrues when the plaintiff

26  knows or has reason to know of the injury. *Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir.*

27  *1999).* There would be no logic in barring this cause of action on a timeliness basis when the tort

28  itself is predicated on the passage of time.

7

1    The Defendant has cited case law in its attempt to establish that the single publication

2 rule should apply to the Libel claim but the rule does not apply to this matter because it is

3 "confined to communications in the mass media." *Hebrew Academy of San Francisco v.*

4 *Goldman, 129 Cal. App.4th 391, 398 (2005).* The *Cornell Chronicle* could not be considered a

5 member of the mass media since it is a very limited publication produced by the Defendant's

6 Division of University Communications (See Exhibit 1) with the single purpose of portraying the

7 University in a positive light. Part of that propaganda has included highlighting its message that

8 the Campus Safety Staff is active in investigating and prosecuting alleged campus crimes while

9 intentionally omitting the mention of any crimes committed by its professors. The Defendant's

10 real newspaper, the student run *Cornell Daily Sun,* is in wide distribution but the Defendant has

11 not made it available on the Internet. The *Chronicle* is not, nor ever has been, a student run

12 independent newspaper nor does it in any way resemble a traditional news source. It has no

13 national, local, business, sports results, entertainment nor editorial section within it. It appears to

14 be nothing more than a promotional pamphlet detailing future campus events that in 1983, was

15 never mailed, handed out, sold, delivered directly or made available in any store or newspaper

16 boxes to any students. The circulation is apparently limited to placing copies in so few locations

17 around campus that the Plaintiff had never seen a single copy in his entire four years of

18 attendance there nor had he ever become aware of its very existence. (See Affidavit of Plaintiff)

19 The Defendant has not asserted that the Plaintiff should have ever become aware of the offending

20 article, presented any evidence regarding the potential distribution method of the *Cornell*

21 *Chronicle,* nor provided any proof that the original edition in question was ever actually

22 circulated in any manner in 1983.

23    The discovery rule should prevent the application of any statute of limitation as a bar to

24 the present case because the statute only starts when a plaintiff learns of possible wrongdoing.

25 *Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914 Cal.(2005); Hopkins v. Dow Corning Corp., 33*

26 *F.3d 1116, 1120 9th Cir.( 1994) Jolly v. Eli Lilly & Co., 751 P.2d 923, 926-27 (1988); Dawson v.*

27 *Eli Lily and Co., 543 F. Supp 1330, 1338 D.C. (1982).* Under the common law rule, "discovery

28 rules are adopted to avoid unfairness of interpreting a statute of limitations to accrue when the

8

1    injury first occurs, if at that time plaintiff does not have enough information to bring suit." *see*

2    *Dawson, 543 F. Supp at 1338.*  Different accrual dates could apply to different causes of action.

3    *see Fox, 110 P.3d 914 Cal. at 924*   The delayed discovery rule is meant to apply in cases in

4    which it is difficult for a plaintiff to learn or understand the injury suffered, or when the cause of

5    injury is hidden. *Shively v. Bozanich, 31 Cal. 4th 1230 (2003).*  The Plaintiff in the case at bar

6    was simply incapable of discovering a small defamatory paragraph about himself in an obscure

7    publication he had not even known the existence of and which may never have even been

8    distributed over twenty four years ago and only now is prominently displayed on the Internet in

9    the year 2007.

10         The Defendant has cited a litany of cases but none are analogous to the case at bar.  Most

11   cases cited relate solely to original communications that were made in the mass media.  The

12   *Cornell Chronicle* is not part of the mass media.  The Defendant has cited other case law which

13   simply asserts that period of limitations starts accruing only when the first publication upon the

14   Internet itself has occurred or when it first became apparent to the plaintiffs, however, the

15   Defendant has cited no cases which regard a matter where a publication is first produced in a

16   very limited printed form and then many years later is intentionally placed upon an unrelated web

17   site, the largest search engine in the world.  The Court in *Canatella v.Van De Kamp* held that a

18   website - not a particular URL - is the touchstone for the single publication rule analysis.

19   *Canatella v.Van De Kamp*, 486 F.3d 1128 (9th Cir. 2007).  The Court in *Oja v. United States*

20   *Army Corp of Eng'rs* declared that it treated a second site as separate and distinct from the first

21   site and held on that basis that the plaintiff's claims based on the second publication were not

22   barred by the single publication rule.  *Oja v. United States Army Corp of Eng'rs*, 440 F.3d 1122,

23   1133-34 (9th Cir 2006).  The Court in *The Traditional Cat Ass'n, Inc. v. Gilbreath,* declared that

24   "any subsequent rebroadcast gives rise to a new single cause of action" and distinguished web

25   publishers from the publishers of conventional hard copy newspapers.  *The Traditional Cat*

26   *Ass'n, Inc. v. Gilbreath, 118 Cal. App. 4th 392, 398 (2004).*

27         The  Defendant's argument that the publication of previously printed material upon the

28   Internet should be subject to "the single publication rule" in regard to the earlier distribution of a

9

1   hard copy flies in the face of recent rulings regarding illegal uploading and downloading of

2   copyrighted sound recordings. The Ninth Circuit Court decided that making available a digitized

3   copy of a work is not the equivalent of an innocent possession of the original copy of that work

4   when it stated that "users who upload file names for others to copy violate plaintiff's distribution

5   rights". *A&M Records v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001)*. Another Court stated

6   that, "Although defendant [MP3.com] seeks tp portray its service as the "functional equivalent"

7   of storing its subscribers' CDs, in actuality defendant is replaying for the subscribers converted

8   versions of the recording copied . . .". *UMG Recordings, Inc. v. MP3.com, Inc. 92 F. Supp. 2d*

9   *349 (S.D.N.Y. 2000)*. This reasoning should be applied to the case at bar because the Defendant

10  has portrayed its recent activity of making available the offending article upon the Internet as the

11  simple act of having reproduced the original hard copy to a different audience when it actuality

12  has engaged in the act of republishing a converted version of the original.

13       The Defendant's assertion that it has not republished the offending article because it

14  claims it was only making available the print version of the offending article in its library

15  archives is undermined by the fact that the Defendant's actions go well beyond simply making it

16  available in its library web site. In fact, no trace of this article is found with any search of any

17  Defendant web site, yet it is prominently displayed on the *Google.com* site. It is apparent that the

18  Defendant has entered into a relationship with the *Google* company because it specifically

19  directs users of its own web site to go directly to the *Google* site instead in order to conduct their

20  prospective search. (See Exhibit 2) While this Court may not regard the caption of an article

21  derived from a specific search of the Defendant's library archive search engine as a republication,

22  a prominent caption upon the *Google* search engine containing ancient private information which

23  results from a search query limited to that of the identity of a nonpublic person should

24  definitively be defined as a republication. Even if the act of making the offending article

25  available for search in any manner is not considered to be a republication, the prominent display

26  of the defamatory and private statements within the widely visible caption is one. (See Exhibit 3)

27       The Defendant's argument that it is justified in republishing the offending article because

28  it has always maintained the publication within its archives is incomprehensible. Allowing a

10

1  libelous publication to remain available for public display does not permit its republication. The

2  Defendant has thus asserted that because it has republished the libelous article in numerous forms

3  it should be entitled to now display it even more prominently on the World Wide Web. The

4  Defendant has admitted that the offending article has been recently republished but takes the

5  tenuous position that the placing of the article on the Google search engine is equivalent to that

6  of "'moving' an image of the physically archived copy from the paper shelf to the electronic

7  shelf" and that these circumstances do "not republish it sufficiently". The Defendant's actions in

8  promoting the global distribution of the offending article and its abbreviated caption in such a

9  prominent manner is actually tantamount to removing it from dusty alcoves of a more than

10  century old library collection, enlarging it to a poster size, and then eternally posting it upon

11  every library door.

12         There is no statute that could bar any part of the claim for Libel due to the discovery rule.

13  The Plaintiff did not bring a civil action for the Libel claim at the time of the original publication

14  of the defamatory *Cornell Chronicle* article because it was not discovered by the Plaintiff, nor

15  could it have been, until September of 2007. The offending article was first discovered at the

16  time he ran a *Google* search of his name on the Internet and he thus determined that the

17  Defendant had now sometime in the year 2007, republished this article on the World Wide Web.

18  (See Affidavit of Plaintiff) The offending information is also republished as a prominently

19  displayed caption for all to read when a *Google* search is made of the Plaintiff's name. (See

20  Exhibit 3)

21         The Defendant should not be allowed to hide behind a veil of naive free speech protection

22  in defense of its actions in this matter for they far exceed its purported benign effort to expand an

23  information base and extend instead to a campaign of self promotion and financial gain. The

24  Defendant does not have, nor will it ever have, its entire literary collection available online on

25  the basis of avoiding copyright infringement alone. The Defendant's student run newspaper, *The*

26  *Cornell Daily Sun,* it is not available online. The Defendant has selectively chosen to make

27  available on the Internet only those publications that which it deems most proper.

28         A correction of the injustice faced by the Plaintiff would require little technical effort on

11

1   behalf of the Defendant.  The Defendant would not presumably include within its "digitized"

2   library archives known fraudulent publications such as, *The Autobiography of Howard Hughes*

3   or *The Hitler Diaries*, yet it contends here that an undue burden would be placed upon it if were

4   to edit one of its own questionable publications.  The Defendant's refusal to do such appears is

5   based more upon financial considerations than on any Constitutional grounds.

6         **B.**     **Plaintiff's Libel claim is legally sufficient because the *Chronicle* report was not true and the defendant has not shown it to be true.**

7

8         The *Chronicle* report from March 17, 1983, is neither fair nor true.  The article states that,

9   "Department of Public Safety officials have charged Kevin G. Vanginderen of 603 Winston

10   Court Apartments with third degree burglary in connection with 10 incidents of petit larceny and

11   five burglaries on campus over a year." (Defendant's Exhibit B).  The *Cornell Chronicle* article

12   was false as the charge did not involve fifteen separate crimes as stated.  The Defendant has

13   surreptitiously obtained a copy of an Accusatory Instrument in this matter while aware it is part

14   of a sealed record.  (See Exhibit 5)  The Defendant did so without a court order to release this

15   sealed record and then improperly filed it as a part of the current record.  (Defendant's Exhibit A)

16   The Defendant has presented only this Accusatory Instrument in its defense against the Plaintiff.

17   The tainted evidence indicates only one charge brought against the Plaintiff in connection with a

18   single event: the taking of books from a room in a campus academic building.  (Defendant's

19   Exhibit A)

20         **C.**     **Plaintiff's Claim for Public Disclosure of Private Facts are legally sufficient because a world wide publication which highlights a twenty four year old charge for a case resulting in a nonpublic and sealed record to a nonpublic figure is not of legitimate public concern.**

21

22

23         The Plaintiff's Claim for a Public Disclosure of Private Facts is likely to prevail because

24   all elements of the California tort are met.  It is irrelevant that New York does not recognize the

25   tort  because the Defendant's actions have caused the tort to occur in California, and every other

26   state and country in the world. This case involves extremely disparaging statements regarding the

27   Plaintiff that were relegated to the archives of a more than century old library collection but are

28   now prominently displayed on the most commonly used search engine on the Internet.

1       The Defendant has erroneously contended that the offending article is privileged because

2  the allegations are the matter of a purported public record. This is false. The matter is not a

3  public record for it has been sealed. In August of 1983, all charges against the Plaintiff were

4  dismissed in the County Court of Tompkins County, New York, on the basis that the District

5  Attorney had overcharged the Plaintiff for the circumstances involved. (See Affidavit of

6  Plaintiff) As a result of the dismissal, the entire court file was sealed pursuant to New York's

7  CPL §160.50.

8       The original Accusatory Instrument brought against the Plaintiff (Defendant's Exhibit A)

9  is part of the sealed record. The Defendant did request that the Plaintiff agree to unseal the

10  record and release it to the whole world but he refused because this was actually an underhanded

11  attempt to transform a sealed record into a public one in order to eliminate an essential element

12  of the tort asserted. There has been no order issued by any court to unseal these records to date.

13  The Defendant's extreme disregard for the Plaintiff's privacy is further displayed by its conduct

14  when it improperly filed an exhibit in the current record of a malappropriated Accusatory

15  Instrument which was obtained absent a court order to release such records and with the

16  Defendant's knowledge that it is in fact part of a sealed record. (See Exhibit 5).

17       The Defendant has not even established that when the original article was produced that it

18  was based upon any public record, if so, it would have accurately mirrored the Accusatory

19  Instrument and it does not. The actual source for the article was apparently a chest thumping

20  Cornell Safety Officer who was overstating his crime fighting prowess.

21       The Defendant wrongly contends that the offending article is now newsworthy. In a

22  determination of whether the fact made known is newsworthy, the circumstances to be

23  considered are: the social value of the fact published, the depth of the article's intrusion into the

24  plaintiff's private affairs, the extent to which the plaintiff voluntarily pushed himself in a position

25  of public notoriety, the nature of the states interest in preventing the disclosure, whether the fact

26  is a matter of public record and if the fact published concerned events that occurred in the past,

27  whether there is any continued public interest in the fact published. California Jury Instruction

28  7.21. In determining if a plaintiff's privacy interest outweighs the public interest the

1  circumstances to be considered are: the medium of publication, the extent of the use, the public

2  interest served by the publication, and the seriousness of the interference with the plaintiff's

3  privacy. California Jury Instruction 7.21. The distinction between disclosure of matters of

4  legitimate public concern and impermissible prying into private lives may depend on community

5  attitudes and is often a jury question. *Virgil v. Time, Inc.,* 527 F.2d 112 (9th Cir.1975)

6        The Defendant has not established that there is any current legitimate public concern in

7  the ancient news now being disseminated. The passage of time is likely to indicate a lack of

8  newsworthiness. The Defendant has attempted to assert that today there exists a public concern

9  for a twenty four year old charge to a nonpublic figure which resulted in a conditional discharge

10 and a sealed record and that this is now somehow newsworthy. This is a difficult position to

11 maintain when the Defendant found that the felony charge against one of its own "Professors of

12 Merit" has never been considered newsworthy. The Defendant has decided that charges brought

13 against students are deemed to be selectively more newsworthy than those brought against its

14 professors.

15                                  **CONCLUSION**

16        Plaintiff respectfully requests that Defendant's Motion to Strike be denied because the

17 anti-SLAPP statute should not apply in this matter and the Plaintiff has shown a reasonable

18 probability to prevail on his claims..

19

20 Dated: November 21, 2007

21

22                                  Kevin Vanginderen

23

24

25

26

27

28

                                        14