# CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

## INVESTIGATION REPORT

OTHER AGENCY

CASE NO. 83-422

83-CO2345?

**1. COMPLAINT** C-1

| COMPLAINANT (LAST NAME) | FIRST | MIDDLE | DOB |
|---|---|---|---|
| Baker | Richard | J. | 12/4/53 Grad |

| ADDRESS | COUNTY | PHONE |
|---|---|---|
| 134 Judd Falls Road | Tompkins | 257-2696 |

| EMPLOYER | ADDRESS | OCCUPATION |
|---|---|---|
| 312-C Fernow Hall | 256-3191 | Grad Student (east) |

PLACE OF OCCURRENCE "SPECIFIC LOCATION"
312-C Fernow Hall

| DATE REPORTED | DAY REPORTED | TIME REPORTED | DATE OCCURRED | DAY OCCURRED | TIME OCCUPIED |
|---|---|---|---|---|---|
| 3/5/83 | Sat. | 1400 | 3/4-3/5/83 | Fri-Sat | 2400-1200? |

| RECEIVED BY | HOW RECEIVED | WEATHER |
|---|---|---|
| PO Brune | In Person | ☐CLEAR ☐CLOUDY ☐FOG ☐RAIN ☐SLEET ☐SNOW |

CHARACTER OF CASE
Burglary

**2. MO**

| TYPE OF BLDG. | SECURED | ENTRY |
|---|---|---|
| Academic | Yes | |
| | OCCUPIED Pink | EXIT |

MODE OF ENTRY OR MANNER COMMITTED
T-1 climbed over partition and removed P-1 & P-2

TOOL, WEAPON OR METHOD USED

**3. PROPERTY**

CODE: STOLEN (S)  USED IN CRIME (C)  CRIM. MISCH. (M)  RECOVERED (R)  EVIDENCE (E)  OTHER (O)

| NO. | CODE | QTY. | DESCRIPTION | I.D. — SERIAL NUMBER | MONETARY VAL. |
|---|---|---|---|---|---|
| P-1 | S | 1 | Biometry 2nd ed. by Robert R. Sokal & F. James Rohlf | | 31.95 |
| P-2 | S | 1 | The Life of Birds 3rd ed. by Joel Carl Welty | | 22.45 |

**4. VEH** V-1

☐USED IN CRIME  ☐ACC. NON-MV  ☐CRIM. MISCH.  ☐STOLEN  ☐RECOVERED  ☐OTHER

| DESCRIPTION - MAKE | YR. MFG. | REG. NO. | STATE |
|---|---|---|---|

| COLOR | BODY - MODEL | VIN - ID NO. | | |
|---|---|---|---|---|
| | | | STOLEN MV - KEY IN IGNITION  YES ☐  NO ☐ | |
| | | | RECOVERED - RUNNING CONDITION  YES ☐  NO ☐ | |

**5. WEAPON** W-1

☐USED IN CRIME  ☐LAWFUL SURRENDER  ☐UNLAWFUL POSS.  ☐STOLEN  ☐OTHER

| DESCRIBE | MAKE - TYPE/MODEL | CAL.-GA. | OWNER OR REGISTRANT |
|---|---|---|---|
| ☐REVOLVER | | | |
| ☐PISTOL | SERIAL NO. | UNLOADED ☐  LOADED ☐ | ADDRESS |
| ☐RIFLE | | TOT. CAPACITY | PISTOL PERMIT NO.    DATE ISSUED |
| ☐SHOTGUN | FINISH: BLUE ☐  SILVER ☐ | RDS. FIRED | COUNTY OF ISSUE |
| ☐OTHER | POSITION ☐OTHER | UNEXPENDED RDS. | |

**6. DOCUMENT** D-1

| TYPE DOCUMENT | NAME OF RECEIVER | REASON: ☐NO ACCT. ☐ACCT. ☐INSUFF. FUNDS ☐FORGERY |
|---|---|---|

| NAME OF MAKER - I.D. OR ADDRESS GIVEN | IDENTIFIABLE: YES ☐  NO ☐ |
|---|---|

| BANK DRAWN ON - ADDRESS | DOC. NO. | PHOTO - SUSPECT YES ☐  NO ☐ |
|---|---|---|

| DOCUMENT AMOUNT | MONEY, PROPERTY OR SERVICE OBTAINED |
|---|---|

**7. DAMAGE**

DESCRIBE OR LIST PHYSICAL DAMAGE OR ANY OTHER LOSS

COPY

54.40

**8. INSUR.**

| PROPERTY INSURED  YES ☐  NO ☐ | NAME OF INSURER | AMT. INSURANCE | TOTAL VALUE 54.40 |
|---|---|---|---|

**9. DISPO**

| NO. | DATE | DISPOSITION |
|---|---|---|

| CLOSED | EX C | UNFOUNDED | INACTIVE | PENDING |
|---|---|---|---|---|

**10. WITNESS** WT-1

| NO. | NAME (LAST, FIRST, MIDDLE) - ADDRESS | AGE | DOB |
|---|---|---|---|

MAY BE NOT DO REMOVE

3-5-83

**EXHIBIT F, PAGE 5**

| CODE: | ASSAULT (A) | | | | NATURAL DEATH (ND) |
|---|---|---|---|---|---|
| | HOMICIDE (H) | | | | ACCIDENT VICTIM (AV) |
| | SUICIDE (S) | | | | |
| | ATTEMPTED SUICIDE (AS) | | | | OTHER (O) _ _ _ _ _ _ _ _ |

**11**

| S-1 | CODE | NAME (LAST, FIRST, MIDDLE) | ADDRESS | | | SEX | AGE | DOB |
|---|---|---|---|---|---|---|---|---|
| **VICTIM** | NATURE OF INJURIES | | | HOSPITAL AND/OR PHYSICIAN | | | | |
| | DATE OF DEATH | CORONER OR M.E. | | AUTOPSY YES ☐ NO ☐ | PATHOLOGIST | | | KIN NOTIFIED YES ☐ NO ☐ |
| S-2 | CODE | NAME (LAST, FIRST, MIDDLE) | ADDRESS | | | SEX | AGE | DOB |
| | NATURE OF INJURIES | | | HOSPITAL AND/OR PHYSICIAN | | | | |
| | DATE OF DEATH | CORONER OR M.E. | | AUTOPSY YES ☐ NO ☐ | PATHOLOGIST | | | KIN NOTIFIED YES ☐ NO ☐ |
| S-3 | CODE | NAME (LAST, FIRST, MIDDLE) | ADDRESS | | | SEX | AGE | DOB |
| | NATURE OF INJURIES | | | HOSPITAL AND/OR PHYSICIAN | | | | |
| | DATE OF DEATH | CORONER OR M.E. | | AUTOPSY YES ☐ NO ☐ | PATHOLOGIST | | | KIN NOTIFIED YES ☐ NO ☐ |

**12** CODE: UNK. SUBJ. (U)   PERPETRATOR (P)   DEFENDANT (D)   WANTED-WARRANT (W)   CRIM. SUM. (S)   ACCOMPLICE (A)   OTHER (O)

| **TITLE** | | CODE | NAME (LAST, FIRST, MIDDLE) — ADDRESS — ALIAS | | SEX | AGE | DOB |
|---|---|---|---|---|---|---|---|
| | T-1 | P | Vanginderen, Kevin Gordon CUID 222416   A+LS | | M | 22 | 10.23.61 |
| | T-2 | | 17 South Ave Ithaca NY        273-9597 | | | | |
| | T-3 | | | | | | |

**13 WANTED**

| TITLE NO. | RACE | HT. | WT. | HAIR | EYES | CRIME | | SECTION | LAW |
|---|---|---|---|---|---|---|---|---|---|
| JUDGE - NAME, ADDRESS AND TITLE | | | | | | | COUNTY | DATE ISSUED | EXTRADITE YES ☐ NO ☐ |
| TITLE NO. | RACE | HT. | WT. | HAIR | EYES | CRIME | | SECTION | LAW |
| JUDGE - NAME, ADDRESS AND TITLE | | | | | | | COUNTY | DATE ISSUED | EXTRADITE YES ☐ NO ☐ |

**14 INQUIRY**

| NYSIIS ☐ YES ☐ NO | NO. | FILE | DATE | STATION | | C | NO. | DATE | |
|---|---|---|---|---|---|---|---|---|---|
| NCIC ☐ YES ☐ NO | | | | | | A N C E L | | | |

| **16 ID** | PHOTOS TAKEN YES ☐ NO ☑ | BY WHOM | DUSTED FOR LATENT PRINTS YES ☐ NO ☑ | BY WHOM |
|---|---|---|---|---|
| **17 OA** | OTHER AGENCY NOTIFIED NONE | RESPONDED YES ☐ NO ☑ | IF "YES" NAME OF PERSON IN CHARGE - IF "NO" NAME OF PERSON NOTIFIED | |
| **18 SLA** | IF INCIDENT OCCURRED WITHIN LICENSED S L A PREMISES | OWNER'S NAME | BUSINESS NAME | LIC. NO. |

**19**

**NARRATIVE**

At approx 1400 hrs this date, while doing follow up work on CR # 83-421 (Burglary 312-F Fernow) this officer spoke with C-1. C-1 stated that upon his arrival to his office at approx noon this date he noticed the books on his shelf to be out of their normal order. Upon checking the shelf P-1 & P-2 were found to be missing. C-1 stated that he is positive the theft occured sometime late Friday 3/4/83 to early Saturday 3/5/83 as he used P-1 on 3/4/83.

All indications are that T-1 entered the office by climbing over the partition from the open hall way.

**20 ENC**

1. Signature list from Triangle book shop (copy)

| SIGNATURE AND RANK | SHIFT | SHIELD NO. | | APPROVED |
|---|---|---|---|---|
| Barbara Bourne | | | Pd DO | 3/5/83 |

**EXHIBIT F, PAGE 6**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_        PAGE _3_

CASE NO. _83-422_
OTHER AGENCY _83-003451_

_1445 hrs 3/5/83_

This officer spoke with Terry Hoover at Triangle Books to advise him of the stolen books. Mr. Hoover stated that both P-1 and P-2 were sold to him sometime before noon 3/5/83. Upon inspection of the books, the name Richard Baker was partially scratched out, establishing these books as P-1 & P-2. Mr. Hoover further stated that the subject who sold the books was tall, approx 5'11" - 6 ft med. build with sandy colored hair. Mr. Hoover stated he felt he would recognize T-1 should he see him again. Mr. Hoover also provided this officer with a copy of the sign-in log used when books are sold to Triangle. The signature was not legible but the initials were obviously K. V. In the margin of the page was the ID # 222416. Mr. Hoover stated that T-1 had produced a college ID, but could not remember which school.

_1530 hrs 3/5/83_

This officer checked the computer printout under the letter V to attempt to match the ID number. The result was the above listed information on T-1.

MASTER FILE
DO NOT REMOVE

Barbara J. Bourne PO
Investigating Officer

W. R. J. Amis
Supervisor

Date of Investigation _3/5/83_

Date of Approval _3/5/83_

1/76-5M

**EXHIBIT F, PAGE 7**

End #1
CR # 83-422

22 —        x Matt Heyland
25 —        x Tony Samarod
19 —        x Beth Linton
            / John Higgins
13.50       x Benjamin Bodym
2 —
13 —        x Keith Hunn
26 —        x John B. Gallgr
12 —        s Matthew Surley
20 —        Keith Hunn
0902
19 —        x Andrew L. Camun
22 —        x Paul Hariott
14 —        x M Razah
4.50        Gerald Meyer
2 00        x Cesar Mann
1 50        x Zm Sah
22416
28 00       x Knut Vagind
08124
43 —        x Jayath S Harada
19 —        x Valerie Georganas

MASTER FILE
DO NOT REMOVE

**EXHIBIT F, PAGE 8**

IN A 21 EA FILE
DO NOT REMOVE



MARILYN J. TRIVENTI
Bergenfield, NJ
Camping, Student Government — Pre-Vet

GLENN M. TROOST
Staten Island, NY
Animals, Dancing — Pre-Law

GILBERT T.Y. TSO
Foster City, CA
Debating, Math — Engineering, Economics

PHILIP W. TSUNG
Norwood, NJ
Baseball, Chess — Chemistry

PENNY J. TUCKER
Skaneateles, NY
Animals, Soccer — Pre-Vet

GLENN E. TUCKMAN
Norwalk, CT
Music, Swimming — Hotel Administration

DEBORAH A. TUOHEY
N. Syracuse, NY
Animals, Horseback Riding — Science

KEITH P. TURKEL
Scarsdale, NY
Basketball, Soccer — Pre-Law

STEPHEN R. TURNBULL
Palo Alto, CA
Camping, Publications — Engineering

JOHN J. TURNER
Port Washington, NY
Animals, Running — Biological Sciences

SUSAN H. TYLER
La Jolla, CA
Hiking, Student Government — Engineering

STEVEN W. TYNDALL
Boca Raton, FL
Music, People — Science

RANDI S. URBAN
N. Woodmere, NY
People, Publications — Business

OWEN URBAY
West New York, NJ
Basketball, Scuba Diving — Pre-Med

DAWN C. VADNEY
Avon, NY
Photography, Publications — Consumer Economics

JEFFREY L. VALLET
Endwell, NY
Golf, Science — Pre-Vet

DAVID M. VAN BUREN
Atlanta, GA
Football, Travel — Hotel

GREGORY D. VAN DUYNE
Savannah, NY
Basketball, Chess — Pre-Med

KEVIN G. VANGINDEREN
Carmel, NY
Animals, Baseball — Pre-Med

GERRIT VAN LOON
Claverack, NY
Skiing, Frisbee — Pre-Med

CATHERINE VARDAKIS
Elmira, NY
Dancing, Languages — Business

SUSHEELA D. VASAN
New Canaan, CT
Dancing, Gymnastics — Engineering

CAROLEEN L. VAUGHAN
Elmira, NY
Dancing, Drama — Humanities

JOHN A. VAUGHAN
Edmond, OK
Camping, Football — Engineering

**EXHIBIT F, PAGE 9**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_        PAGE __6__

CASE NO. _83-4122_
OTHER AGENCY _83-003451_

_1640 hrs   3/5/83_

This officer returned to Triangle Books and again spoke with Mr. Terry Hoover. This officer showed Mr. Hoover the enclosed 1979 picture of T-1. Mr. Hoover stated that although the hair is not the same, the facial features match. Mr. Hoover further stated he is certain that T-1 is the same subject who sold P-1 & P-2 to him earlier this date.

**MASTER FILE
DO NOT REMOVE**

Barbara J. Bourne      PO
Investigating Officer      Date of Investigation __3/5/83__

Lt. R.J. Lewis
Supervisor      Date of Approval __3/6/83__

1/76-5M      **EXHIBIT F, PAGE 10**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE ___ Burglary _____     PAGE ___ 7 _____

CASE NO. __ 83-422

OTHER AGENCY __ 83-003451

θ730 hrs. 3/6/83

A check was made of the lacation file for additional thefts from Fernow Hall.  The following cases were found:

83-303, 83-306, 83-311, 83-333, 83-339, and 83-368.

Prior to 83-303 there were no reported thefts  from 1981-1983.

83-306, investigated by PO Wittner includes a receipt for the sale of four books to the Campus Store.  This receipt shows an ID # of 22416. (Note:  T-1's ID number is 222416).  PO Wittner indicated in his narrative that the clerk had not written down the full six digits of the subject's ID number.  Further, the receipt shows an illegible signature of a subject with the initials K.V.  A comparison was made of T-1's signature with that from the Campus Store receipt.  While not identical the similarities, particularly in the formation of the K and the V, would indicated that both were made by the same individual.

The books recovered at the Campus Store in conjunction with 83-306 resulted in cases 83-333, 83-339 and 83-368, all previously undetected thefts.

The theft reported in 83-303 occured within the same time frome as 83-306 and its related cases.

The theft in 83-311 occured on or about 2/3/83 from room 306 Fernow; the site of several ofthe other related thefts.

It should be noted that all of the thefts from Fernow during this period have been from normally unsecured rooms and offices easily accessible other that through their doors.  Note:  the 312 office complex can be easily accessed by clombing over the partitions between offices.  Three of the thefts

_Barbara Bourne_          PO        Date of Investigation  3/6/83
(Investigating Officer)

_____        Date of Approval  3/6/83
Supervisor

1/76-5M

**EXHIBIT F, PAGE 11**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _____Burglary_____ PAGE ____8____

CASE NO. ___83-422___

OTHER AGENCY ___83-003451___

have occured in this complex (83-303, 83-421, and 83-422).

It is the opinion of this officer that all eight cases are related due to similaritites of time span, type of items taken and general method of the thefts.

<u>1130 hrs. 3/6/83</u>

PO Wittner contacted via telephone. PO Wittner stated that at the time of the incidents in 83-306 the clerk at the Campus Store stated he could positivly identify the subject who sold him the books should he see him again.



MASTER FILE
DO NOT REMOVE

Barbara J. Bowne                    PO            Date of Investigation  3/6/83
_____
Investigating Officer

J.R.J. Sims                                        Date of Approval  3/6/83
_____
Supervisor    **EXHIBIT F, PAGE 12**

Voluntary Statement

STATE OF NEW YORK
COUNTY OF _Tompkins_
CITY, ~~TOWN,~~ or ~~VILLAGE~~ OF _Ithaca_
Date _3/7/83_        Time _9:30 AM_  Place _TRIANGLE BOOK SHOP_
I, _TERRY HOOVER_                         , am _40_ years of age, born on _JAN 6, 43_ ,
my address is _38 SALO DR     TRUMANSBURG, NY_                    ,
my occupation is _ASS'T MGR_              , and degree of education is _BS_       .
I have been duly warned by _B.J. Bourne_                     , who has identified
himself as _Patrol Officer_

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and
that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or
another person, I freely volunteer the following statement to the aforesaid person.

On Sat March 5ᵀᴴ a man came to Triangle Book Shop to
sell books. The books were Welty "Life of Birds," Sokol "Geometry,"
and Davis "Quant Models for Mgt." I bought the books and
paid $28 ᵒᵒ for them. I also ask for the sellers ID and
made a note of the ID number beside his signiture on our
buy-back sheet. He was a moderatly tall man with dark
hair. Later, after the book were reported stolen, I was
shown a picture by Cornell Safety from the freshman
registry of the suspect. I was sure that it was the same
man from whom I bought the above books.

MASTER FILE
DO NOT REMOVE

I have read this statement consisting of ___1___ page(s) and the facts contained herein are true and correct. I have also been told and I
understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law
of the State of New York.

Subscribed and sworn before me
this_____day of_____, 19____

_____

Title: _____

Affirmed under penalty of perjury
this _7ᵀᴴ_ day of _MARCH_ , 19 _83_

Signed by _Terry Hoover_

Page _1_ of _1_ page(s)

Witness: _Barbara J Bourne_

Witness: _____

5M - 3/82                          **EXHIBIT F, PAGE 13**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_        PAGE _9_

CASE NO. 83-422
OTHER AGENCY 83-003451

0715   3/8/83

The results of this investigation to this point show that T-1



Kevin G. Vanginderen   dob 10/23/61,
603 Winston Ct. Apt. #3   (P)
Ithaca, NY
Ag & LS '83
CU ID  222416

is in some way involved with the following cases:

83-303 — Burglary from 312-C Fernow tape deck and calculator on or about 2/10-2/12/83

83-306 — Petit Larceny from 207 Fernow 2 text books on or about 2/11/83

83-311 — Petit Larceny from 306 Fernow 1 text book believed to have been taken on 2/2 or 2/3/83.

83-333 — Petit Larceny from 306 Fernow 1 text book unknown date recovered in conjunction with 83-306

83-339 — Petit Larceny from 306 Fernow 2 text books unknown date recovered in conjunction with 83-306

83-368 — Petit Larceny from 119 Fernow 1 text book on or about 2/10/83 recovered in conjunction with 83-306

_Barbara J. Bower_   PO     Date of Investigation 3/8/83
Investigating Officer

_Barton R. Ingrassel Jr._     Date of Approval 3/8/83
Supervisor

1/76-5M

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_       PAGE _10_

CASE NO. _83-422_
OTHER AGENCY

83-421 — Burglary room 312-F Fernow
1 stereo tape player/recorder on or about 3/5/83.

83-422 — Burglary room 312-C Fernow
2 text books on or about 3/5/83

83-426 — Burglary room 312-B Fernow
4 text books on or about 3/5/83

83-446 — Pet. Larceny · room 308- Fernow
1 textbook sometime during
last 2 weeks. /jen



Barbara J. Bowen    10    Date of Investigation 3/8/83
Investigating Officer

Burton R. Ingersoll, Sr.    Date of Approval 3/8/83
Supervisor

1/76·5M

**EXHIBIT F, PAGE 15**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE ___Burglary___    PAGE __11__

CASE NO. __83-422__
OTHER AGENCY _____

0730  3/8/83

This officer and PO Wittner responded to 17 South Ave and spoke with the House President. The House President stated that T-1 resided at 603 Winston Court.

0800

This officer and PO Wittner responded to the Winston Court Apt. Office at 103 Salem Dr. Mr. Lucente advised us that T-1 resided in Apt. 3 of bldg. 603.

MASTER FILE
DO NOT R___

0820

This officer and PO Wittner arrived at 603 Winston Ct. Apt. 3 to speak with T-1.

0825

T-1 was advised of his rights by PO Wittner and agreed to come to Barton Hall for further questioning.

0835

T-1 was interviewed by PO Wittner (refer to page 15 ) in the presence of this officer.

0850

T-1 orally admitted to several thefts of books, a calculator, and two tape decks from both Fernow and Bradfield. T-1 was again given his rights by this officer

Barbara J. Bourne        PO
...........................................
Investigating Officer

Barton H. Ingersoll    Lt.
...........................................
Supervisor

Date of Investigation ___3/8/83___

Date of Approval ___3/8/83___

**EXHIBIT F, PAGE 16**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_ ~~MASTER FILE~~ PAGE _12_

~~DO NOT REMOVE~~

CASE NO. _____

OTHER AGENCY _83-422_

**0900**
   T-1 signed a waiver of Rights form.
   T-1 then prepared a written statement confessing
to the crimes.

**0930**
   District Attorney Bucko notified at this time.

**0950**
   This officer, PO Wittner and T-1 returned to
his residence to pick up items T-1 stated he
had obtained in other burglaries and had kept.
T-1 signed a consent to search form.
   Found in T-1's bed room were the following

   1) T I 55 Calculator    serial # 3896699    #83-240

   2) Sanyo Tape recorder (cassette)    #83-241

   3) JVC stereo cassette player/recorder    #83-236
            serial # 17631022

**1000**
   Upon return to Barton Hall the above listed
items were tagged as evidence (tag #83-236)
and a receipt given to T-1.    83-240
                    83-241

**1020**
   T-1 was fingerprinted and photographed by
PO Wittner.

**1035**
   T-1 interviewed by Lt. Boice, refer to encl. #6
for details

_Barbara J. Bower_    PO
Investigating Officer      Date of Investigation _3/8/83_

_Barton R. Ingersoll_, Lt.
Supervisor      Date of Approval _3/8/83_

**EXHIBIT F, PAGE 17**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_                                    PAGE _13_

CASE NO. _83-422_

OTHER AGENCY

1145
    V.P. Gurowitz advised of this case by Capt. Murphy.

1200

    T-1 was transported to City Court for arraignment before Judge Ward. T-1 was released in his own recognizance to appear at a Preliminary Hearing in City Court on March 18, 1983.

    T-1 remained with Ithaca Police Dept. Detectives for further processing.

**MASTER FILE DO NOT REMOVE**

1420

    This officer and PO Wittner responded to 312-C Fernow Hall and spoke with C-1.

    C-1 stated that he had at no time authorized T-1 to remove any items from his office.

    C-1 was shown the items obtained at T-1's residence for possible identification. C-1 identified the calculator and the Sanyo tape deck as those that were taken from his office on or about 2/10/83. (Refer CR 83-303) Enclosed is a signed statement to this effect from T-1.

1500

    During the course of the interviews with T-1, T-1 repeatedly confessed to taking text books from room 411 Bradfield Hall during the course of the past year.

Barbara J Baum                    PO          Date of Investigation   3/8/83
_____
            Investigating Officer

Burton D Ingersoll    Lt.                     Date of Approval        3/9/83
_____
            Supervisor

**EXHIBIT F, PAGE 18**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _____ Burglary _____                    PAGE _____ 14 _____

MASTER FILE
DO NOT REMOVE

CASE NO. 83-422
OTHER AGENCY

This confession establishes T-1 as the perpetrator of the following cases.

82-1670 — Petit Larceny from 411 Bradfield 3 text books unknown date

82-1685 — Petit Larceny 411 Bradfield 1 textbook on or about 10/28 - 11/15/82.

82-1686 — Petit Larceny 411 Bradfield 3 text books on or about 11/11 - 11/18/82

82-856 — Burglary 411 Bradfield 4 text books, 1 hand lens 1 dissecting kit sometime during May 1982.

82-868 — Petit Larceny 411 Bradfield 7 text books, unknown date reported 6/4/82.

1530
Dean Drinkwater notified of this case by Lt. Boice.

Recover of value

Barbara J Bourn          PO          Date of Investigation  3/8/83
Investigating Officer

Barton N Ingersoll St.                Date of Approval  3/8/8
Supervisor

1/76-5M

**EXHIBIT F, PAGE 19**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE  Burglary                                                    PAGE   15

CASE NO. 83-422

OTHER AGENCY

0835 hrs, 3-8-83, the defendant was interviewed by this officer about the books he sold over the past several weeks He stated that he saw a list of books for sale in the laundry with a telephone number on it several weeks ago and that he called the number and arranged a meeting at Uris library with a hispanic male, bought books then resold them. He then said that he remembered the number on friday and called again, met with the subject and bought the books in CR# 83-422, took them to triangle and sold them on Saturday.

This officer then asked the defendant how it was possible that he bought the books on friday when C-1 stated that they were taken sometime late friday night or saturday morning. The defendant then admitted that he took the books from fernow hall that he did not buy them, He said " I went into the rooms and took the books, stereo, calculator and tape deck. I am a poor student and sold the books to get money." He was then asked about other thefts from fernow hall and he stated that he took the books. He was then asked about the book thefts from Bradfield Hall for the period from 6-2-82 to 11-15-82. He said that he took the books. when asked how he gained access to the building he said that he had worked in the Lab (room 411) and was given a key to the building and the room, that when he quit no one asked him for the keys back. He was then asked how he got into Fernow Hall. He said that by using his key to the Outside door to Bradfield and going into the basement that there is a tunnel that goes to fernow and that the only door there has a crash bar on it. Once inside fernow he went to the rooms and took the books.

Wayne L. Wiltrue
Investigating Officer

Barton R. Ingersoll
Supervisor

MASTER FILE
DO NOT REMOVE

Date of Investigation  3-8-83

Date of Approval  3-8-83

1/76-5M

**EXHIBIT F, PAGE 20**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_ _____ PAGE _16_

CASE NO. _83-402_

OTHER AGENCY _____

The two yale keys numbered BJ-1 and 6FX were taken as evidence and assigned evidence tags 83-237. When asked why he took the books he stated again that he was just a poor student and that he took them to have money to live on and he took the stereo, tapedeck and calculator for his own use. He wanted to know what took us so long to catch him, that he expected to be caught a year ago, and since he didn't he continued by taking things from Fernow Hall.



Wayne L. Wiltver
_____Investigating Officer_____          Date of Investigation  3-8-83

Barton N. Ingersoll
_____Supervisor_____          Date of Approval  3-8-83

1/76-5M

**EXHIBIT F, PAGE 21**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _Burglary_____     PAGE _17_

CASE NO. 83-422

OTHER AGENCY _____

The following enclosures are continued from page #1.

#5. Voluntary Statement from C-1

#6. Interview of Defend. by Lt. Boice

#7. Advice of Rights Form

#8. Consent to Search form

#9. Oral Admissions form

10. Written Admissions forms.

11. Accusatory Instrument.

12. Affidavit of Service form

MASTER FILE
DO NOT REMOVE

Closed refer to Ct.

TOTAL CASE sent to I.P.D. 4/8/83 1700hrs.  (B)

_Barbara J. Baum_  PD
Investigating Officer

_Barton R. Ingersoll Jr._
Supervisor

Date of Investigation  3/8/83

Date of Approval  3/8/83

1/76-5M

EXHIBIT F, PAGE 22

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE Burglary _____     PAGE  18 ____

CASE NO. 83-422    OTHER AGENCY

1335 hrs, 3-9-83, Dawson Deanna K, 308 Fernow Hall reported that the text book, Natures + Properties of Soils, had been taken out of 308. CR# 83-446. This book has not been recovered.

0930 hrs, 3-10-83, this officer spoke with Hollenbeck, Lorraine A., Secretary, Plant Breeding, 252 Emerson Hall. Ms. Hollenbeck is incharge of key issue for Plant Breeding. Ms Hollenbeck said that the defendant was hired by Plant Breeding on 10-2-81 and worked untill 10-13-81. She said she could not be sure, but the records show that the defendant was terminated because of illness and she thought he was the one with mononecieosis. She also said that the defendant was issue the keys and that the department never asked for them back.

It is believed that the defendant was the perpetrator of the following thefts.

Bradfield Hall

82-856
82-868
82-1670
82-1685
82-1686

Fernow Hall

83-303
83-306
83-311
83-333
83-339
83-368
83-421
83-422
83-426
83-446



In his statement to Lt. Boice ENC#6, page 4 of this report he admitted to burglarizing Bradfield Hall 3 or 4 times and Fernow Hall 3 times.

Wayne L Wittner
_____
Investigating Officer

_____
Supervisor

1/76-5M

Date of Investigation  3-11-83

Date of Approval  3-11-83

**EXHIBIT F, PAGE 23**

ENC #3

STATE OF NEW YORK
COUNTY OF _Tompkins_
CITY, ~~TOWN, or VILLAGE~~ OF _Ithaca_
Date _3/7/83_    Time _7:30 AM_    Place _Triangle Book Shop_
I, _Terry Hoover_, am _40_ years of age, born on _Jan 6, 43_,
my address is _38 Snell Dr    Trumansburg    NY_,
my occupation is _Ass't Mgr_, and degree of education is _BS_
I have been duly warned by _C.J. Bourne_, who has identified
himself as _Police Officer_

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or another person, I freely volunteer the following statement to the aforesaid person.

_On Sat March 5th a woman came to Triangle Book Shop to sell books. The books were "Life of the Soviet Peasantry" and Dawn "Quant Modely of Wright". I bought the books and paid $3 for them. I checked the seller's ID and wrote a note of the ID number + the description on our buy back sheet. He was a moderately tall man with dark hair. Later when the book was spotted I was shown a picture by Captain Stally from the fire marshal's office of the suspect. I was told that it was the same person when I bought the above books._

READING FILE
DO NOT REMOVE

I have read this statement consisting of __1__ page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me
this_____day of_____, 19_____

_____

Title:_____

Affirmed under penalty of perjury
this _7th_ day of _March_, 19_83_

Signed by _Terry Hoover_

Page _1_ of _1_ page(s)

Witness: _Barbara J Bourne_

Witness:

5M - 3/82

**EXHIBIT F, PAGE 24**

DO NOT FILE REMOVE

STATE OF NEW YORK
COUNTY OF __TOMPKINS__
CITY, TOWN OF VILLAGE OF __ITHACA__
Date __3/8/83__ Time __9:10 AM__ Place __Barton Hall__
I, __Kevin G. Vanginderen__, am __21__ years of age, born on __10/23/61__,
my address is __603-3 Winston Court Apartments__
my occupation is __Student__, and degree of education is __college senior__.
I have been duly warned by __Barbara J. Bourne__, who has identified
himself as __Patrol Officer__

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or another person, I freely volunteer the following statement to the aforesaid person.

I, Kevin G. Vanginderen, admit to taking a few books, a calculator, and two small cassette decks from Fernow Hall. I will return the calculator and tape decks for I still possess them. I also admit entering a lab at Bradfield Hall for the purpose of taking a few textbooks. All of these textbooks were sold to the Campus Store and Triangle Book Store for cash. This cash allowed me to survive in poor times for I am an extremely poor college student deeply in debt with little other options.

OFFICER WITTNER: You stated that you took books from Bradfield Hall. How did you gain entrance to Bradfield and the labs?

VANGINDEREN: I had a key for the building and lab given to me when I had a lab job there two years ago and nobody asked for its return.

WITTNER: The only things you took out of Bradfield were the books?

VANGINDEREN: From that one lab.

WITTNER: You didn't take anything else?

VANGINDEREN: Not in Bradfield.

WITTNER: How did you gain entrance into Fernow Hall?

VANGINDEREN: A tunnel leading from the basement of Bradfield Hall to Fernow which is unlocked. I gained entrance through it.

WITTNER: The rooms you took the books from in Fernow -- were the rooms locked?

VANGINDEREN: No. The rooms I went into on the main corridor were unlocked. The ones at the ends of the corridor had spaces above the doors, which I

I have read this statement consisting of __2__ page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me
this_____day of_____, 19____

_____

_____

Title:_____

Affirmed under penalty of perjury
this __4th__ day of __March__, 19__83__

Signed by _Kevin Vanginderen_

Page __1__ of __2__ page(s)

Witness: _H. W. G. Price_

Witness: _____

RM - 3/72

**EXHIBIT F, PAGE 25**

STATE OF NEW YORK
COUNTY OF ___TOMPKINS___
CITY, ~~TOWN, or VILLAGE OF~~ ___ITHACA___
Date ___3/8/83___          Time ___9:10 AM___     Place ___Benton Hall___
I,___Kevin G. Vanginderen___, am __21__ years of age, born on __10/23/61__,
my address is_____    __603-3 Winston Court Apartments_____
my occupation is___Student___, and degree of education is __college senior__
I have been duly warned by___Barbara J. Bourne_____, who has identified
himself as___Patrol Officer_____

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and
that I have the right to talk to a lawyer for advice before making this statement. Without fear of threat of physical harm upon me or
another person, I freely volunteer the following statement to the aforesaid person.


_____jumped._____

WITTNER:  All the books you took last year and this year were sold to Campus

          Store and Triangle Book Store.

VANGINDEREN:  Yes.

WITTNER:  Not to a private individuals

VANGINDEREN:  No.

I have read this statement consisting of___2___ page(s) and the facts contained herein are true and correct. I have also been told and I
understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law
of the State of New York.

Subscribed and sworn before me                     Affirmed under penalty of perjury
this_____day of_____, 19____         this__8th__ day of __March__, 19_83_

_____                       Signed by ___Kevin Vanginderen___

_____                       Page __2__ of __2__ page(s)

Title:_____                       Witness: ___H. W.G. Snell___

                                                   Witness: _____

5M - 3/72                    **EXHIBIT F, PAGE 26**

Voluntary Statement

STATE OF NEW YORK
COUNTY OF Tompkins
CITY, ~~TOWN, or VILLAGE~~ OF Ithaca
Date 3-8-83          Time 1420          Place Fernow Hall
I, Richard J Baker                          , am 29 years of age, born on 12/4/53
my address is 134 Judd Falls Rd., Ithaca, NY.
my occupation is Graduate Student          , and degree of education is grad. student.
I have been duly warned by Wayne L. Wittner          , who has identified
himself as Cornell Patrol Officer.
~~that I do not have to make any statement at all, and that any statement I make~~ may be used in evidence against me in a court of law, ~~and that I have the right to talk to a lawyer for advice before making this statement.~~ Without fear of threat of physical harm upon me or another person, I freely volunteer the following statement to the aforesaid person.

RJB On 2/10/83, I was in my office working. On that day, I used my TI-55 calculator and a Sanyo casette tape deck I had borrowed. When I returned to my office on 2/13/83, both were missing. I reported the theft to Cornell Public Safety on 2/14/83. On 2/23/83, I again worked in my office. On 3/25/83, I returned to my office and found two books: Life of Birds, Welty and Biometry, Sokal&Rolf missing. I immediately reported these thefts to Public Safety. RJB

RJB At no time during this period had I given permission to anyone to borrow any of this material. RJB

RJB At ~2:20pm, Officers Bourne & Wittner brought in our tape player and calculator. I positively identified these as mine. RJB

I have read this statement consisting of 1 page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me
this_____ day of_____, 19_____

_____

Title:_____

Affirmed under penalty of perjury
this 8 day of March, 19 83
Signed by Richard J Baker
Page 1 of 1 page(s)
Witness: Wayne L. Wittner
Witness: Barbara J Bourne

5M - 3/82

**EXHIBIT F, PAGE 27**

Voluntary Statement

STATE OF NEW YORK
COUNTY OF _Tompkins_
CITY, ~~TOWN, or VILLAGE OF~~ _Ithaca_
Date _3-8-83_    Time _1420_    Place _Fernow Hall_
I, _Richard J. Baker_, am _29_ years of age, born on _12/4/53_,
my address is _134 Judd Falls Rd., Ithaca NY_
my occupation is _Graduate Student_, and degree of education is _grad. student_.
I have been duly warned by _Wayne L. Wittner_, who has identified
himself as _Cornell Patrol officer_.

~~that I do not have to make any statement at all, and that any statement I make may be used in evidence against me in a court of law, and~~
~~that I have the right to talk to a lawyer for advice before making this statement.~~ Without fear of threat of physical harm upon me or
another person, I freely volunteer the following statement to the aforesaid person.

RJB On 2/10/83, I was in my office working. RJB On that day, I used my TI-55 calculator and a Sanyo casette tape deck I had borrowed. When I returned to my office on 2/13/83, both were missing. I reported the theft to Cornell Public Safety on 2/14/83. On 2/24/83, I again worked in my office. On 3/05/83, I returned to my office and found two books: Life of Birds, Welty and Biometry, Sokol Rolf missing. I immediately reported these thefts to Public Safety. RJB

RJB At no time during this period had I given permission to anyone to borrow any of this material. RJB

RJB At ~2:20pm, Officers Bourne & Wittner brought in my tape player and calculator. I positively identified these as mine. RJB

I have read this statement consisting of _1_ page(s) and the facts contained herein are true and correct. I have also been told and I understand that making a false written statement is punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.

Subscribed and sworn before me
this_____ day of_____, 19_____

_____

Title: _____

Affirmed under penalty of perjury
this _8_ day of _March_, 19_83_

Signed by _Richard J Baker_

Page _1_ of _1_ page(s)

Witness: _Wayne L. Wittner_

Witness: _Barbara J Bourne_

5M - 3/82

**EXHIBIT F, PAGE 28**

Interview of Kevin G. Vanginderen by Lt. William Boice, Public Safety, recorded by Joelle Munson, Public Safety, took place in the Major Investigations Office at 1035 hours, March 8, 1983. Lt. Boice began by having Vanginderen read his previous brief statement, which Vanginderen approved as correct and signed. Lt. Boice then began the following line of questioning: (B - Boice; V-Vanginderen)

B - Please state the facts in your own words.

V - About two years ago, I had a lab job at Bradfield Hall, which gave me a key to the building and Room 411. I noticed while I was working there that there were a lot of students that had books from courses they were no longer taking. I took some of these books and sold them to Campus Store and Triangle Book Store for $10. I am only getting poorer as a college student. I have a job also but when I ran out of cash, I would go to the lab and take a few books. I would only get $15 or $20 for them at a time. I went to Bradfield a couple of times the last semester and a couple of times this year, only when I needed the cash. Last semester, they changed the lock to one of the labs. I noticed the tunnel to Fernow this semester and the door was unlocked as well as the rooms. It was the same as in Bradfield, with lots of books that people didn't need. I took a few of them. In one office, there was a calculator on a desk and cassette recorder; and in another room, there was a cassette deck. They were the only things besides books that I took.

B - What were the dates of your employment at Bradfield Hall?

V - Approximately October to December 1981 -- the first semester of my junior year.

B - You were employed on the fourth floor?

V - Yes, 411, I think.

B - When approximately did you find yourself in a position where you started stealing?

V - The next semester. I was amazed that no one asked for the key and I had noticed the books.

B - You did not commit any thefts in 1981?

V - No, only second semester.

B - Approximately when did you start?

V - It doesn't stick out.

B - I have one case here from June 1982 (CR82-856).

V - All the books may not have been discovered for a long time. I was not here over the summer. All the books were scientific.

B - This case occurred in May. Do you remember names and titles -- Principles of Plant Breeding and Plant Pathology?

V - They were all plant or scientific books -- all from labs or science offices.

B - Case 82-868 -- 8 books in Bradfield Hall, Room 411?

V - Yes

**EXHIBIT F, PAGE 29**

INTERVIEW OF KEVIN G. VANGINDEREN -- March 8, 1983                    Page 2

B - List of books -- Breeding Field Crops, Soils and Soil Fertility, Mycogenetics, Statistics, Plant Pathology, Biochemstry, Toxins in Plant Disease, and Plant Breeding II.

V - Sounds it.

B - Case 82-1670 -- 411 Bradfield Hall -- three textbooks -- Property of Soil, Plant Structure and Function, and Plant Breeding -- November 1982?

V - Sounds it.

B - Case 82-1685 -- 411 Bradfield Hall -- November 1982 -- textbook -- Plant Mineral Nutrition?

V - If they're from 411 ... don't know exact titles.

B - Case 82-1682 -- three textbooks?

V - (Nodded yes)

B - Case 83-303 -- occurred February 10-12 -- Unlawful entry into Room 312C Fernow Hall in which a calculator, TI-55, and a Sanyo tape deck recorder were taken.  Were you responsible for these?

V - Yes, they have them. (officers)

B - These are the two items that were recovered in your room?

V - (Nodded yes)  In the next room, there was another cassette deck.

B - Case 83-306 -- 207 Fernow Hall -- occurred February 11, 1983 -- two textbooks?

V - Yes

B - Case 83-311 -- February 2 and 3 -- Room 306 Fernow -- Textbook -- Aquatic Chemistry?

V - Not offhand; what room?

B - 306

V - I imagine.

B - Case 83-333 - 306 Fernow -- Approximately middle of February?

V - If the room is the same, they're probably just different discoveries of the same theft.

B - One textbook -- Biological Science?

V - (Nodded yes)

B - Case 83-421 -- March 3-5 -- 312F Fernow -- JCV stereo cassette player recorder taken on a Burglary where the subject climbed over a partition.  Are you responsible for this?

V - Yes.  It was the last theft at 2 AM Saturday.

B - Case 83-422 - 312C Fernow -- March 4 and 5 -- Burglary -- theft of two textbooks -- Biometry and The Life of Birds.  Do you remember these two?

V - Sounds familiar.



**EXHIBIT F, PAGE 30**

MASTER FILE
DO NOT REMOVE

INTERVIEW OF KEVIN G. VANGINDEREN -- March 8, 1983                    Page 3

B - They were the two you sold to Triangle Book Store.

V - (Nodded yes)

B - Case 83-426 -- 312B Fernow Hall -- March 5 -- Burglary -- four textbooks stolen --
    Resource Economics; Applied Theory of Price; The Way of Chung Tzu; Leisure -- The
    Basis of Culture.  Are you familiar with this case?

V - Sounds familiar.

B - Where are these books now?

V - I have two paperbacks still.  The others were sold to Campus Store and Triangle
    Book Store, I believe.

B - Have you stolen from any other building besides Bradfield and Fernow?

V - I only stole from buildings that I had access to.  I'm not a nervy person.  I only
    stole at night with a key.  I didn't break down doors.  The rooms were obviously
    open and vulnerable.

B - Do you know anything about the theft of a dollar bill changer at the Multi-Cat?

V - No

B - Do you know anything about tampering with an element analyzer on the 8th floor of
    Bradfield Hall?

V - Know nothing about it.

B - How about miscellaneous things like the theft of soda pop on the 8th floor of Bradfield
    Hall?

V - I was never on the 8th floor.

B - Your residence is 603 Winston Court, Apartment 3.  No problems up there?

V - (Shook head no)  I only took books that I figured people didn't need.

B - Can you explain to me why?

V - I currently owe the university approximately $1,000, a fraternity $700, and living
    expenses are high.  I foresee myself graduating in debt.  The job at Lynah's not
    enough -- I could go hungry.  I have $5 in my pocket now from the last books I sold.
    My bank account is empty.  I feel remorse and yet I would not have eaten otherwise.
    A strange remorse -- I would not be at college.  Tuition is up -- financial aid is
    down.  I'm a graduating senior -- though not in an honest fashion.

B - Are you involved in any other activities?

V - No

B - Is your roommate involved?

V - No.  Obviously, I took things that were there for the taking.  I didn't break in.
    My friends are not like that.

**EXHIBIT F, PAGE 31**

INTERVIEW OF KEVIN G. VANGINDEREN -- March 8, 1983                Page 4

B - How many times do you think you burglarized offices?

V - Bradfield -- three or four times -- maybe a little more.  Fernow -- three times.

B - Each time you entered Bradfield, did you use your key?

V - Yes

B - Was this after you were terminated from your job?

V - I was never officially terminated.  I had a lab job with a loose schedule -- I
    came in when I wanted.  I didn't come in any more because I didn't get along
    with my boss.  I figured that they would have taken my key back -- they never
    asked for it.

B - You entered Fernow via the tunnel:

V - (Nodded yes) The unlocked door.

B - You entered offices by climbing over the doors?

V - No, open doors.  I only climbed over two doors.

B - Which cases were those?

V - The tape decks and the calculator.



MASTER FILE
DO NOT REMOVE

ENC #7 83-422

INTERROGATION; ADVICE OF RIGHTS

YOUR RIGHTS

MASTER FILE
DO NOT REMOVE

PLACE _Barton Hall_

DATE _3/8/83_

TIME _0900_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS

I have read this statement of my rights an I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _Kevin Vanguard_

Witness _Barbara J Bonne_

Witness _Wayne L Witto_

Time _0900_

**EXHIBIT F, PAGE 33**

## CONSTITUTIONAL RIGHTS

### CONSENT TO SEARCH

The right of the people to be secure in their papers, houses, persons and effects, against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.  (Fourth Amendment to the Constitution of the United States.)

---

I, _Kevin G. Vanginderen_ , having been informed of my Constitutional Rights not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize _Wayne Wittner_ and _Barbra Bourne_, Officers of the Cornell University Safety Division to conduct a complete search of my residence located at _603 Winston Ct. Apts   Apt #5_ . These officers are authorized by me to take from my residence any letters, papers, materials or other property which would be considered contraband.

This written permission is being given by me to the above named officers voluntarily and without threats or promises of any kind, to commence at _0950_ on _3-8-83_ and to conclude by _0952_ on _3-8-83_ .

_Signature_

_Wayne L. Wittner_
Witness

_Barbara J. Bourne_
Witness

MASTER FILE DO NOT REMOVE



NOTICE OF INTENT TO USE ADMISSIONS
SCHEDULE A
* * * * * * * * * * * * * * * *
ORAL ADMISSIONS

Date: 3-8-83                    Time: 0900 hrs.

Place: Barton Hall

Made To: Wayne L Wittner

Substance of Admissions: "I went into the rooms and Took the books, ~~and~~ stereo, calculator, and tape deck. I am a poor student and sold the books to get money"


Date:                          Time:

Place:

Made To:

Substance of Admissions:




Date:                          Time:

Place:

Made To:

Substance of Admissions:

STRICT ATTORNEY
OMPKINS COUNTY
CA. NEW YORK 14850

**EXHIBIT F, PAGE 35**

NOTICE OF INTENT TO USE ADMISSIONS
SCHEDULE B
* * * * * * * * * * * * * * * * *
WRITTEN ADMISSIONS
(Including Preliminary Oral Admissions)

Date: 3/8/83                         Time: 0910

Place: Barton Hall

Made To: Barbara J. Bourne

Copy attached as Exhibit _encl. #4 CR 83-422_


Date:                                Time:

Place:

Made To:

Copy attached as Exhibit _____

MASTER FILE
DO NOT REMOVE


Date:                                Time:

Place:

Made To:

Copy attached as Exhibit _____


Date:                                Time:

Place:

Made To:

Copy attached as Exhibit _____

STRICT ATTORNEY
TOMPKINS COUNTY
CA. NEW YORK 14850

STATE OF NEW YORK : COUNTY OF TOMPKINS
CITY COURT        : CITY OF ITHACA

CR # 83-422

THE PEOPLE OF THE STATE OF NEW YORK

- vs -

Kevin G. Vanginderen   DOB 10/23/61 ,
                                    *Defendant*

ACCUSATORY
INSTRUMENT

MAS ... LEE
DO NOT REMOVE

## A C C U S A T I O N

BE IT KNOWN THAT, by this Accusatory Instrument, Barbara Bourne ,

as the Complainant herein, accuses Kevin G. Vanginderen ,

the above named Defendant, with having committed the offense of

Burglary in the third Degree ,

in violation of the Section 140.20 , Subdivision of the Penal Law

of the State of New York, xxViolationxxxxxxxxxxxxxxxxxMisdemeanorxxx a Class D Felony.

### F A C T S

On or about the 5th day of March 1983 , the said defendant did, in the City of Ithaca, County

of Tompkins, New York,

did knowingly enter or remain unlawfully in a building , to wit: defendant entered at approx.

2:00AM room 312C Fernow Hall, Tower Road, Cornell University, City of Ithaca, N.Y., to committ

the crime of larceny therein by stealing books, with said office space belonging to Richard

J. Baker, with all action by defendant without authorization, are contrary to the provisions

of the Statute in case made and provided.

The above allegations of fact are made by the Complainant herein:

.......... upon direct knowledge

XXXXX upon information and belief, with the sources of Complainant's information and the grounds for his

belief being Investigation of case (Cornell) 83-422 and sworn confession of defendant

WHEREFORE, Complainant prays that a warrant be issued for the arrest of the said defendant.

Barbara Bourne
*Complainant*

### N O T I C E
(Penal Law, Section 210.45)

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE
OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A
FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE
TO BE TRUE.

Affirmed under penalty of perjury this 8th

day of March , 19 83 .

Sworn to before me this .......... day

of .........., 19 ....... .

OR

Barbara Bourne
*Complainant*

Judge or Justice, Desk Officer or Superior, or
other authorized person.

**EXHIBIT F, PAGE 37**

Court

NOTICE

To: _____Kevin G. Vanginderen_____    D.O.B. ____10/23/61____

_____

PLEASE TAKE NOTICE that you have been arrested for the commission of the crime of _____Burglary in the third degree____D_____ _____, a felony, in the City/Xxxxxx/Xxxxxx of __Ithaca_____in Tompkins County, New York. Because this is a felony matter, a Tompkins County Grand Jury will hear evidence relating to the incident which served as the basis for your arrest upon this charge. If the Grand Jury finds that there is sufficient evidence, an indictment may be returned against you.

Pursuant to Section 190.50 of the Criminal Procedure Law of the State of New York, you have the right to appear before the Tompkins County Grand Jury considering your case and give testimony in your own behalf under a waiver of immunity.

If you wish to so give evidence on your own behalf before the Grand Jury, please serve upon me a written notice pursuant to Section 190.50 stating your desire to so give evidence. That notice should be served upon me immediately (if you wish to testify) as a Grand Jury may consider your case at any time without further notice, regardless of the action taken by the Court in which you now appear. That notice must contain an address to which you want me to send notice of a time for you to appear as a witness before the Grand Jury (if there is more than one such address, please provide all such addresses on your written notice). Thereafter, I will notify you relative to a time for your appearance.

~~JOSEPH JOCH~~ *Benjamin Bucko*
Tompkins County District Attorney
Tompkins County Court House
Ithaca, New York 14850
(607) 273-2080

DO NOT REMOVE

## ADMISSION OF SERVICE

I acknowledge that I received a copy of this notice from__Barbara Bourne_____ on the__8th___day of__March_____, 19_83_.    _Kevin Vanginderen_

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    :
COUNTY OF TOMPKINS:    SS.

_____Barbara Bourne_____,being duly sworn, deposes and says that on the _____8th_____day of__March_____,19_83_, I served a copy of the notice set forth above upon_____Kevin G. Vanginderen_____, the defendant charged with felony set forth herein, xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxXxxxxx

_Barbara Bourne_

Sworn to before me this ____8th_____

day of· __March_____,

19_83_·

_Barton R. Ingersoll_
Notary Public

BARTON R. INGERSOLL
Notary Public, State of New York
No. 4703936
Qualified in Tompkins County
Term Expires March 30, 19_84_

**EXHIBIT F, PAGE 38**

CORNELL UNIVERSITY DEPARTMENT OF PUBLIC SAFETY

# SUPPLEMENTARY INVESTIGATION REPORT

OFFENSE _____ Burglary _____    PAGE __13_____

09/08/83 - Contacted ADA Mulvey regarding the return of evidence in the Vanginderen case. Per ADA Mulvey, County Court had previously dismissed the Grand Jury Indictment based on a typographical error, to wit: Vanginderen indicted on Burglary 3rd and Criminal Possession of Stolen Prop. 2nd but DA's office presented it as Burglary 2nd. ADA Mulvey advised that Vanginderen plead guilty in City Court of Criminal Possession of Stolen Property 3rd Degree — Class A Misdemeanor and was given a conditional discharge.

09/08/83 & 09/09/83 - all evidence was returned to respective owners.

H. W. G. Brice
_____
Investigating Officer

Date of Investigation    09/22/83

Date of Approval    **EXHIBIT F, PAGE 39**

Supervisor

MASTER FILE
DO NOT REMOVE

To: _____ Kevin G. Vanginderen _____    D.O.B. ____10/23/61___

PLEASE TAKE NOTICE that you have been arrested for the commission of the crime of _____ Burglary in the third degree _____ D

_____, a felony, in the City/Town/Village of ___Ithaca_____ in Tompkins County, New York. Because this is a felony matter, a Tompkins County Grand Jury will hear evidence relating to the incident which served as the basis for your arrest upon this charge. If the Grand Jury finds that there is sufficient evidence, an indictment may be returned against you.

Pursuant to Section 190.50 of the Criminal Procedure Law of the State of New York, you have the right to appear before the Tompkins County Grand Jury considering your case and give testimony in your own behalf under a waiver of immunity.

If you wish to so give evidence on your own behalf before the Grand Jury, please serve upon me a written notice pursuant to Section 190.50 stating your desire to so give evidence. That notice should be served upon me immediately (if you wish to testify) as a Grand Jury may consider your case at any time without further notice, regardless of the action taken by the Court in which you now appear. That notice must contain an address to which you want me to send notice of a time for you to appear as a witness before the Grand Jury (if there is more than one such address, please provide all such addresses on your written notice). Thereafter, I will notify you relative to a time for your appearance.

~~JOSEPH JOCH~~ *Benjamin Bucko*
Tompkins County District Attorney
Tompkins County Court House
Ithaca, New York 14850
(607) 273-2080

# ADMISSION OF SERVICE

I acknowledge that I received a copy of this notice from __Barbara Bourne_____ on the __8th__ day of __March_____, 19_83_.

_____ (signature)

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK    :
COUNTY OF TOMPKINS:    SS.

_____ Barbara Bourne _____, being duly sworn, deposes and says that on the _____ 8th ____ day of __March_____, 19_83_, I served a copy of the notice set forth above upon_____ Kevin G. Vanginderen _____, the defendant charged with felony set forth herein, xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxx

_____ (signature) *Barbara J. Bourne*

Sworn to before me this _____ 8th _____

day of ___March_____,

19_83_.

_____
Notary Public

BARTON R. INGERSOLL
Notary Public, State of New York
No. 4703936
Qualified in Tompkins County
Commission Expires March 30, 19 84

**EXHIBIT F, PAGE 40**

# SUBPOENA

FILE NO. ............................

## In the Name of the People of the State of New York

TO   RICHARD BAKER, 134 Budd Falls Road
3/2 C Thruway 6-3191

YOU ARE HEREBY COMMANDED to appear before a Grand Jury held in and for the County of Tompkins and State of New York at the Grand Jury Room in the Tompkins County Court House in the City of Ithaca in the County of Tompkins and State of New York on Tues., May 24, 1983 at 2:30 A.M./P.M. as a witness in an investigation regarding

KEVIN VANGILDER.

...............................................................................................................

...............................................................................................................

...............................................................................................................

...............................................................................................................

and to also appear as aforesaid on any recessed or adjourned date of the said investigation, and for a willful failure to so appear you will be deemed guilty of a Criminal Contempt of Court and will be liable for the punishment provided therefor by law.

Dated at the City of Ithaca in the County of Tompkins and State of New York this 20th day of ................May................, 19....83.

_Benjamin J. Bucko_
District Attorney of Tompkins County ......BCM/dkl

NOTICE — You should appear promptly at the time set in the Subpoena, and you should report to the District Attorney's Office rather than waiting in the public corridor outside the grand jury room, if you desire. The grand jury does not always meet in the same place. You should also turn in your subpoena to the District Attorney's Office for reimbursement of your mileage expenses. This Subpoena is hereby continued until such time as you are expressly discharged by the District Attorney, an Assistant District Attorney, or the Court.

REPORT OUTSIDE THE GRAND JURY ROOM OR TO THE DISTRICT ATTORNEY'S OFFICE AND REMAIN AVAILABLE UNTIL DISCHARGED.

---

STATE OF NEW YORK                :
                                 : ss
COUNTY OF Tompkins               :          AFFIDAVIT OF SERVICE

I, the undersigned, being duly sworn, do hereby state that I served a true copy of the within subpoena upon the person named therein at 1:20 A.M./P.M. on 5.20.83 at Fernow Hall in the
                                                        (date)              (place)
City/Town/Village of Ithaca in the County of Tompkins and State of N.Y.

_Theodore Schuman_

Sworn to before me this 20th

day of MAY, 19 83.

_David R. Fisher_
Notary Public

DAVID R. FISHER
Notary Public, State of New York
No. 4708934
Qualified in Tompkins County
Term expires March 30 19 84

**RETURN THIS COPY OF SUBPOENA TO DISTRICT ATTORNEY AT LEAST 24 HOURS BEFORE RETURN DATE WITH AFFIDAVIT SERVICE COMPLETED.**

## EXHIBIT F, PAGE 41

# SUBPOENA

FILE NO. .......................

## In the Name of the People of the State of New York

TO ...................................

    **YOU ARE HEREBY COMMANDED** to appear before a Grand Jury held in and for the County of Tompkins and State of New York at the Grand Jury Room in the Tompkins County Court House in the City of Ithaca in the County of Tompkins and State of New York on .................................................................. at .............. A.M./P.M. as a witness in an investigation regarding

..........................................................................................................................................

..........................................................................................................................................

..........................................................................................................................................

..........................................................................................................................................

..........................................................................................................................................

..........................................................................................................................................

and to also appear as aforesaid on any recessed or adjourned date of the said investigation, and for a willful failure to so appear you will be deemed guilty of a Criminal Contempt of Court and will be liable for the punishment provided therefor by law.

    Dated at the City of Ithaca in the County of Tompkins and State of New York this ...............

day of ............................, 19......

                                                    *District Attorney of Tompkins County* ...........................

*NOTICE* — You should appear promptly at the time set in the Subpoena, and you may report to the District Attorney's Office rather than waiting in the public corridor outside the grand jury room, if you desire. The grand jury does not always meet in the same place. You should also turn in your subpoena to the District Attorney's Office for reimbursement of your mileage expenses. This Subpoena is hereby continued until such time as you are expressly discharged by the District Attorney, an Assistant District Attorney, or the Court.

**REPORT OUTSIDE THE GRAND JURY ROOM OR TO THE DISTRICT ATTORNEY'S OFFICE AND REMAIN AVAILABLE UNTIL DISCHARGED.**

---

STATE OF NEW YORK        :

COUNTY OF *Tompkins*    : ss              **AFFIDAVIT OF SERVICE**

    I, the undersigned, being duly sworn, do hereby state that I served a true copy of the within subpoena upon the person named therein at *11:52* (A.M.)/P.M. on *May 20, 1983* at *Barton Hall* in the City/Town/Village of *Ithaca* in the County of *Tompkins* and State of *New York*

.......................................................................

Sworn to before me this *20 TH*

day of *MAY*, 19 *83*.

.......................................................................
Notary Public

DAVID R. FISHER
Notary Public, State of New York
No. 4708934
Qualified in Tompkins County
Term expires March 30, 19 84

**RETURN THIS COPY OF SUBPOENA TO DISTRICT ATTORNEY AT LEAST 24 HOURS BEFORE RETURN DATE WITH AFFIDAVIT SERVICE COMPLETED.**

**EXHIBIT F, PAGE 42**

# SUBPOENA

FILE NO. ...................

## In the Name of the People of the State of New York

TO ........................................................

       **YOU ARE HEREBY COMMANDED** to *appear before a Grand Jury held in and for the County of Tompkins and State of New York at the Grand Jury Room in the Tompkins County Court House in the City of Ithaca in the County of Tompkins and State of New York on* ........................ *at* ............ *A.M./P.M. as a witness in an investigation regarding*

........................................................

........................................................

........................................................

........................................................

........................................................

*and to also appear as aforesaid on any recessed or adjourned date of the said investigation, and for a willful failure to so appear you will be deemed guilty of a Criminal Contempt of Court and will be liable for the punishment provided therefor by law.*

      *Dated at the City of Ithaca in the County of Tompkins and State of New York this* ..........
day of .................., 19 ....

................................................
District Attorney of Tompkins County ........

NOTICE — You should appear promptly at the time set in the Subpoena, and you may report to the District Attorney's Office rather than waiting in the public corridor outside the grand jury room, if you desire. The grand jury does not always meet in the same place. You should also turn in your subpoena to the District Attorney's Office for reimbursement of your mileage expenses. This Subpoena is hereby continued until such time as you are expressly discharged by the District Attorney, an Assistant District Attorney, or the Court.

REPORT OUTSIDE THE GRAND JURY ROOM
OR TO THE DISTRICT ATTORNEY'S OFFICE
AND REMAIN AVAILABLE UNTIL DISCHARGED.

---

STATE OF NEW YORK    :

COUNTY OF TOMPKINS  : ss       AFFIDAVIT OF SERVICE

      I, the undersigned, being duly sworn, do hereby state that I served a true copy of the within subpoena upon the person named

therein at 3 A.M./P.M. on 5/21/83 at CORNELL PUBLIC SAFETY in the
                       (date)                       (place)

City/Town/Village of ITHACA in the County of TOMPKINS and State of New York

................................................................

Sworn to before me this ................................

day of .................., 19 ....

................................................................
        Notary Public

**RETURN THIS COPY OF SUBPOENA TO DISTRICT ATTORNEY AT LEAST 24 HOURS BEFORE RETURN DATE
WITH AFFIDAVIT SERVICE COMPLETED.**

**EXHIBIT F, PAGE 43**

# SUBPOENA

FILE NO. ................................

## In the Name of the People of the State of New York

TO  ............................................

YOU ARE HEREBY COMMANDED to appear before a Grand Jury held in and for the County of Tompkins and State of New York at the Grand Jury Room in the Tompkins County Court House in the City of Ithaca in the County of Tompkins and State of New York on .............................................. at ................ A.M./P.M. as a witness in an investigation regarding

..................................................................................................................................

..................................................................................................................................

..................................................................................................................................

..................................................................................................................................

..................................................................................................................................

..................................................................................................................................

and to also appear as aforesaid on any recessed or adjourned date of the said investigation, and for a willful failure to so appear you will be deemed guilty of a Criminal Contempt of Court and will be liable for the punishment provided therefor by law.

Dated at the City of Ithaca in the County of Tompkins and State of New York this ..................... day of .............................., 19......

_District Attorney of Tompkins County_ ...................

NOTICE — You should appear promptly at the time set in the Subpoena, and you may report to the District Attorney's Office rather than waiting in the public corridor outside the grand jury room, if you desire. The grand jury does not always meet in the same place. You should also turn in your subpoena to the District Attorney's Office for reimbursement of your mileage expenses. This Subpoena is hereby continued until such time as you are expressly discharged by the District Attorney, an Assistant District Attorney, or the Court.

REPORT OUTSIDE THE GRAND JURY ROOM OR TO THE DISTRICT ATTORNEY'S OFFICE AND REMAIN AVAILABLE UNTIL DISCHARGED.

---

STATE OF NEW YORK      :
COUNTY OF _TOMPKINS_    : ss        AFFIDAVIT OF SERVICE

I, the undersigned, being duly sworn, do hereby state that I served a true copy of the within subpoena upon the person named therein at _4:25_ A.M. (P.M.) on _5/20/83_ at _G-11 BARTON HALL_ in the
(date)              (place)
(City)/Town/Village of _ITHACA_ in the County of _TOMPKINS_ and State of _NEW YORK_

_Robert G. Wardka Jr_    LT #11

Sworn to before me this _20TH_

day of _MAY_, 19_83_

........................................
Notary Public

DAVID R. FISHER
Notary Public, State of New York
No. 4708934
Qualified in Tompkins County
Term expires March 30, 19 _84_

**RETURN THIS COPY OF SUBPOENA TO DISTRICT ATTORNEY AT LEAST 24 HOURS BEFORE RETURN DATE WITH AFFIDAVIT SERVICE COMPLETED.**

**EXHIBIT F, PAGE 44**

Dist. Atty. File # 83-1136
TOMPKINS COUNTY GRAND JURY
Originally Convened 4/25/83
Reconvened _____

STATE OF NEW YORK
COUNTY COURT    COUNTY OF TOMPKINS

-----------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

vs.

KEVIN VANGINDEREN

GRAND JURY
MINUTES

Indictment Number _____

-----------------------------------

Grand Jury Convened by HON. BETTY D. FRIEDLANDER, County Court Judge

Present at Grand Jury proceedings were witnesses named herein and the following persons:

ROBERT C. MULVEY, ESQ.
Assistant  District Attorney

CAROL DICKINSON,
Foreman

DOROTHY M. BURDORF,
Stenographer

Grand Jurors

THE DISTRICT ATTORNEY OF TOMPKINS COUNTY
Tompkins County Court House   Ithaca, New York, 14850   (607) 274-5461

**EXHIBIT F, PAGE 45**

I N D E X

| Witness | Page |
|---|---|
| Instructions | 3, 22 |
| Barbara Bourne | 6 |
| Wayne Wittner | 11 |
| William G. Boice | 13 |
| Richard Baker | 18 |

E X H I B I T S

| Grand Jury Exhibit No. | | Page Marked |
|---|---|---|
| 1 | | 3 |
| 2 | Transcript of Interview w/Vanginderen | 3 |
| 3 | Statement | 3 |

**EXHIBIT F, PAGE 46**

Instructions

1                              Grand Jury Exhibits 1, 2 and 3

2                              marked for identification.

3    MR. MULVEY:              Good afternoon.  This is

4        the case of People versus Kevin

5        Vanginderen, O.K., and your charge

6        sheets show one count of burglary

7        in the third degree.  I would like

8        you to change that to two counts

9        of burglary in the third degree,

10       and I will read the law to you

11       now.

12              Section 140.20 of the

13       Penal Law defines burglary in

14       the third degree as follows:

15       A person is guilty of burglary in

16       the third degree when he knowingly

17       enters or remains unlawfully in a

18       building with intent to commit a

19       crime therein.

20              I will read you the defini-

21       tion of a building.  The defini-

22       tion is its ordinary meaning to

23       you as far as what a building is,

24       but it goes further to say:  Where

25       a building consists of two or

**EXHIBIT F, PAGE 47**

Instructions

1    more units separately secured

2    or occupied, each unit shall be

3    deemed both a separate building

4    in itself and a part of the main

5    building. Now, in this case

6    there may be testimony about

7    office space within a building.

8    I would ask you to consider that

9    as a separate unit within a build-

10    ing and, therefore, also a build-

11    ing under this definition.

12    Now, Enter or Remain

13    Unlawfully is defined as follows:

14    A person enters enters in premises --

15    unlawfully in or upon premises when

16    he is not licensed or privileged

17    to do so. A license or privilege

18    to enter or remain in a building

19    which is only partly open to the

20    public is not a license or privilege

21    to enter or remain in that part of

22    the building which is not open to

23    the public.

24    Now, there may or may not

25    be testimony about public access

**EXHIBIT F, PAGE 48**

Instructions

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

to a part of this building. So
I would like you to keep that in
mind.

Are there any questions on
the law or the definitions?

**EXHIBIT F, PAGE 49**

Barbara Bourne

1      BARBARA BOURNE, called as a witness and

2   being duly sworn by Carol Dickinson, Foreman

3   of the Grand Jury, testified as follows:

4      EXAMINATION BY MR. MULVEY:

5   Q   Would you state your name and address

6       for the record, please?

7   A   Barbara J. Bourne, 1380 Coddington Road,

8       Brooktondale, New York.

9   Q   Are you employed, Barbara?

10  A   Yes, I am.

11  Q   And where are you employed?

12  A   Cornell University, Department of Public

13      Safety.

14  Q   And what is your position there?

15  A   Patrol officer.

16  Q   Were you so employed in February and March

17      of 1983?

18  A   Yes, I was.

19  Q   Did you have occasion to make the acquaintance

20      of a gentleman by the name of Kevin Vanginderen?

21  A   Yes, I did.

22  Q   Could you please tell the Grand Jury the

23      circumstances involved leading up to your

24      acquaintance with him?

25  A   March 5th, on a Saturday, I received a

**EXHIBIT F, PAGE 50**

Barbara Bourne

1    complaint of a theft from Fernow Hall.

2    It was on the third floor, and a

3    gentleman by the name of Paul Sheppard

4    was the first complaint I got.  He had

5    a JVC stereo taken from his locked office

6    sometime between Friday night and Saturday

7    morning.  There are other offices in the

8    area, and the indication from what evidence

9    was available was that the person had

10   climbed over the partitions between the

11   offices.  There is a space of about one

12   and a half feet to two feet.  Somebody

13   could have climbed over.  So I left a note

14   for the other graduate students in that

15   office to contact me as they came in.

16   About 2:00 o'clock in the afternoon I spoke

17   with Richard Baker.  He had noticed the

18   two textbooks were missing about the same

19   time.  It's normal procedure, when we get

20   textbook thefts, to report it to Triangle

21   Book Store, and I spoke with the manager,

22   Mr. Terry Hoover.  He stated that he had

23   the two books that Mr. Baker had reported

24   stolen, and that someone had sold them back

25   to him.  I went down to Triangle and spoke

**EXHIBIT F, PAGE 51**

Barbara Bourne

1   with him in person.  He showed me the list

2   where they -- when they buy books, the person

3   that sells them signs it, and they have to

4   show some form of I.D.  He showed me the

5   name on the page with the I.D. number next

6   to it, and he gave me a copy, photostat

7   copy of it.  The I.D. number was legible,

8   but the signature wasn't.  The only thing

9   you could really make out was the first

10  initial was "K," and the last initial was

11  "V."  What I did then was, I went to our

12  computer printout of all the students

13  listed and looked under the last names

14  beginning with the letter, "V," and I found

15  Kevin Vanginderen, and the I.D. number

16  matched exactly.  At that point I was made

17  aware by some other officers who were on

18  duty -- I don't recall exactly who it was --

19  that Officer Wittner had investigated a

20  similar incident that had taken place in

21  February.  I went to our files and pulled

22  out the cases from that and found there a

23  signed receipt from the Cornell Campus

24  Store with a signature not identical, but

25  the formulation of the "K" and "V" were

**EXHIBIT F, PAGE 52**

1    so similar I was convinced it was the same

2    individual.  The person in the Campus

3    Store had written the I.D. number in-

4    correctly.  They put down five digits

5    instead of the usual six, but the five digits

6    they put down were exactly the same as five

7    of the six of Mr. Vanginderen's I.D. number.

8  Q  O.K., and what did you do then?

9  A  We found a copy of the 1979 Cornell Freshman

10    Register.  We only knew Mr. Vanginderen was

11    a Senior.  The only picture we could find

12    of him was in the 1979 Freshman Register.

13    I took that book down to the Triangle Book

14    Store and showed it to Mr. Hoover and asked

15    him if there was anyone on the page, the two

16    pages there, he would recognize.  He pointed

17    to Mr. Vanginderen's picture and said, "The

18    hair is different, but the facial features

19    are the same, and I'm quite certain it's

20    the same person."

21  Q  Did there come a time when you approached

22    Mr. Vanginderen about these incidents?

23  A  Yes.  On Tuesday, the 8th, myself and Officer

24    Wittner.  At that time we had thought that

25    Mr. Vanginderen lived on -- in one of the

Barbara Bourne

1    fraternities, and we went down to the

2    fraternity and spoke to the House President.

3    It was determined he no longer lived there;

4    he lived in Winston Court Apartments. We

5    went there and spoke with the manager of

6    the apartments and found he lived in 603,

7    Apartment 3. It was about 8:00 o'clock in

8    the morning. 8:00, 8:30. We knocked on

9    the door; spoke with Mr. Vanginderen. We

10   read him his rights, told him what we were

11   inquiring about and asked him to come to

12   Barton Hall for some further questioning.

13   Q    O.K., and did there come a time when other

14        members of the department interviewed

15        Mr. Vanginderen?

16   A    Yes. At first it was myself and Officer

17        Wittner, with Officer Wittner doing the

18        questioning for the most part. I was

19        there as a witness to the interview.

20        When Mr. Vanginderen started confessing,

21        we read him his rights again, and it just

22        went on. Eventually Lieutenant Roice

23        also interviewed Mr. Vanginderen, which

24        produced a sworn statement from Mr. Vanginderen.

25   Q    O.K. Are there any further questions for

26        Officer Bourne? Thank you.

**EXHIBIT F, PAGE 54**

1        WAYNE WITTNER, called as a witness and

2    being duly sworn by Carol Dickinson, Foreman

3    of the Grand Jury, testified as follows:

4        EXAMINATION BY MR. MULVEY:

5    Q    Could you state your name and address for

6         the record, please?

7    A    Wayne Wittner, 15 Meadow Drive, Freeville,

8         New York.

9    Q    And are you employed, Mr. Wittner?

10   A    Yes.  Cornell University Department of

11        Public Safety as a patrol officer.

12   Q    Were you so employed in March of 1983?

13   A    Yes, sir, I was.

14   Q    Did you have occasion to make the acquaintance

15        of a Kevin Vanginderen?

16   A    Yes, sir.

17   Q    Could you please briefly tell the Grand Jury

18        the circumstances involved with your meet-

19        ing Mr. Vanginderen?

20   A    When I came to work at 7:00 o'clock in the

21        morning, Officer Bourne informed me that

22        she had found a possible subject of the

23        book thefts out of Fernow Hall.  At that

24        time the address that we  had for him was

25        17 South Ave.  We went over at that time, and

**EXHIBIT F, PAGE 55**

1  the House President told us that he lived

2  in Winston Court Apartments.  We went there

3  to his apartment and spoke with the gentle-

4  man.  At that time I read him his Miranda

5  warnings and asked him about the books.

6  He told me at that time that he had bought

7  them from a hispanic in front of the

8  libraries on the campus.  So we then took

9  him back to Barton Hall.  I started question-

10  ing him at that time about the thefts, and

11  he broke down and admitted to taking the

12  books, and I quote, "I went into the rooms

13  and took the books, stereo, calculator and

14  tape deck.  I am a poor student and sold

15  the books to get money."

16  Q    Did you have any further conversation

17       with him?

18  A    At that time I did not.

19  Q    O.K.

20  A    Officer Bourne and Lieutenant Boice finished

21       up with him at that time.

22  Q    O.K.  So Lieutenant Boice conducted a further

23       interview.

24  A    Yes, sir.

25  Q    Are there any questions for Officer Wittner?

26       Thank you, sir.

**EXHIBIT F, PAGE 56**

William G. Boice

1       WILLIAM G. BOICE, called as a witness and

2   being duly sworn by Carol Dickinson, Foreman of

3   the Grand Jury, testified as follows:

4       EXAMINATION BY MR. MULVEY:

5   Q   Would you state your name for the record,

6       please?

7   A   William G. Boice, B-o-i-c-e.

8   Q   Are you employed, sir?

9   A   I am, sir.

10  Q   Where are you employed?

11  A   Cornell Public Safety.  I'm a Police Lieutenant

12      in charge of major investigations.

13  Q   O.K., Lieutenant, were you so employed on

14      March 8, 1983?

15  A   Yes, sir.

16  Q   O.K.  Do you recall conducting an interview

17      with a man by the name of Kevin Vanginderen

18      that day?

19  A   Yes, sir.

20  Q   Will you please briefly tell the Grand Jury

21      the substance of that interview?

22  A   Approximately 9:10 in the morning Officer Bourne

23      stated that she had -- well, in the course of

24      the investigation she had interviewed Kevin,

25      and he admitted to several larcenies and

**EXHIBIT F, PAGE 57**

1        several burglaries in offices in Fernow

2        and Bradfield Hall.

3    Q.  There was a transcript made of that inter-

4        view?

5    A   Yes, sir.

6    Q   Do you have a copy of that with you?

7    A   Yes, sir.

8    Q   O.K.  I'm going to briefly show you Grand

9        Jury Exhibit 2 and ask you to identify that

10       for us.

11   A   It's a question and answer interview I

12       conducted with Kevin at approximately 10:35

13       on March 8th.

14   Q   O.K.  Do you have a copy of that with your

15       own packet of papers?

16   A   Yes, sir.

17   Q   O.K.  I would like you to open that up and

18       look at it, if you will, Lieutenant.  I

19       direct your attention to the lower portion

20       of Page 2 of that transcript, specifically

21       the second to last question on that page.

22       Would you please tell us or read that question

23       to the Grand Jury?

24   A   The question I posed to Kevin regarding Case

25       Number 83-421 occurring March 2 to March 5,

William G. Boice

1    312F Fernow Hall, involving JVC cassette

2    stereo player recorder which was taken on

3    the burglary where the subject climbed over

4    a partition, and I asked, "Are you responsible

5    for this?" and Kevin responded, "Yes. That

6    was the last theft on 2:00 A.M. on Saturday."

7  Q  So did you determine what day it was in

8    March that he committed that burglary?

9  A  I don't recall specifically the date that

10    the burglary occurred. The report came

11    sometime within the 3rd to the 5th. So

12    whichever Saturday fell on March 3rd was

13    it.

14  Q  I'm going to direct your attention to

15    further up on that page, about one-third

16    of the way down, where it begins,

17    "Case 83-303." Will you please read that

18    question to the Grand Jury?

19  A  Again, I was questioning. I asked of Kevin

20    regarding Case 83-303, occurring sometime

21    between February 10 and February 12, 1983,

22    regarding unlawful entry into Room 312-C,

23    Fernow Hall, in which a calculator, a

24    Texas Instrument, TI 55, and a Sanyo

25    tape deck recorder were taken. I asked

William G. Boice

1    him specifically, "Were you responsible

2    for these items?" and he responded,

3    "Yes, they have them," and indicated that

4    the officers had them.

5  Q    O.K., Lieutenant, did -- I would like you

6    to look in your packet and tell us if you

7    have a copy of Grand Jury Exhibit 3.

8  A    Yes, sir.

9  Q    O.K.  I would like you to open up to

10    that page.

11  A    O.K.

12  Q    Will you identify that for us?

13  A    It's a written statement voluntarily given

14    by Kevin at approximately 9:10 A.M.,

15    morning of March 8, in my office.

16  Q    O.K.  Will you read the first line of

17    Mr. Vanginderen's statement to us?

18  A    "I, Kevin G. Vanginderen, admit to taking

19    a few books, a calculator and two small

20    cassette decks from Fernow Hall."

21  Q    O.K.  I direct your attention to the fourth

22    line up from the bottom, beginning, "Wittner."

23    Will you please read that for us?

24  A    "Wittner:  How did you gain entrance into

25    Fernow Hall?  Vanginderen:  A tunnel leading

**EXHIBIT F, PAGE 60**

William G. Boice

1    from the basement of Bradfield Hall to Fernow,

2    which is unlocked. I gained entrance through

3    it.    Wittner: The room you took the books

4    from in Fernow, were the rooms locked?

5    Vanginderen: No. The rooms I went into

6    on the main corridor were unlocked. The

7    ones at the ends of the corridor had spaces

8    above the doors, which I jumped."

9  Q  O.K. I have no further questions for

10    Lieutenant Boice. Do any of the Grand

11    Jurors have any questions? Thank you,

12    sir.

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT F, PAGE 61**

Richard Baker

1    RICHARD BAKER, called as a witness and

2    being duly sworn by Carol Dickinson, Foreman

3    of the Grand Jury, testified as follows:

4    EXAMINATION BY MR. MULVEY:

5    Q    Would you state your name and address for

6         the record, please, sir?

7    A    Richard Baker.  My home address is

8         134 Judd Falls Road, Ithaca.

9    Q    O.K.  Are you employed, sir?

10   A    I'm a graduate student at Cornell University.

11   Q    O.K., Mr. Baker, did there come a time

12        when you made a report to the Cornell Public

13        Safety regarding some items that were miss-

14        ing from your offices?

15   A    Yes.  I made a report on February 14th that

16        some items were missing.

17   Q    Can you tell us where your office is

18        located?

19   A    My office is 304C Fernow Hall.  It's --

20   Q    O.K.  Can you tell us what those offices

21        are for?

22   A    They're solely for graduate students,

23        the entire third floor.

24   Q    O.K.  Can you tell us what you keep

25        in that office?

**EXHIBIT F, PAGE 62**

Richard Baker

1   A   All the material that's associated with

2       my studies, my books, papers, other items

3       that you use.

4   Q   In February what items did you notice

5       missing?

6   A   On February 13th I noticed that my cal-

7       culator, TI 55, and a cassette tape deck

8       that I borrowed were missing.

9   Q   O.K.  Did there come a time in March when

10      you noticed anything missing from your

11      office?

12   A   Yes.  Again on March 5th I found that there

13      were some books missing.

14   Q   O.K.  Did you report that to the Cornell

15      Public Safety?

16   A   Yes, I did.

17   Q   O.K.  Do you keep your office locked?

18   A   Yes, I do, always.

19   Q   O.K.  So when you leave your office on

20      a daily basis, you lock it as you leave.

21   A   Yes.

22   Q   Do you know a man by the name of Kevin

23      Vanginderen?

24   A   No, I don't.

25   Q   O.K.  Had you ever given Kevin Vanginderen

**EXHIBIT F, PAGE 63**

1          permission to be in your office between the

2          dates of February 10th, 1983 and February 12th,

3          1983?

4     A    No.

5     Q    O.K.  I ask you the same question for March 5,

6          1983.

7     A    I never did, no.

8     Q    So you never gave him permission to be

9          there on that date either.

10    A    No.

11    Q    O.K.  Is that a public building?

12    A    In what sense do you mean public?

13    Q    Is it -- are the main doors to the building

14         open at all times to the public?

15    A    During the daytime they are.  At night

16         they're locked.

17    Q    How does one gain access to the building?

18    A    Only with a key.

19    Q    O.K., and how do you obtain that key?

20    A    Through the Administrative Manager of

21         the apartment.

22    Q    I see. Well, I have no further questions

23         for Mr. Baker.

24         JUROR:              Were your items ever

25              recovered?

**EXHIBIT F, PAGE 64**

Richard Baker

1    A    Yes, they were.

2         JUROR:              From Vanginderen or

3                   you don't know where?

4    A    To the best of my knowledge they were

5         recovered by Public Safety from him, yes.

6    Q    Any more questions?  Well, thank you, sir.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT F, PAGE 65**

22

Instructions

1    MR. MULVEY:        I would ask you to

2        separate the two counts for the

3        following dates.  I believe you

4        heard testimony based on

5        Mr. Vanginderen's admission that

6        he made entry between the dates

7        of February 10 and February 12, 1983.

8        I would ask you to consider that

9        as one date for a burglary.  I

10       would also ask you to consider

11       March 5 as another date for

12       Count 2 for burglary.  You recall

13       there was testimony regarding his

14       statement that he made an entry

15       on March 5.  So those are the two

16       counts. Any questions? O.K.

17       Thank you.

18

19

20

21

22

23

24

25

**EXHIBIT F, PAGE 66**

CERTIFICATION

I, Dorothy M. Burdorf, duly appointed Grand
Jury Stenographer, County of Tompkins, State of
New York, do certify that in such capacity I took
the minutes of the County Court Grand Jury con-
vened on April 25, 1983, in the within matter of
The People of the State of New York against
KEVIN VANGINDEREN; that I have transcribed the same,
and the foregoing is a true copy of such
transcript, to the best of my ability, and of
the whole thereof.

*Dorothy M Burdorf*

file
83-1136

RECEIVED/SENT
TOMPKINS COUNTY
DISTRICT ATTORNEY
MAR 23   3 48 PM '03

# ADAMS, THEISEN & NASH

ATTORNEYS AND COUNSELORS AT LAW
301 THE CLINTON HOUSE
103 WEST SENECA STREET
ITHACA, NY 14850

HENRY W. THEISEN
RALPH W. NASH
———
STEPHEN M. BOWMAN

ARMAND L. ADAMS
1911-1983

607-272-3442

May 25, 1983

Hon. Benjamin J. Bucko
Tompkins County District Attorney
Tompkins County Courthouse
Post Office Box 326
Ithaca, New York 14850

                    Re:  People v. Vanginderen

Dear Ben:

     My client has asked me again whether there is any possibility
of his meeting with you personally on this matter in an effort to resolve
it.  If such is not possible, he would like to be arraigned as soon as
possible, so that it will interfere minimally with his employment.

     Thank you for your attention to this matter.

                              Yours very truly,

                              ADAMS, THEISEN & NASH

                              Ralph W. Nash

RWN/dh

Ralph —
    5/27/83

The matter has been presented to the
grand jury and the indictment will be
handed up next Tuesday.

Ben

**EXHIBIT F, PAGE 68**

STATE OF NEW YORK
COUNTY COURT   :   COUNTY OF TOMPKINS

------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

                           Plaintiff

                                              INDICTMENT
              vs.
                                              Index No. 83-46
KEVIN G. VANGINDEREN,

                      Defendant

------------------------------------

COUNT I

        The Grand Jury of the County of Tompkins and State of
New York, by this Indictment, hereby accuses KEVIN G. VANGINDEREN
of the crime of BURGLARY IN THE SECOND DEGREE in violation of
Section 140.25 of the Penal Law of the State of New York, com-
mitted as follows:

        Between the hours of 12:00 A.M. on February 10, 1983
and 11:59 P.M. on February 12, 1983, the exact time and date
being unknown, at Fernow Hall in the City of Ithaca, County of
Tompkins and State of New York, the said KEVIN G. VANGINDEREN
did knowingly enter or remain unlawfully in said building with
intent to commit a crime therein.

COUNT II

        The Grand Jury of the County of Tompkins and State of
New York, by this Indictment, hereby accuses KEVIN G. VANGINDEREN
of the crime of BURGLARY IN THE SECOND DEGREE in violation of
Section 140.25 of the Penal Law of the State of New York, com-
mitted as follows:

        Between the house of 12:00 A.M. and 11:59 P.M. on March 3,
1983, the exact time being unknown, at Fernow Hall in the City of
Ithaca, County of Tompkins and State of New York, the said KEVIN
G. VANGINDEREN did knowingly enter or remain unlawfully in said
building with intent to commit a crime therein.

        Signed this 7th day of June, 1983 in the City of Ithaca,
County of Tompkins and State of New York.


DISTRICT ATTORNEY        s/Carol T. Dickinson          s/Benjamin J. Bucko
TOMPKINS COUNTY         _____     _____
IHACA, NEW YORK 14850          FOREMAN                    DISTRICT ATTORNEY

**EXHIBIT F, PAGE 69**

RECEIVED/SENT
TOMPKINS COUNTY
DISTRICT ATTORNEY

JUL 15  1 29 PM '83

STATE OF NEW YORK
COUNTY COURT   :   COUNTY OF TOMPKINS

THE PEOPLE OF THE STATE OF NEW YORK,   :

              -vs-                     :          NOTICE OF MOTION

KEVIN G. VANGINDEREN,                  :          Indictment No. 83-46

                    Defendant. :

PLEASE TAKE NOTICE that upon the annexed Affidavit of Ralph W. Nash, sworn to the 15th day of July, 1983, the Exhibits attached thereto and all prior proceedings herein, the undersigned will move this Court at a Criminal Motion Term thereof to be held on the 1st day of August, 1983, at 9:30 A.M., or as soon thereafter as counsel may be heard for Orders on behalf of the Defendant (A) for dismissal of the indictment as defective; (B) for inspection of the Grand Jury minutes and for dismissal of the indictment for legal insufficiency of the evidence; (C) for dismissal in the interests of justice; (D) for suppression of the statements allegedly made by Defendant; (E) for discovery pursuant to a Demand to Produce; and (F) for such other and further relief as to this Court may seem just and proper.

DATED:   July 15, 1983

                                        RALPH W. NASH, ESQ.
                                        Attorney for Defendant
                                        Office and P.O. Address:
                                        ADAMS, THEISEN & NASH
                                        301 The Clinton House
                                        103 West Seneca Street
                                        Ithaca, New York 14850
                                        Tel.: (607) 272-3442

TO:  HON. BENJAMIN J. BUCKO
     Tompkins County District Attorney
     Office and P.O. Address:
     Tompkins County Courthouse
     Post Office Box 326
     Ithaca, New York 14850

**EXHIBIT F, PAGE 70**

*(left margin, vertical)* ADAMS & THEISEN · ATTORNEYS AT LAW · ITHACA, NEW YORK

STATE OF NEW YORK
COUNTY COURT    :    COUNTY OF TOMPKINS

THE PEOPLE OF THE STATE OF NEW YORK    :

              -vs-    :

KEVIN G. VANGINDEREN,    :

              Defendant.    :

AFFIDAVIT

Indictment No. 83-46

STATE OF NEW YORK  )
                ) SS:
COUNTY OF TOMPKINS )

RALPH W. NASH, being duly sworn, does depose and say:

1. That he is the attorney for the Defendant herein and is fully familiar with the facts and circumstances of this case.

2. That the Defendant was arraigned on the above numbered Indictment on June 10, 1983, and entered a plea of not guilty to both counts of the Indictment at that time.

3. At arraignment, your deponent was directed to file pre-trial motion papers on or before July 15, 1983, making the motions returnable at the next appropriate motion term of this Court.

MOTION TO DISMISS INDICTMENT AS DEFECTIVE:

4. Indictment No. 83-46 charges the Defendant with two counts of Burglary in the Second Degree upon identical factual allegations that the Defendant "did knowingly enter or remain unlawfully in said building (Fernow Hall) with the intent to commit a crime therein."

5. Said factual allegation does not substantially conform to the requirements for indictments as provided in the Criminal Procedure Law

**EXHIBIT F, PAGE 71**

6. As can be seen by Exhibit "A" attached hereto, no factual allegation consistent with the crime charged can be made

MOTION TO INSPECT THE GRAND JURY MINUTES AND DISMISS INDICTMENT ON GROUND OF INSUFFICIENCY OF GRAND JURY EVIDENCE:

7. Count I of the Indictment alleges that the Defendant committed a burglary sometime within a 72-hour period commencing at midnite on February 10, 1983, and concluding at one minute to midnite on February 12, 1983. It appears therefrom that no evidence was introduced to the Grand Jury as to the actual entry of and/or failure to leave Fernow Hall of the Defendant.

8. As appears from Exhibit "A" attached hereto, Fernow Hall was open to the public during most of the period in which it is alleged that the burglary occurred.

9. Upon information and belief, therefore, it is contended that no evidence was submitted to the Grand Jury that the Defendant did knowingly enter or remain unlawfully in Fernow Hall as alleged in the Indictment.

10. Upon the aforesaid information, the People could not meet its burden of proof upon the charge stated in Count I of the Indictment or any lesser included charge thereof

11. Upon the same argument, the People likewise could not meet it's burden of proof upon the charge stated in Count II of the Indictment or any lesser included charge thereof

MOTION TO DISMISS IN THE INTERESTS OF JUSTICE:

12. At the time of his arrest in this matter, Kevin Vanginderen was a senior at Cornell University. He has subsequently graduated and is looking for permanent employment.

ADAMS & THEISEN · ATTORNEYS AT LAW · ITHACA, NEW YORK

**EXHIBIT F, PAGE 72**

-2-

13.   During his entire attendance at Cornell University Kevin was beset by economic problems, which said problems do not justify any wrongdoing, but do offer some explanation thereof.  Your deponent believes that this case presents an excellent opportunity for a dismissal in the interests of justice, (if this Indictment is not dismissed because of the foregoing legal contentions), because of the following factors which are arranged in the order provided by Criminal Procedure Law §210.40:

(a)   The offense involved constitutes at most a petty theft with no overtones of threat to persons or their residences, or unlawful entry into any building.

(b)   The harm caused by the offense is limited to the transitory loss of personal property of minimal value.

(c)   The evidence of guilt of a burglary as charged in the Indictment is minute, while the evidence of a petty theft rests solely upon the admission of Defendant, which may be ruled inadmissible.

(d)   The Defendant Kevin Vanginderen has no prior criminal record, nor as can be seen by Exhibit "B" attached hereto, any record of wrongdoing at Cornell University.  He has worked to the best of his ability to obtain a college diploma from Cornell University and he has worked to support himself with very limited assistance from his parents during this period.  See Exhibit "B" and "C".

His character is such that he suffers sincere remorse for any theft he may have committed, and it is certainly to be expected that a recurrence of such activity will never happen; this, without the necessity of imposing a criminal conviction and attendant punishment.  A criminal conviction will have prohibitive effect on Kevin's future at this critical time of seeking employment after graduation.  His Indictment in this matter has already caused him considerable problems in this regard.

**EXHIBIT F, PAGE 73**

It is submitted that the circumstances of this case and the character of the Defendant made this case an ideal one for diversion referral, which was denied by the District Attorney's Office.

(e)  Your deponent believes that the law enforcement officials at Cornell University unfairly and unconstitutionally wrested a confession from Defendant by arresting him at his residence in the early morning hours and threatening to prosecute him for several serious thefts at Cornell University if he did not make a full confession.  In addition, it appears that the District Attorney's Office has over-indicted Kevin based upon the facts of this case.

(f)  No positive purpose and effect can be visited upon the Defendant by a felony sentence in this matter.  Kevin's character is such that it has reacted tremendously to the shame and indignity of a publicized arrest and prosecution.  To visit upon him the stigma of a felony conviction at this critical time of his life would serve no useful purpose and would only show vindictiveness and failure to make even the most basic observations regarding human behavior.

(g)  It is respectfully contended that the public does believe that "the quality of mercy is not strained."  It is respectfully submitted that the public is in favor of a first-time offender with an otherwise unblemished and exemplary record getting a break.  To brand every first-time offender as a criminal would be counterproductive.  The impact of a dismissal upon the confidence of the public in the criminal justice system would be salutory.

(h)  There would be no adverse impact of a dismissal on the safety or welfare of the community.  Dean Drinkwater, who speaks on behalf of the Cornell community, certainly evidences no concern on this matter and recommends liberal treatment of Kevin's case.  Considering Kevin's character as therein attested and proven by his past conduct, no negative impact exists.

-4-

**EXHIBIT F, PAGE 74**

Based upon all of the foregoing, your deponent believes that a dismissal in the interests of justice is indeed appropriate in this case, if this Indictment is not for other reasons dismissed.

### MOTION FOR SUPPRESSION OF STATEMENT:

14.   If the Indictment is not dismissed in this matter upon the foregoing motions, your deponent does request a hearing to determine the admissibility of certain statements allegedly made by the Defendant herein.

15.   That your deponent has been served with a notice of intent to use admissions, the original of which has been filed in the County Clerk's Office and it is as to these alleged statements that your deponent requests an Order of Suppression upon the basis that they were unconstitutionally obtained from the Defendant, and/or taken from the Defendant after he had been unconstitutionally arrested or otherwise restricted in his freedom.

### MOTION FOR DISCOVERY:

16.   Attached hereto and made a part hereof, as Exhibit "D", is the Demand to Produce made pursuant to CPL §240.20.  While I do not anticipate that the People will refuse to comply with these demands, I here incorporate these Demands in order that they may be before this Court for a ruling pursuant to CPL §240.40 in the event of the People's refusal.

17.   Your deponent reserves the right to amend or supplement this motion if made necessary or appropriate by future disclosure by the District Attorney.

_____
RALPH W. NASH

Sworn to before me this
15th day of July, 1983.

Notary Public

**EXHIBIT F, PAGE 75**

STATE OF NEW YORK
COUNTY COURT   :   COUNTY OF TOMPKINS

THE PEOPLE OF THE STATE OF NEW YORK    :

              -vs-    :

KEVIN G. VANGINDEREN,    :

              Defendant.    :

AFFIDAVIT

Indictment No. 83-46

STATE OF NEW YORK  )
              ) SS:
COUNTY OF TOMPKINS )

ELIZABETH DEMPSEY, being duly sworn, does depose and say:

1.  That she is the Administrative Manager of the School of Natural Resources at Cornell University in Ithaca, New York.

2.  That Fernow Hall, located on the campus of Cornell University in Ithaca, New York is operated by the School of Natural Resources, which is a within the College of Agriculture and Life Science statutory college under the jurisdiction of the State of New York.

3.  That Fernow Hall contains academic offices, classrooms and laboratories only and contains no residential areas for either student or faculty living.

4.  That Fernow Hall is open to the general public on weekdays during the academic school year from the hours of 6:00 A.M. to 5:00 P.M. daily.

5.  That there were no academic vacation periods on Thursday, February 10, 1983; Friday, February 11, 1983; or Thursday, March 3, 1983, and Fernow Hall was open to the general public from the hours of 6:00 A.M. to 5:00 P.M. on those days.

                    _____
                      ELIZABETH DEMPSEY

Sworn to before me this
21st day of June, 1983.

_____
Notary Public

RALPH W. NASH
Notary Public, State of New York
No. 02 NA 4669490, Reg. in Tompkins County
My Commission Expires March 30, 198_

**EXHIBIT F, PAGE 76**



OFFICE OF THE DEAN OF STUDENTS
103 BARNES HALL
ITHACA, NEW YORK 14853
(607) 256-4221

26 April, 1983

Ralph W. Nash Esq.
Adams, Theisen & Nash
301 Clinton House
103 West Seneca Street
Ithaca
New York 14850

Dear Mr. Nash:

I am happy to comply with your request for a general letter of reference concerning Kevin Vanginderen, who is currently a Senior in the College of Agriculture and Life Sciences.

I have known Mr. Vangideren for nearly three years as a result of inquiries he made concerning eligibility for student employment. Our acquaintance has not been regular in that he appears to have had no difficulties as a student and has not had to use the resources of the Dean of Students office. Consequently, I have asked about his status and am informed by College officials that he has made steady progress towards his degree and has a sound record in terms of behavior.

At the time of our initial discussion, I was impressed by his concern that he should be able to find employment at Cornell and be able to underwrite some of his educational costs--in short, to stand on his own two feet. Family cirumstances made it necessary that he should do so, and he showed initiative in pursuing all options. From recent conversations, I gather that family financial constraints are still a problem--I know that these constraints are real--and contributed to his actions.

Mr. Vanginderen seems to me to be a generally well-balanced young man, not an outstanding scholar, but a person who has worked at his studies and who has participated in normal campus activities. He seems to recognize that what he did was wrong and has been very open in confronting the extent of his error, although it would have been easy for him not to do so. This openness is in character and coincides with my earlier impressions of him.

Please do not hesitate to call me if you have further questions.

Sincerely,

David Drinkwater
Dean of Students.

**EXHIBIT F, PAGE 77**

Exhibit "B"



DEPARTMENT OF PHYSICAL EDUCATION AND ATHLETICS
**INTRAMURAL DIVISION**

HELEN NEWMAN HALL

256-2315

RECEIVED

MAR 28 1983

ADAMS & THEISEN    March 24, 1983

ALAN E. GANTERT, *Director*
MARIA L. WEST,
*Associate Director*

Mr. Ralph Nash
Attorney at Law
103 W. Seneca Street
Ithaca, New York 14850

Dear Mr. Nash:

This letter is in answer to your request that I state in writing that Kevin G. Vangindren has been employed in this department for the past several years as an Equipment Manager for Intramural Ice Hockey and Box Lacrosse.

Sincerely yours,

Maria L. West
Associate Director of Intramural Sports

mlw:m

*Exhibit "C"*

STATE OF NEW YORK
COUNTY COURT    :    COUNTY OF TOMPKINS

THE PEOPLE OF THE STATE OF NEW YORK    :

        -vs-    :    DEMAND TO PRODUCE

KEVIN G. VANGINDEREN,    :    Indictment No. 83-46

        Defendant.    :

TO:  HON. BENJAMIN J. BUCKO
     Tompkins County District Attorney

Pursuant to CPL §240.20, DEMAND is herewith made that you supply or make available to the undersigned for inspection, photographing, copying and/or testing the following property:

(a)  Any written, recorded or oral statement of the Defendant, and of a Co-Defendant to be tried jointly, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him;

(b)  Any transcript of testimony relating to the criminal action or proceeding pending against the Defendant, given by the Defendant, or by a Co-Defendant to be tried jointly, before any Grand Jury;

(c)  Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the Prosecutor intends to call as a witness at trial, or which the People intend to introduce at trial;

(d)  Any photograph or drawing relating to the criminal action or proceeding which was made or completed by a public servant engaged in law enforcement

ADAMS & THEISEN  ·  ATTORNEYS AT LAW  ·  ITHACA, NEW YORK

EXHIBIT "D"

Sworn to before me, this     day of         19 _ .

activity, or which was made by a person whom the Prosecutor intends to call as a witness at trial, or which the People intend to introduce at trial;

(e)  Any other property obtained from the Defendant, or a Co-Defendant to be tried jointly, and any property which will be alleged was stolen by Defendant.

(f)  Any tapes or other electronic recordings which the Prosecutor intends to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction;

(g)  Anything required to be disclosed, prior to trial, to the Defendant by the Prosecutor, pursuant to the constituion of this State or of the United States;

(h)  The approximate date, time and place of Defendant's arrest.

DEMAND is further made that any refusal to supply any of the demanded material be made in writing setting forth the grounds for such refusal pursuant to CPL §240, and that a copy of such writing be served upon the undersigned and filed with the Court within ten (10) days from receipt by you of this Demand.

DATED:  July 15, 1983

RALPH W. NASH, ESQ.
Attorney for Defendant
Office and P.O. Address:
301 The Clinton House
103 West Seneca Street
Ithaca, New York 14850
Tel.:  (607) 272-3442

"D-2"

Sworn to before me, this          day of                    19

STATE OF NEW YORK
COUNTY COURT : COUNTY OF TOMPKINS
_____

THE PEOPLE OF THE STATE OF NEW YORK          :

               vs.                            :          MEMORANDUM OF LAW

                                            Indictment No. 83-46

      KEVIN G. VANGINDEREN,                   :

                   Defendant.      :
_____

## MOTION TO DISMISS INDICTMENT AS DEFECTIVE

Criminal Procedure Law §210.20(a) provides for dismissal of an indictment or any count thereof upon the ground that "such indictment or count is defective, within the meaning of section 210.25." Criminal Procedure Law §210.25(1) provides that an indictment or count thereof is defective when "it does not substantially conform to the requirements stated in article two hundred." Criminal Procedure Law §200.50(7) provides that the indictment must contain with respect to each count, "facts supporting every element of the offense charged and the defendant's commission thereof."

Indictment No. 83-46 charges the Defendant with two counts of Burglary in the Second Degree upon identical factual allegations that the Defendant "did knowingly enter or remain unlawfully in said building (Fernow Hall) with the intent to commit a crime therein." Said allegations are insufficient and render the indictment defective for failure to allege an element of the offense of Burglary in the Second Degree, to wit: that the building is a dwelling. Penal Law §140.25. Without such allegation and proof thereof, a defendant cannot be convicted of the crime of Burglary in the Second Degree. See Practice Commentaries to McKinney's Penal Law §140.25 p. 46-48 main volume.

Recent Court of Appeals decisions relaxing standards for allegations to support an indictment have not altered the necessity for an indictment to comply with CPL §200.50 nor the necessity of alleging in the indictment every material element of the crime charged. See People v. Iannone 45 NY2d 589 at page 598 where the requirements of CPL §200.50 are specifically approved as fulfilling the constitutional protections of prosecution by indictment; and at page 600 wherein the Court states that "an indictment will be jurisdictionally defective if... it fails to allege that a defendant committed acts constituting every material element of the crime charged."

It is clear from the indictment that the People did not allege the material element of the crime of Burglary in the Second Degree that the building entered was a dwelling. It is also clear from the Affidavit attached to the Defendant's motion papers as Exhibit "A" that no allegation could in fact be made, as no one dwells in Fernow Hall. Further, the indictment cannot be amended to allege the charge of Burglary in the Third Degree for two reasons. First, the People have not so moved. Criminal Procedure Law §210.25(1). Secondly, an indictment may not be amended "for the purpose of curing: (a) a failure thereof to charge or state an offense; or (b) legal insufficiency of the factual allegations." CPL §200.70(2). This, of course, accords with the holding in Iannone, supra, that an indictment defective in these regards is jurisdictionally defective.

MOTION TO INSPECT THE GRAND JURY MINUTES AND
DISMISS INDICTMENT ON GROUND OF INSUFFICIENCY OF GRAND JURY EVIDENCE

CPL §210.20(1)(b) provides that an indictment or any count thereof may be dismissed upon the ground that "the evidence before the grand jury was not legally

**EXHIBIT F, PAGE 82**

sufficient to establish the offense charged or any lesser included offense."

Both Burglary in the Second Degree and Burglary in the Third Degree require that a person "knowingly enters or remains unlawfully in a building with intent to commit a crime therein." Penal Law §140.25 and §140.20. As can be seen from the indictment and the Affidavit attached to Defendant's motion papers as Exhibit "A", the People have failed to allege and provide proof, prima facie, that Defendant knowingly entered or remained unlawfully in Fernow Hall, which is an essential element of the crime of burglary. People v. Letko 60 AD2d 661, reversed on other grounds 47 NY2d 257; and People v. Miles 85 AD2d 610 (2nd Dept., 1981).

It seems clear that the indictment in this matter could support only a charge of larceny in Fernow Hall. Larceny is not a lesser included offense of burglary. Rather criminal trespass is. See Practice Commentaries to McKinney's Penal Law §140.20 and §140.25, main volume. Larceny is not a lesser included offense of burglary since it is possible to commit a burglary without committing a larceny (a building may be entered with intent to commit a crime without committing a larceny). CPL §1.20(37) and People v. Brown 53 NY2d 979(1981).

<u>MOTION TO DISMISS IN THE INTERESTS OF JUSTICE</u>

Defendant's affidavit and supporting exhibits provide ample support for a dismissal in the interests of justice in this case, if the indictment is not dismissed for other reasons. Such a dismissal has "a respected place in common law... its thrust, even to the disregard of legal or factual merit, has been "to allow the letter of the law gracefully and charitably to succomb to the spirit of justice." People v. Rickert 58 NY2d 122(1983). It is respectfully contended

-3-

**EXHIBIT F, PAGE 83**

that the facts of this case do not warrant a felony conviction for Kevin G.

Vanginderen and the effects of same would not be salutory.  It is precisely

the blanket policy of the District Attorney's Office and the failure to consider

individual factors which warrants judicial correction in this matter.  See

Rickert, supra.  A hearing is respectfully requested upon this motion.  People

vs. Clayton  41 AD2d 204 (Third Dept.,1973).


ADAMS & THEISEN · ATTORNEYS AT LAW · ITHACA, NEW YORK

                                        ADAMS, THEISEN & NASH
                                        Ralph W. Nash, Esq. of Counsel
                                        Attorneys for Defendant
                                        Office & P.O. Address:
                                        301 The Clinton House
                                        Ithaca, New York  14850
                                        (607)-272-3442

-4-

**EXHIBIT F, PAGE 84**

## THE DISTRICT ATTORNEY OF TOMPKINS COUNTY

Tompkins County Courthouse
P.O. Box 326
Ithaca, New York 14851-0326

(607) 274-5461

BENJAMIN J. BUCKO
District Attorney

July 21, 1983

Assistant District Attorneys:

Frank Smithson
William A. Lange, Jr.
John Alden Stevens
Robert C. Mulvey
Pamela A. Clermont

Ralph Nash, Esq.
The Clinton House
Ithaca, NY  14850


                    Re:  People v. KEVIN G. VanGINDEREN
                         Indictment No. 83-46
                         Our File No. 83-1136

Dear Ralph:

        Enclosed please find the People's Answering Affidavit
with respect to the above entitled matter.

        By copy of this letter I have today filed the original
of the same with the Tompkins County Clerk.

                              Very truly yours,

                              ROBERT C. MULVEY, ESQ.
                              Assistant District Attorney

RCM/dkl

Enclosure

cc:  Tompkins County Clerk


**EXHIBIT F, PAGE 85**

STATE OF NEW YORK
COUNTY COURT   :   COUNTY OF TOMPKINS

----------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

                       Plaintiff

        vs.

KEVIN G. VanGINDEREN,

                    Defendant

ANSWERING AFFIDAVIT

Index No. 83-46

----------------------------------------

STATE OF NEW YORK   :
                   : ss.
COUNTY OF TOMPKINS  :

     ROBERT C. MULVEY, being duly sworn, deposes and says:

     1.   That he is an Assistant District Attorney in and for the County of Tompkins and State of New York and he makes this Answering Affidavit in response to the Defendant's Notice of Motion returnable on August 1, 1983.

<u>SUFFICIENCY OF INDICTMENT</u>

     2.   That your deponent denies the allegations set forth in Paragraphs 4 and 5 of Attorney Nash's Affidavit and submit that both counts of the Indictment are sufficient pursuant to the requirements of the Criminal Procedure Law.

     3.   That the definition of a building as set forth in Article 140 of the Penal Law establishes that a factual allegation consistent with the crime can be made.

DISTRICT ATTORNEY
TOMPKINS COUNTY
ITHACA, NEW YORK 14850

**EXHIBIT F, PAGE 86**

### SUFFICIENCY OF GRAND JURY EVIDENCE

4.   That the evidence presented to the Grand Jury with respect to both Counts I and II consisted of full and detailed admissions by the Defendant corroborated by the testimony of others.

5.   That "Exhibit A" submitted by the Defendant is irrelevant to this prosecution inasmuch as the burglaries occurred in locked, private offices within Fernow Hall.  The Defendant may request a Bill of Particulars to amplify the Indictment. Further, the Defendant is fully aware of the nature of the charges against him by virtue of his detailed confession.

6.   That Attorney Nash has failed to set forth the grounds for his information and belief as set forth in Paragraph 9.

### INTERESTS OF JUSTICE

7.   That the People oppose dismissal of the Indictment in the interests of justice.

8.   That an "explanation" for wrongdoing is insufficient unless it constitutes actual physical duress, coercion or insanity. The allegation that the Defendant suffered from economic duress and therefore deserves sympathy while attending one of the most expensive private universities in the United States is ludicrous. Adjudication of felony charges with respect to a Cornell student must be based on the same factors as those applied to other criminals in Tompkins County.

DISTRICT ATTORNEY
TOMPKINS COUNTY
ITHACA, NEW YORK 14850

**EXHIBIT F, PAGE 87**

9.   That the full confession was obtained by law enforce-
ment officials in full compliance with constitutional standards
and was not "unfairly and unconstitutionally wrested" from
Defendant.

10.   The District Attorney's Office has not over-indicted
Mr. VanGINDEREN as is shown in the evidence presented to the
Grand Jury.

11.   The District Attorney's Office is not vindictive and
it is submitted that Attorney Nash's sworn allegations in that
regard and his allegations about "failing to make even the most
basic observations regarding human behavior" are highly inap-
propriate and should be stricken from the record of this case.

STATEMENT

10.   The People consent to an immediate <u>Huntley</u> Hearing so
that the case can go to trial forthwith.

DISCOVERY

11.   a)  Previously provided.

b)  Not applicable.

c)  Not applicable.

d)  Not applicable.

e)  A notice pursuant to Section 450.10 of the Penal
Law was made and the Defendant and his attorney
has failed to take any steps to inspect, photo-
graph or appraise the property.  Thus, the
deponent requests an Order permitting return to
the lawful owners.

f)   Not applicable.

g)   The deponent is fully aware of the prosecutor's

continuing duty to disclose such material.

h)   Arrest:        3/8/83
                     9:00 A.M. (approximately)
                     Ithaca, New York

_____
                ROBERT C. MULVEY

Sworn to before me this
21st day of July, 1983.

_____
        NOTARY PUBLIC

DEBORAH K. LISK
Notary Public, State of New York
No. 4763815
Qualified in Tompkins County
Term Expires March 30, 19__

DISTRICT ATTORNEY
TOMPKINS COUNTY
ITHACA, NEW YORK 14850

**EXHIBIT F, PAGE 89**

VANGINDEREN

MOVE TO
     AMEND INDICTMENT   ~FROM $B^2$ TO

1) instructions to Grand Jury
   were for $B^3$

2) Facts can only show $B^3$

3) CPL 200.70 only has amendment
   which changes the theory
   of prosecution as reflected
   in evidence before Grand
   Jury which filed it
              TAYLOR 43 AD2d 519 (1973)
   ~~truly~~ can't amend to charge
   crime other than found by
   grand jury

   ERROR (OBVIOUS)
                    NOT
   INADVERTENT CITATION OF STATUTE
   ~o PREJUDICE

**EXHIBIT F, PAGE 90**

**ADAMS, THEISEN & NASH**

ATTORNEYS AND COUNSELORS AT LAW
301 THE CLINTON HOUSE
103 WEST SENECA STREET
ITHACA, NY 14850

HENRY W. THEISEN
RALPH W. NASH
————
STEPHEN M. BOWMAN

ARMAND L. ADAMS
1911-1983

607-272-3442

RECEIVED/SENT
TOMPKINS COUNTY
DISTRICT ATTORNEY
AUG 4   2 14 PH '83

August 3, 1983

Hon. Benjamin J. Bucko
Tompkins County District Attorney
Post Office Box 326
Ithaca, New York 14850

Re:  People v. Kevin G. Vanginderen

Dear Ben:

This letter will confirm my telephone message of yesterday,
wherein I indicated that Kevin will agree to plea to a misdemeanor in
City Court in lieu of having this matter re-submitted to another Grand
Jury, upon condition that the People agree to recommend no harsher
penalty than probation upon his plea.

I am enclosing a copy of my proposed Order submitted to
Judge Kepner today.  I will be on vacation until August 15, but have
several other matters pending that morning.  Kevin and I would like to
appear in City Court on Monday, August 22, for purposes of the afore-
mentioned plea.  If this is agreeable, I will make arrangements with
City Court.

Regarding the actual charge which Kevin will plead to in
City Court, I suggest either Criminal Trespass 3° or Petite Larceny.
I note that Criminal Trespass 2° requires entry into a dwelling.

Thank you for your attention to this matter.

Yours very truly,

ADAMS, THEISEN & NASH

Ralph W. Nash

RWN/dh
Enclosures

**EXHIBIT F, PAGE 91**

**ADAMS & THEISEN**

ATTORNEYS AND COUNSELORS AT LAW

THE CLINTON HOUSE, SUITE 301

103 WEST SENECA STREET

TELEPHONE (607) 272-3442

ARMAND L. ADAMS
HENRY W. THEISEN

RALPH W. NASH

RECEIVED/SENT
TOMPKINS COUNTY
DISTRICT ATTORNEY

AUG 4  2 14 PM '83

ITHACA, NEW YORK 14850

August 3, 1983

Hon. George S. Kepner, Jr.
Otsego County Office Building
Cooperstown, New York 13326

Re:  People v. Kevin G. Vanginderen
Tompkins County Indictment No. 83-46

Dear Judge Kepner:

Please find enclosed proposed Order in this matter, pursuant to your Decision after oral argument at a Tompkins County Motion Term on August 1, 1983, in Ithaca, New York. I have provided a stamped, self-addressed envelope for your convenience in returning the signed Order.

Thank you for your attention to this matter.

Yours very truly,

ADAMS, THEISEN & NASH

Ralph W. Nash

RWN/dh
Enclosures

cc:  Hon. Benjamin J. Bucko

**EXHIBIT F, PAGE 92**

STATE OF NEW YORK
COUNTY COURT    :    COUNTY OF TOMPKINS

RECEIVED/SENT
TOMPKINS COUNTY
DISTRICT ATTORNEY

Aug 4  2 14 PM '83

THE PEOPLE OF THE STATE OF NEW YORK    :

                    -vs-                    :          ORDER

KEVIN G. VANGINDEREN,                      :          Indictment No. 83-46

                    Defendant.    :

ADAMS & THEISEN  ·  ATTORNEYS AT LAW  ·  ITHACA, NEW YORK

The Defendant having duly moved this Court at a Motion Term thereof, held in and for the County of Tompkins on August 1, 1983, for an Order dismissing the Indictment herein upon the ground that it is defective under the Criminal Procedure Law, and having duly presented his Notice of Motion and Affidavit of Ralph W. Nash, Esq., duly verified July 15, 1983,

And the People having opposed said motion at said time and duly presented their Answering Affidavit of Robert C. Mulvey, Esq., duly verified July 21, 1983, and oral argument having been had at such Motion Term, and the Defendant having presented his Memorandum of Law thereon, and a Decision having been rendered at the conclusion of oral argument; now, after due deliberation, upon motion of Ralph W. Nash, Esq., attorney for Defendant, it is hereby

ORDERED that Indictment 83-46 charging the Defendant Kevin G. Vanginderen with two counts of Burglary in the Second Degree is DISMISSED as being defective under the Criminal Procedure Law, with leave to the People to re-submit the matter to another Grand Jury of this Court.

ENTER,

                                    _____
                                    GEORGE S. KEPNER, JR.,
                                    Acting Tompkins County Judge

DATED: August    , 1983

          Cooperstown, New York

**EXHIBIT F, PAGE 93**

OFFICE OF SUPREME AND COUNTY COURT CLERKS
STATE OF NEW YORK  COUNTY OF TOMPKINS
320 NORTH TIOGA STREET
ITHACA, NEW YORK 14850

NANCY M. JOCH
CF CLERK COMBINED COURTS

⌐UBLIC SAFETY

SUPREME COURT

COUNTY COURT

APR 11 1985

CORNELL

Sir:

Please take notice that the within is a true copy

of an Order duly entered in the Office of the Clerk of

Tompkins County.

Dated: _____ *March 5, 1985* _____

Nancy M. Joch
Chief Clerk III
County of Tompkins
320 North Tioga Street
Ithaca, New York  14850

( ) To the Commissioner of Division of Criminal Justice Services
(X) To the Commissioner of *Cornell Safety* Police Department
( ) To the Commissioner of ~~Department of Correction~~
(X) To the District Attorney of Tompkins County
( ) To the Sheriff of Tompkins County
(X) ~~To the Clerk of the~~ *Ithaca City* ~~Court~~
( ) To _____

**EXHIBIT F, PAGE 94**

Check One:    ☐ CPL 160.50 (ACD) Seal Order (F/P will be retained*)
              ☒ CPL 160.50 Seal Order
              ☐ CPL 160.55 Seal Order

COURT: _____ County Court - Tompkins County _____

COURT ADDRESS: 320 North Tioga Street. Ithaca, New York 14850

DEFENDANT'S NAME: _ Kevin G. VanGinderen _____

DEFENDANT'S ADDRESS: _____

NYSID NUMBER: _ 5037768 J _____ ARREST DATE: 3-8-83 ___ DOB: 10-23-65 SEX: M

DOCKET/INDICTMENT/CASE NUMBER TO BE SEALED: ____ 83-46 _____

ARREST CHARGES TO BE SEALED: Burglary, Second Degree (2 counts)

RELATED DOCKET/INDICTMENT/CASE NUMBER NOT TO BE SEALED AND FINAL DISPOSITION:

_____  _____     _____

_____  _____     _____

☒ To Commissioner of Division of Criminal Justice Services
☒ To Commissioner of _____ Cornell Safety _____ Police Department.
☐ To Commissioner of _____ Dept. of Correction
☒ To District Attorney of _____ Tompkins _____ County.
☒ To Sheriff of _____ Tompkins _____ County.
☐ To Clerk of the _____ Court.
☒ To ___ Federal Bureau of Investigation ___

The above captioned criminal action having on ___ Aurgust 4, ___ , 19 83, been terminated in favor of the above named defendant in accordance with Section 160.50 or 160.55 of the Criminal Procedure Law and it appearing that no other criminal action or proceeding is pending against that person, it is ordered that every photograph, photographic plate or proof and all palmprints, and fingerprints, and all duplicates taken pursuant to Article 160 of the Criminal Procedure Law in regard to this action or proceeding be returned to such person or the attorney who represented him.* Departments or Agencies who transmitted or otherwise forwarded copies of such to any agency of the United States or any other state or jurisdiction outside New York State shall request in writing that all copies be returned to the police department or law enforcement agency which transmitted or forwarded them and upon such return said department or agency shall return them as provided above. All official records and papers relating to the arrest or prosecution BE SEALED and not made available to any person or public or private agency, except as provided in section 160.50 (1) (d).

DEFENDANT'S ATTORNEY: _____
            Ralph Nash, Esq.
ATTORNEY'S ADDRESS: The Clinton House
        Ithaca, New York 14850

Enter,

_____
(JUDGE ̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶
George S. Kepner, Jr.
Acting Tompkins County Judge

COURT SEAL

**EXHIBIT F, PAGE 95**