1. NELSON E. ROTH, SBN 67350
       ner3@cornell.edu
2. CORNELL UNIVERSITY
   300 CCC Building
3. Garden Avenue
   Ithaca, New York 14853-2601
4. Telephone:    (607)255-5124
   Facsimile:    (607)255-2794
5.
   BERT H. DEIXLER, SBN 70614
6.     bdeixler@proskauer.com
   CHARLES S. SIMS, New York Attorney Registration No. 1535640
7.     admitted *pro hac vice*
       csims@proskauer.com
8. CLIFFORD S. DAVIDSON, SBN 246119
       cdavidson@proskauer.com
9. PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
10. Los Angeles, CA 90067-3206
    Telephone:   (310) 557-2900
11. Facsimile:    (310) 557-2193

12. Attorneys for Defendant,
    CORNELL UNIVERSITY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VANGINDEREN,<br><br>   Plaintiff,<br><br>v.<br><br>CORNELL UNIVERSITY,<br><br>   Defendant. | Case No. 07-CV-2045-BTM (JMA)<br><br>**CORNELL'S REPLY IN FURTHER SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO SECTION 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE**<br><br>[Evidentiary Objections and Declarations of Clifford S. Davidson and Simeon F. Moss filed concurrently]<br><br>[Per chambers, no oral argument unless requested by the Court]<br><br>Hearing Date: December 21, 2007<br>Time:           11:00 a.m.<br>Location:      Courtroom 15<br><br>Action Filed: October 1, 2007 |

DEFENDANT'S REPLY IN FURTHER SUPPORT OF SPECIAL MOTION TO STRIKE

## I. INTRODUCTION

Plaintiff Kevin Vanginderen ("Plaintiff") perfectly articulates the importance of this case:

> A correction of the injustice faced by the Plaintiff would require little technical effort on behalf of the Defendant. The Defendant would not presumably include within its 'digitized' library archives known fraudulent publications such as, *The Autobiography of Howard Hughes* or *The Hitler Diaries*, yet it contends here that an undue burden would be placed upon it if [sic] were to edit one of its own questionable publications.

Opp. at 11 – 12. Plaintiff could not be more misguided: all works, questionable or not, would be included in a digitized library. A library is a repository of information for the ages available to scholars, commentators and the public. This includes the entire historical record, along with all its inaccuracies, follies and works that have been proven to be fraudulent. Plaintiff seems to hypothesize a library without ancient documentation of Columbus' search for a route to "India" or the fraudulent novel *A Million Little Pieces*; where the overturned *Dred Scott* decision would be stricken from the historical record; or where a *Cornell Chronicle* article, unchallenged during the statute of limitations period, would be discarded in the face of a $1,000,000 lawsuit. The Court must protect the role of libraries by preventing Plaintiff from proceeding with his claims.

As discussed below, Plaintiff utterly fails to demonstrate a probability of success in his claims – as the anti-SLAPP statute requires. *See* Cal. Code Civ. Pro. § 425.16(b)(1) – (3). The evidence conclusively establishes that Plaintiff's claims are without merit. Nevertheless, Plaintiff asserts – without competent evidence or apposite and published authorities – that the *Chronicle* is not a newspaper; that he should be excused from the one-year statute of limitations applicable to his claims because he did not discover the *Chronicle* report about his crimes until 24 years after it was published; and that the report was untrue. When drafting his Complaint and the Opposition to this Motion, Plaintiff's strategy appears to have been to rely on the fact that the police and prosecution records were sealed. Indeed, he opposed Cornell's motion to unseal those very records. *See* Declaration of Clifford S. Davidson ("Davidson Declaration") ¶ 2 & Ex. A, filed concurrently.

Unfortunately for Plaintiff, those records are now public (and are part of the Court's record) and demonstrate the frailty of Plaintiff's position. Plaintiff was charged with Burglary in the 3rd

1  Degree in connection with 10 incidents of petit larceny and five burglaries. Even if he was not
2  charged with each of these crimes, the newly-unsealed records reveal that he was charged *in*
3  *connection* with these crimes and that he confessed to having stolen on numerous occasions. The
4  records demonstrate conclusively that the *Chronicle* report was not only fair and true, but also
5  entirely accurate:

6  Regardless, any cause of action Plaintiff might have had in connection with the *Chronicle*
7  article expired 24 years ago. Plaintiff's arguments to the contrary are meritless.

## II.   DISCUSSION

### A.   Plaintiff's Complaint Is without Question A SLAPP Lawsuit

Plaintiff's claim that Cornell cannot avail itself of California Code of Civil Procedure § 425.16 (hereinafter, "anti-SLAPP statute") is patently incorrect. Plaintiff advances two main theories as to why the anti-SLAPP statute does not apply: (1) Plaintiff's complaint is not retaliatory or in response to Cornell's petitioning activity; and (2) the *Chronicle* article does not address a public issue. Opp. at 5:1 – 6:4. The law is to the contrary.

#### 1.   The Anti-SLAPP Statute Applies Broadly to Any Conduct In Furtherance of the Exercise of the Right of Free Speech

Plaintiff relies on a website – ironically enough – for the proposition that the anti-SLAPP statue protects only petition-related activity. Opp. at 5. In contrast to the website, actual legal authorities demonstrate that the anti-SLAPP statute by its terms extends to the First Amendment activities at issue in this case.

The anti-SLAPP statute protects "any act in furtherance of a person's right of petition **or free speech** under the United States or California Constitution in connection with a public issue. Cal. Code Civ. Pro, § 425.16(b)(1) (emphasis added). The meaning of "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free

        speech in connection with a public issue or an issue of public interest.

The provisions of the anti-SLAPP statute are construed broadly, Cal. Code Civ. Pro. § 425.16(a), and encompass newspaper reports, reports on crime, and other publications. *See* Defendant's Memorandum of Points and Authorities in Support of Special Motion to Strike ("Memorandum") at 7 and 8 (collecting cases). Defamation claims, even those not associated with petition activities, fall squarely within the ambit of the anti-SLAPP statute. Memorandum at 5 and 6 (collecting cases). Even the depublished case Plaintiff cites in his opposition, *Hebrew Academy of San Francisco v. Goldman*, 129 Cal. App. 4th 391 (2005), *review granted by Hebrew Academy of San Francisco v. Goldman*, 118 P.3d 1017, 1017 (2007), applies the anti-SLAPP statute to speech unrelated to petition activities.

The anti-SLAPP statute thus clearly applies to defamation claims based on newspaper (and other) publications, not simply petition-related activities.

**2.    Plaintiff's Criminal Activities Were (and Are) Public Issues Or Issues of Public Interest**

Plaintiff also protests that Cornell cannot avail itself of anti-SLAPP protection because Plaintiff's criminal activities are not a matter of public concern. Opp. at 5. Courts in this Circuit agree that reporting on crimes is the sort of conduct the anti-SLAPP statute protects. *See, e.g., Four Navy Seals*, 413 F. Supp. 2d. 1136, 1149 (S.D. Cal. 2005) (holding, in anti-SLAPP case, that publication of article concerning potential criminal activity by military personnel was a matter of public interest); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002) (noting that "issue of public interest" requirement "is to be construed broadly so as to encourage participation by all segments of our society in vigorous public debate related to issues of public interest" [citations omitted]); *see also* Memorandum at 7 and 8.

Plaintiff's opposition is misguided. His criminal activities were of public interest and the *Chronicle* was afforded First Amendment privilege to report them. *See* Memorandum at 15 – 19. Furthermore, those activities continue to be of public interest now that he practices law.

B. **Plaintiff Has Not Demonstrated that His Complaint Is Legally Sufficient**

   1. **Plaintiff's Primary Case Is Unpublished and Therefore Inapposite**

One of the few cases Plaintiff cites in opposition to Cornell's motion is *Hebrew Academy*. This case has been depublished and rendered un-citable by the California Supreme Court's grant of review. *See Hebrew Academy of San Francisco v. Goldman*, 118 P.3d 1017, 1017 (2007); Cal. Ct. R. 8.1105(e)(1) ("Unless otherwise ordered … an opinion is no longer considered published if the Supreme Court grants review or the rendering court grants rehearing."); Cal. Ct. R. 8.1115(a) (unpublished opinions "must not be cited or relief on by a court or a party in any other action.") Indeed, another Court in this district refused to permit citation to *Hebrew Academy* for this very reason. *Sundance Image Technology v. Cone Editions Press Ltd.*, No. 02-CV-2258-JM (AJB), 2007 U.S. Dist. LEXIS 16356, at *19 fn. 4 (S.D. Cal. March 7, 2007). The Court therefore should not permit Plaintiff to rely on this case for any proposition.

   2. **The Single Publication Rule Applies to The *Chronicle***

The *Chronicle* unquestionably is protected by the single publication rule. Plaintiff argues that the single publication rule does not apply because the *Chronicle* is not "mass media," Opp. at 8:1 – 8:7, a term Plaintiff does not bother to define. The one case Plaintiff cites in support of this proposition, *Hebrew Academy*, is depublished pending review (see section II(A)(1), *supra*), is distinguishable and in fact supports Cornell's position. The *Hebrew Academy* court, itself, noted that the California Supreme Court's earlier decision in *Shively v. Bozanich*, 31 Cal. 4th 1230 (2003), "ma[de] clear that application of the single publication rule has invariably been confined to newspapers and books." *Hebrew Academy*, 129 Cal. App. 4th at 398 (citing *Shively*, 31 Cal. 4th at 1245). The *Shively* Court interpreted the provisions of California Civil Code § 3425.3, which codifies the single publication rule and specifically refers to newspapers.[1]

---

[1] Per Cal. Civ. Code § 3425.3: "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine . . . ."

The *Chronicle* is a newspaper within the meaning of the single publication rule and cases interpreting it. The definition of "newspaper" contained in Civil Code § 3425.3 should be interpreted in its "ordinary, everyday meaning." *Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1238 (1992). The ordinary meaning of "newspaper" is "[a] publication for general circulation, usu[ally] in sheet form, appearing at regular intervals, usu[ally] daily or weekly, and containing matters of general public interest, such as current events." Black's Law Dictionary 1065 (7th Ed. 1999). As described in the concurrently-filed Declaration of Simeon F. Moss ("Moss Declaration"), in 1983, the *Cornell Chronicle* was published weekly with a circulation of over 10,000 and was "widely distributed across campus, including at the various dining halls, the campus store, and key academic and administrative buildings. The *Cornell Chronicle* was available at any of these locations from the day of publication until the next week's newspapers were distributed." Moss Decl. ¶ 6. It covered – and continues to cover – a wide variety of subjects and current events. Moss Decl. ¶ 8. One of those current events is criminal activity on campus. In 1983, 25 of the 35 issues of the *Chronicle* contained crime blotters documenting crime on campus as reported by the Cornell Department of Public Safety. Moss Decl. ¶ 7.

The single publication rule would apply to the *Chronicle* even if it were not a "newspaper." The *Hebrew Academy* court's refusal to apply the single publication rule was based on the offending publication's extremely limited distribution of 10 copies, 129 Cal. App. 4th at 399, and on the court's determination that respondents therefore were not in need of the single publication rule's protections:

> We conclude that the single publication rule does not apply to the Goldman oral history . . . . Respondents have not shown they are in need of protection from a multiplicity of suits, of from a continuous tolling of the statute of limitations, or from the application of diverse laws to a single event, which are the problems the rule was designed to solve.

*Hebrew Academy*, 129 Cal. App. 4th at 400. With a circulation of over 10,000, the *Cornell Chronicle* clearly is in need of the single publication rule, though the same would be true if its circulation were much lower. *Hebrew Academy* therefore is distinguishable on this ground.

1  Further, the New York Court of Appeal recently applied the single publication rule to bar an
2  invasion of privacy claim, under New York civil rights law, arising from a single photograph
3  displayed in an art gallery. *Nussenzweig v. diCorcia*, No. 155, slip op., 2007 N.Y. LEXIS 3244, at
4  *2 (N.Y. Nov. 15, 2007).

5  **3.    The Discovery Rule Does Not Apply to The *Chronicle***

6  Plaintiff claims that the discovery rule has tolled the one-year statute of limitations, which
7  allegedly did not begin to run until he discovered the *Chronicle* through his Google® search in
8  September 2007. Plaintiff relies on the alleged "very limited publication" of the *Chronicle* in
9  support of this claim, Opp. at 8, and alleges, without the support of competent evidence, that he
10 was "simply incapable of discovering" the report about him "in an obscure publication he had not
11 even known the existence of," Opp. at 9. The *Chronicle* had a circulation of at least 10,000 in
12 1983. Moss Decl. ¶ 6. Plaintiff cannot seriously argue that he was "simply incapable of
13 discovering" the March 17, 1983 publication. Indeed, his criminal defense attorney noted in 1983
14 that Plaintiff "has reacted tremendously to the shame and indignity **of a publicized arrest and**
15 **prosecution**." Supp. Req. Jud. Not., Ex. F, p. 74 (emphasis added).

16 Plaintiff's statement that he was not aware of the *Chronicle*'s existence and never saw a
17 single copy is as irrelevant as it is unlikely. Even if the *Chronicle*'s distribution were significantly
18 less than 10,000, the discovery rule still would not apply. Plaintiff cites *Shively* for the proposition
19 that the discovery rule applies where it is difficult for plaintiff to understand or learn of the injury
20 or the injury is hidden. Opp. at 9. However, whether by oversight or design, Plaintiff fails to
21 disclose that the *Shively* court affirmed courts' "uniform[] *reject[ion of]* the application of the
22 discovery rule to libels published in books, magazines, and newspapers." *Shively*, 31 Cal. 4th at
23 1250 (emphasis in original). The *Shively* court further held that "[a]lthough application of the
24 discovery rule may be justified **when the defamation was communicated in an inherently**
25 **secretive manner** . . . , the justification does not apply when the defamation occurred by means of
26 a book, magazine or newspaper that was distributed to the public." *Hebrew Academy*, 129 Cal.
27 App. 4th at 401 (quoting *Shively*, 31 Cal. 4th at 1250 – 1251).
28

1   The discovery rule is a rarely-invoked equitable exception to the finality of the single
2   publication rule. *Hebrew Academy*, 129 Cal. App. 4th at 401 ("The discovery rule constitutes an
3   **equitable exception** to general legal rules concerning the accrual of a cause of action, such as the
4   single publication rule." [emphasis added]). It does not apply to alleged "libels published in books,
5   magazines and newspapers." *Id.* at 402 (quoting *Shively*, 31 Cal. 4th at 1250) (internal quotations
6   omitted). That is because "[i]t is only in situations to which the single publication rule clearly does
7   *not* apply that the discovery rule *may* apply." *Id.* (emphasis in original); *see Nussenzweig v.*
8   *diCorcia*, 2007 N.Y. LEXIS 3244 at *2 (dismissing statutory privacy claim, applying single
9   publication rule and declining to apply discovery rule to photograph displayed in gallery).

10  Plaintiff's other discovery rule cases are wholly unrelated to the libel context and are
11  distinguishable based on the hidden nature of the medical, toxic and other torts involved. *Fox v.*
12  *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005) (medical malpractice); *Hopkins v. Dow*
13  *Corning Corp.*, 33 F.3d 1116. 1120 (9th Cir. 1994) (strict products liability); *Jolly v. Eli Lilly &*
14  *Co.*, 44 Cal. 3d 1103, 1109 (1988) (defective drugs); *Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330,
15  1338 (D.D.C. 1982) (same). Such cases are inapposite.

16  **4.   Plaintiff's Cited Copyright Cases Are Inapposite**

17  Plaintiff asserts that application of the single publication rule in this case "flies in the face
18  of recent rulings regarding illegal uploading and downloading of copyrighted sound recordings."
19  Opp. at 9 and 10. This is totally irrelevant. The purpose of copyright law is to ensure that the
20  owners of works are compensated for their efforts. In order to achieve this purpose, Congress has
21  prohibited the unauthorized copying and use of works of authorship. In one of Plaintiff's cases, the
22  Southern District of New York held that, **under the Copyright Act of 1976** (17 U.S.C. § 101, *et*
23  *seq*.) defendant could not avoid liability based on an argument that it was simply the "functional
24  equivalent" of a library of users' compact disks. *UMG Recordings, Inc. v. MP3.com*, 92 F. Supp.
25  2d 349, 350 (S.D.N.Y. 2000). The other copyright holding Plaintiff cites stands only for the
26  proposition that "Napster users who upload file names to the search index for others to copy violate
27  plaintiffs' distribution rights. Napster users who download files containing copyrighted music
28  violate plaintiffs' reproduction rights." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th

1  Cir. 2001). Plaintiff's Copyright cases address "use" and "infringement," rather than
2  "publication," and therefore should be disregarded.
3       The purpose of the single publication rule is to prevent a chilling effect on the reporting of
4  matters of public interest, *Shively*, 31 Cal. 4th at 1244, a goal unrelated to laws protecting owners
5  of works. Plaintiff's inapt comparison of these distinct areas of law thus should be disregarded.
6  **C.   Plaintiff Has Not Demonstrated that His Complaint Is Factually Sufficient**
7       Plaintiff fails to make the required prima facie showing that his complaint is factually
8  sufficient. *See Metabolife Int'l*, 264 F.3d 832, 840 (9th Cir. 2001). He must make such a showing
9  by introducing "competent and admissible" evidence. *Macias v. Hartwell*, 55 Cal. App. 4th 669,
10 675 (1997). Plaintiff utterly fails to do so and the exhibits attached to his Affidavit are incompetent
11 and inadmissible.
12      Plaintiff claims that the March 17, 1983 *Chronicle* report about his crimes was false
13 because it stated that he was arrested and charged in connection with 10 charges of petit larceny
14 and five burglaries. *See* Req. for Judicial Notice, Ex. B, p. 15. Plaintiff's argument is premised on
15 the view that the Accusatory Instrument needed to have charged him with 15 separate incidents in
16 order for the *Chronicle* report to have been accurate. Opp. at 12. In fact, as demonstrated in the
17 exhibits attached to Cornell's Supplemental Request for Judicial Notice and supporting
18 declarations, the *Chronicle* report was entirely accurate. The Supplementary Investigative Report
19 from Plaintiff's police file states that Plaintiff's confession established him as the perpetrator of
20 four petit larcenies and one burglary. Supp. Req. for Jud. Not., Ex. F, pp. 19 & 23 (report), 30
21 (confession). That same report identifies Plaintiff as "in some way involved with" four additional
22 burglaries and six additional petit larcenies. Supp. Req. for Jud. Not., Ex. F, pp. 14, 15 & 23.
23 Simple arithmetic therefore demonstrates that the *Cornell Chronicle* accurately reported the results
24 of the police investigation.
25      Though the *Chronicle* report was entirely accurate, it need not have been, and it need not
26 have tracked the verbatim language of the Accusatory Instrument. Rather, the *Chronicle* article
27 need only have been fair and true. "Under California law, a newspaper report is fair and true if it
28 captures the substance, the gist, the sting of the libelous charge. The news need not track verbatim

1  the underlying [criminal] proceeding." *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir.

2  1992). In *Colt v. Freedom Communications*, 109 Cal. App. 4th 1551, 1559-1560 (2003), the court

3  affirmed the trial court's grant of an anti-SLAPP motion and noted: "Were we to accept plaintiffs'

4  arguments, we would require that newspapers be limited to word-for-word quotation from legal

5  documents. Of course, the law imposes no such requirement." The *Colt* court concluded its

6  opinion with a blunt analogy:

7  > The situation [in this case] is analogous to that of an accused criminal
8  > who enters a plea of nolo contendere. His action for defamation
9  > against a reporter of the details of the crime with which he was
10 > charged would fail. And this would be true even if the reporter noted
   > that he had been charged with attacking his victim with a tire iron
   > when in reality it had been a ball-peen hammer.

11 *Id.* at 1561. Therefore, even if the *Chronicle*'s characterization of the charges against Plaintiff

12 were incorrect, Plaintiff's claim is inadequate because the *Chronicle* report was fair and true.

13 **D.    Plaintiff's Disingenuous Attempt to Salve His False Light Claim Should Be Rejected**

14       Plaintiff attempts to re-characterize his false light claim as a federal civil rights claim in

15 order to take advantage of federal tolling principles allegedly applicable in civil rights actions. *See*

16 Opp. at 7 (citing *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004)). Plaintiff then invokes

17 the discovery rule and argues that his false light claim is not time-barred. *See* Opp. at 7 (citing *Two*

18 *Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Plaintiff's argument is spurious and his cases

19 are distinguishable. Both cases, as well as the cases they cite regarding the statute of limitations

20 issue, concern claims under 42 U.S.C. § 1983. Plaintiff has not articulated a claim under this or

21 any other federal statute or constitutional provision.

22       Further, Plaintiff's attempt to make an end run around the single publication rule by relying

23 on a privacy claim rather than defamation also must fail. The single publication rule squarely

24 applies to invasion of privacy claims as well as libel. Cal. Civ. Code § 3425.3. "Where the

25 complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to

26 circumvent [§3425.3] by proceeding on a theory other than defamation." *Long v. The Walt Disney*

27 *Co.*, 116 Cal. App. 4th 868, 873 (2004) (quoting *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234,

28 240 (1986)). For these reasons, Plaintiff's false light claim is insufficient and should be stricken.

### E. Cornell Has Conducted Itself Appropriately in This Litigation and Plaintiff's Unfounded Accusations to the Contrary Should Be Disregarded

Plaintiff accuses Cornell of underhanded litigation tactics. He claims that "[Cornell] has surreptitiously obtained a copy of an Accusatory Instrument in this matter while aware it is part of a sealed record . . . . The Defendant did so without a court order to release this sealed record and then improperly filed it as part of the current record." Opp. at 12:11 – 12:13. As discussed in the Declaration of Nelson E. Roth in Support of Supplemental Request for Judicial Notice ("Roth Declaration"), the Accusatory Instruments attached to the Request for Judicial Notice – filed with Cornell's Memorandum – were not sealed and Cornell obtained the record simply by directly asking the Ithaca City Court for a copy. Roth Decl. ¶ 4. Moreover, Plaintiff did not oppose the application to unseal the City Court's record's. Davidson Decl. ¶ 3, Ex. A, p. 11.

Further, Cornell has not "recently disseminated press releases regarding this case." Opp. at 3. In fact, Plaintiff has not disseminated, yet, any press releases regarding Plaintiff's case against it. Moss Decl. ¶ 9. Even if this were a relevant issue – which it is not – Plaintiff does not cite evidentiary support for his claim because there is none.

### III.  CONCLUSION

Because the anti-SLAPP statute applies, Plaintiff must demonstrate the legal and factual sufficiency of his claims. Because he has failed to do so, the Court should Grant Cornell's Special Motion to Strike and tax Cornell's costs and attorneys' fees to Plaintiff.

DATED: December 14, 2007

NELSON E. ROTH
CORNELL UNIVERSITY

BERT H. DEIXLER
CHARLES S. SIMS
CLIFFORD S. DAVIDSON
PROSKAUER ROSE LLP


/s  Bert H. Deixler
          Bert H. Deixler

Attorneys for Defendant,
CORNELL UNIVERSITY