# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VANGINDEREN,<br><br>                Plaintiff,<br>v.<br><br>CORNELL UNIVERSITY,<br><br>                Defendant. | CASE NO. 07cv2045 BTM(JMA)<br><br>**ORDER GRANTING SPECIAL MOTION TO STRIKE** |

Defendant Cornell University ("Cornell") has brought a Special Motion to Strike Plaintiff's Complaint pursuant to Cal. Civ. Proc. Code § 425.16. For the reasons discussed below, Cornell's motion is **GRANTED**.

## I. FACTUAL BACKGROUND

### A. Judicial Proceedings before the Ithaca City Court

On March 8, 1983, Plaintiff Kevin Vanginderen ("Plaintiff") was charged in Ithaca City Court with third degree burglary, a felony. The Accusatory Instrument alleged:

> On or about the 5th day of March 1983, the said defendant did, in the City of Ithaca, County of Tompkins, New York . . . did knowingly enter or remain unlawfully in a building, to wit: defendant entered at approx. 2:00 AM room 312C Fernow Hall, Tower Road, Cornell University, City of Ithaca, N.Y., to committ [sic] the crime of larceny therein by stealing books, with said office space belonging to Richard J. Baker, with all actios [sic] by defendant without authorization, are contrary to the provisions of the Statute in case made and provided.

(Def.'s Request for Judicial Notice, Ex. A.)

On August 17, 1983, Plaintiff was charged with petit larceny, a misdemeanor, based

on the same events. (Id.) This charge was filed "in satisfaction" of the prior charge of burglary in the third degree. (Id.) Plaintiff entered a plea of guilty to the petit larceny charge. (Id.)

Cornell's counsel initially believed that the City Court's records of the criminal proceedings against Plaintiff were sealed. However, on October 15, 2007, Valerie Dorn, Associate University Counsel at Cornell, received a telephone call from the City Court Clerk's Office informing her that the records were not sealed and were available for pickup. (Dorn Decl. ¶ 5.) Ms. Dorn obtained the records on October 16, 2007. (Id.)

### B. Judicial Proceedings Before the County Court of Tompkins

On October 15, 2007, the City Court Clerk informed Ms. Dorn that the County Court of Tompkins County ("County Court") possessed sealed records relating to criminal charges against Plaintiff. (Dorn Decl. ¶ 6.) Cornell's counsel applied to the County Court to unseal the records of the criminal proceedings against Plaintiff. In an order issued after Cornell filed its moving papers in this case, the County Court concluded that Cornell had provided sufficient grounds to grant the motion to unseal records of the County Court, the Tompkins County District Attorney's Office, and the Cornell University Police. (Supp. Request for Judicial Notice, Ex. E.) Cornell obtained the unsealed records, which are attached as Exhibit F to the Supplemental Request for Judicial Notice.

These records show that Cornell police became interested in Plaintiff as a result of their investigation of a theft of two books from Fernow Hall that took place between March 4 and March 5, 1983. The stolen books were located at Triangle Books ("Triangle"), a local bookstore which bought used books. (Ex. F at 7.) A log kept by Triangle showed that someone with the initials "K.V." and the Student I.D. # 222416 sold the stolen books to Triangle on March 5, 1983. (Id.) This information led the Cornell police to Plaintiff. (Id.)

Further investigation led Cornell police to believe that Plaintiff was also the perpetrator of nine additional thefts in Fernow Hall and five unsolved thefts in Bradfield Hall. (Ex. F at 23.) A search of Plaintiff's bedroom resulted in the discovery of a TI 51 calculator, Sanyo

1  tape recorder, and a JVC stereo cassette player/recorder, all of which were stolen from
2  Fernow Hall. (Ex. F at 17.)
3        Plaintiff was interviewed and admitted that he had a key to Bradfield Hall and that he
4  took books from Room 411 and sold them for cash. (Ex. F at 29.) He admitted to the five
5  unsolved thefts in Bradfield Hall. (Ex. F at 29-30.) Plaintiff explained that he discovered a
6  tunnel between Bradfield Hall to Fernow Hall and admitted that he took a calculator, cassette
7  deck, cassette recorder, and various books from Fernow Hall. (Id.) When asked about
8  specific books that were stolen from Fernow Hall, Plaintiff either conceded that he had taken
9  them, indicated that the books sounded "familiar," or that he "imagine[d]" he took them. (Ex.
10 F at 30.)
11       On June 7, 1983, a Tompkins County Grand Jury returned an indictment charging
12 Plaintiff with two counts of burglary in the second degree. (Ex. F at 69.) On August 1, 1983,
13 the County Court granted Plaintiff's motion to dismiss the indictment as defective (for
14 mistakenly charging burglary in the second degree instead of the proper charge of burglary
15 in the third degree). (Ex. F at 90, 92-93.) The People were given permission to refile. (Id.)
16 However, Plaintiff agreed to plead guilty to a misdemeanor in City Court upon the condition
17 that the People not refile felony charges in County Court and agree to recommend a penalty
18 no harsher than probation. (Ex. F at 91.)
19       As indicated above, on August 17, 1983, Plaintiff was charged with petit larceny, a
20 misdemeanor, in City Court. (Ex. A at 7.) On August 22, 1983, Plaintiff entered a plea of
21 guilty to the petit larceny charge. (Ex. A at 8.) On March 5, 1985, the County Court issued
22 an order sealing official records regarding the second degree burglary charges in the County
23 Court proceedings. (Ex. F at 95.) The order was sent to the Cornell police and the District
24 Attorney. (Ex. F. at 94.) The records of the misdemeanor in City Court were not sealed.
25
26
27 **C. Cornell Chronicle**
28       On March 17, 1983, the Cornell Chronicle, a weekly University publication, included

the following paragraph on page 6 (as part of the "Blotter Barton" column):

> Department of Public Safety officials have charged Kevin G. Vanginderen of 603 Winston Court Apartments with third degree burglary in connection with 10 incidents of petit larceny and five burglaries on campus over a period of a year. Safety reported recovering some $474 worth of stolen goods from him.

(Def.'s Request for Judicial Notice, Ex. B.)

Paper copies of all issues of the Cornell Chronicle are maintained in the Cornell University Library ("CUL") and are accessible to library patrons who are physically present on campus. (Kenney Decl. ¶ 4.) The Cornell Chronicle has also been microfilmed and is available to anyone who has access to a library that participates in the interlibrary loan system. (Id.) CUL has engaged in multiple long-term projects to digitize information resources in its collection. (Id. at ¶ 3.) Many of these digital materials are stored in CUL's institutional repository, known as eCommons. (Id.) The Cornell Chronicle is one of the resources that is being digitized. (Id. at ¶ 4.) Digitized copies of the Cornell Chronicle are accessible to anyone who has computer access to CUL's eCommons. (Id.)

According to Plaintiff, until September 2, 2007, he had not been aware of the March 17, 1983 Cornell Chronicle article about himself. (Vanginderen Decl. ¶ 8.) He first learned about the article when he ran a "Google" search on himself and the "Google" results included an excerpt from and a link to the digitized version of the article. (Id. at ¶ 9.) Plaintiff requested that Cornell remove the references to himself from the digitized version of the March 17, 1983 Cornell Chronicle. Cornell refused Plaintiff's request.

### D. Plaintiff's Complaint

On October 1, 2007, Plaintiff filed his Complaint in state court. Plaintiff asserted claims of libel and public disclosure of private facts. On October 29, 2007, Cornell removed the action to this Court.

### II. LAW GOVERNING ANTI-SLAPP MOTIONS

California Code of Civil Procedure § 425.16, California's anti-SLAPP (anti-Strategic Lawsuit Against Public Participation) statute, was enacted "to allow early dismissal of

meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). See also Wilcox v. Superior Court of Los Angeles County, 27 Cal. App. 4th 809, 823 (9th Cir. 1994) (explaining that section 425.16 was intended to provide a "fast and inexpensive unmasking and dismissal of SLAPPs"). The anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

As used in the anti-SLAPP statute, the term "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes the following:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

The defendant bringing the motion to strike bears the initial burden of showing that the challenged causes of action arise from an act or acts in furtherance of the defendant's right of petition or free speech. Zamos v. Stroud, 32 Cal. 4th 958, 965 (2004). Once that burden is met, the burden shifts to the plaintiff to establish the probability that plaintiff will prevail on the claim. Id. To satisfy this prong, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 741 (2003) (citation omitted).

When determining whether the defendant has met his initial burden of demonstrating that the challenged causes of action arise from protected conduct, courts necessarily look

1  to the allegations in the operative complaint. Brill Media Co., LLC v. TCW Group, Inc., 132
2  Cal. App. 4th 324 (2005). Courts may also examine affidavits in making this assessment.
3  Id. In contrast, in determining the probability of the plaintiff prevailing on the claim, courts
4  look to the evidence that will be presented at trial and require that the evidence be
5  admissible. Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 654 (1996). The
6  applicable standard for determining whether the plaintiff has met his burden is the same as
7  for a motion for summary judgment. Colt v. Freedom Communications, Inc., 109 Cal. App.
8  4th 1551, 1557 (2003).

### III. DISCUSSION

**A. Applicability of anti-SLAPP Statute**

13        The first question that must be addressed is whether Plaintiff's claims fall within the
14 scope of the anti-SLAPP statute. For the reasons discussed below, the Court finds that
15 Plaintiff's claims are subject to a special motion to strike.
16        As mentioned above, the anti-SLAPP statute covers any "act in furtherance of a
17 person's right of petition or free speech under the United States or California Constitution in
18 connection with a public issue," including any "conduct in furtherance of the exercise of the
19 constitutional right of petition or the constitutional right of free speech in connection with a
20 public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(b), (e)(4). A
21 statement or conduct is "in connection with a public issue or an issue of public interest" if "the
22 statement or conduct concerns a topic of widespread public interest and contributes in some
23 manner to a public discussion of the topic." Hall v. Time Warner, Inc., 153 Cal. App. 4th
24 1337, 1347 (2007). The "public interest" requirement must be "construed broadly," to
25 encourage continued participation in matters of public significance. Cal. Civ. Proc. Code §
26 425.16(a). See also Gilbert v. Sykes, 147 Cal. App. 4th 13, 23 (2007).
27        Here, the article in the Cornell Chronicle, in both its original and digitized versions,
28 concerns an issue of public interest – reporting of a criminal charge that was and is part of

the Ithaca City Court's public records. Although Plaintiff contends that the records of the criminal proceedings in City Court were sealed, the evidence submitted by Cornell indicates otherwise. Specifically, the County Court's order regarding the sealing of records was not sent to the City Court, the City Court Clerk informed counsel for Cornell that its records were not sealed, and Cornell was able to obtain the records, which were then submitted to the Court in connection with the motion.[1]

Case law establishes that the truthful reporting of information in a public record is protected by the First Amendment. In Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975), the Supreme Court explained:

> By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. *Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media.* The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendments command nothing less than that *the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.*

Id. at 495. Thus, the truthful reporting of information in public official records regarding criminal proceedings against an individual are protected by the First Amendment regardless of whether the reporting is concurrent with the criminal proceedings or years later. Gates v. Discovery Communications, Inc., 34 Cal. 4th 679, 693 (2004) ("[T]he high court has never suggested, in Cox or in any subsequent case, that the fact the public record of a criminal proceeding may have come into existence years previously affects the absolute right of the press to report its contents.")

The Cornell Chronicle article reported information regarding the charge of third-degree

---

[1] Plaintiff objects to the Court's consideration of the City Court records, County Court records, and records of the Cornell Police and County District Attorney. Plaintiff contends that the records are not properly authenticated. Plaintiff's objection is overruled. Cornell has submitted declarations that the records submitted to the Court are the true and correct copies of the records obtained from the City Court and the records that were unsealed pursuant to the County Court's November 16, 2007 order. (Dorn Decl. ¶ 5; Roth Decl. ¶ 6.) Cornell has made a sufficient showing that the documents are what Cornell claims them to be, and the Court takes judicial notice of them pursuant to Fed. R. Civ. P. 201.

burglary brought in the County Court. The County Court's records were not then sealed and were public. Although the article also reported facts that were not part of the court's records – i.e., information regarding the seizure of items from Plaintiff's home and Plaintiff's suspected involvement in a total of ten petit larcenies and five burglaries – these facts relate to the circumstances of the charge and, therefore, also concern a matter of public interest.

Accordingly, Plaintiff's Complaint is subject to a special motion to strike under the anti-SLAPP statute.

### B. Probability of Prevailing on the Merits

Because Cornell has met its initial burden of demonstrating that the challenged causes of action arise from protected conduct, the burden shifts to Plaintiff to establish the probability that he will prevail on his claims. The Court concludes that Plaintiff has failed to satisfy his burden.

Truth is an absolute defense to any libel action. Campanelli v. The Regents of the University of California, 44 Cal. App. 4th 572, 581-82 (1996). However, in order to qualify for the defense, "the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." Id. (quoting Emde v. San Joaquin County Central Labor Council, 23 Cal. 2d 146, 160 (1943)). Libel law "overlooks minor inaccuracies and concentrates on the substantial truth." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991).[2]

Here, the Cornell Chronicle article was substantially true. The challenged language of the article is as follows:

> Department of Public Safety officials have charged Kevin G. Vanginderen of 603 Winston Court Apartments with third degree burglary in connection with 10 incidents of petit larceny and five burglaries on campus over a period of a year.

---

[2] There is no need to engage in a choice-of-law analysis because New York law governing libel is substantially the same as California law. See Matovcik v. Times Beacon Record Newspapers, 849 N.Y.S.2d 75, 78 (2007) (explaining that even if a publication is not literally true in all respects, the defense of truth applies as long as the publication is "substantially true.").

Plaintiff was charged with third-degree burglary, and the charge arose out of an investigation that linked Plaintiff with a total of ten incidents of petit larceny and five burglaries on campus. Thus, the charge had a connection to the ten incidents of petit larceny and five burglaries. The use of the vague phrase "in connection with" was somewhat confusing and may have led some readers to believe that Plaintiff was charged with all fifteen incidents. However, the article did not state that Plaintiff was charged with all of the crimes. Although the article may have been poorly written, the "gist" or sting" of the article was true. Therefore, Plaintiff cannot prevail on his libel claim.

Plaintiff also fails to establish the probability that he will prevail on his claim for public disclosure of private facts. Under California law, the elements of the tort of public disclosure of private facts are (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. Taus v. Loftus, 40 Cal. 4th 683, 801 (2007).[3] With respect to the fourth element, "lack of newsworthiness is an element of the 'private facts' tort, making newsworthiness a complete bar to common law liability." As discussed in Section III.A., supra, the article reported on a matter of public interest. Therefore, Plaintiff's claim for public disclosure of private facts fails on the merits.

In conclusion, Cornell's special motion to strike is granted in its entirety. Cornell's evidentiary objections are denied as moot because the Court's conclusions would be the same whether the objections were overruled or sustained. The Court does not reach the issue of whether Cornell republished the article when Cornell digitized it and made it accessible on the internet. As the prevailing party on the motion to strike, Cornell is entitled to reasonable attorney's fees and costs. Cal. Civ. Proc. Code § 425.16(c). The amount of the attorney's fees shall be determined upon motion by Cornell. Costs may be sought in the manner provided by Civ.L.R. 54.1 after the entry of judgment.

---

[3] New York law does not recognize a common-law right of privacy. See Messenger ex rel. Messenger v. Gruner & Jahr Printing and Pub., 94 N.Y.2d 436, 441 (2000).

## IV. CONCLUSION

For the reasons discussed above, Cornell's Special Motion to Strike is **GRANTED**. The Complaint is **DISMISSED WITH PREJUDICE**. The Clerk shall enter judgment accordingly. Any motion for attorney's fees must be brought within 30 days of this order. **IT IS SO ORDERED.**

DATED: June 3, 2008

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge

AO 450 Judgment in a Civil Case

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

Kevin Vanginderen

V.  **JUDGMENT IN A CIVIL CASE**

Cornell University

CASE NUMBER:   07CV2045-BTM(JMA)

☐   **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒   **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that the Complaint is dismissed with prejudice.

| June 4, 2008 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |

s/J. Petersen
(By) Deputy Clerk
ENTERED ON June 4, 2008

07CV2045-BTM(JMA)